IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HOWARD L. MOON, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 05-261-JJF |
| ) | |
| THE DELAWARE RIVER AND BAY AUTHORITY, ) | JURY TRIAL DEMANDED |
| ) | |
| Defendant. ) | |

## ANSWER

## PARTIES

1.   Defendant is without sufficient information to admit or deny the allegations of this paragraph.

2.   Admitted.

## JURISDICTION

3.   This paragraph states a legal conclusion as to which no response is required.

## FACTUAL BACKGROUND

4.   Denied as stated, except that it is admitted that Plaintiff was hired on November 23, 1992, as a temporary toll collector for the duration of six (6) months.

5.   Denied.

6.   Denied as stated, except it is admitted that in 1996, Plaintiff applied for and was awarded the position of Ferry Reservations Administrator. By way of further explanation, Plaintiff's annual salary rose steadily throughout his tenure at the Delaware River and Bay Authority ("DRBA"), and at no time did he take a pay cut. Defendant is without sufficient knowledge to respond to the allegations regarding the

statements or actions of Jeff Lewis ("Lewis") or Mike Harkins ("Harkins"), neither of whom are currently employed by the DRBA, or the reactions of other employees to their alleged comments; therefore they are denied.

7. Denied as stated, except it is admitted that in or around the summer of 1998, Howard Moon ("Moon") discussed racially motivated incidents with Steve Russell ("Russell") and Mike Owens ("Owens").

8. Defendant is without sufficient information to respond to Plaintiff's allegations regarding oral statements made by Lewis to the Plaintiff, as Lewis is no longer employed by the DRBA. Therefore, these allegations are denied.

9. Denied. Defendant is without sufficient knowledge to respond to any comments that Tom Ervin ("Ervin") may have made since he is no longer employed by the DRBA; therefore these allegations are denied. Denied that Russell threatened or intimidated Plaintiff by stating that they found something in his e-mails and he was in trouble. Defendant is without sufficient knowledge to respond to the allegation that Plaintiff reported this "threat" to Lewis, or what action Lewis may or may not have taken in response to the alleged report; therefore it is denied.

10. Defendant is without sufficient information to admit or deny Plaintiff's allegations regarding oral statements made by Lewis to the Plaintiff; they are therefore denied.

11. Denied as stated, except it is admitted that in or around April 2001, Russell informed Plaintiff that he could not attend college on work time during the summer of 2001 because he needed to keep his focus on work during the busy season. Defendant is without sufficient information to admit or deny whether Plaintiff would

have graduated in December 2001 if he had been able to attend courses during the summer, or that he missed the chance to attend the University of Pennsylvania's Wharton School of Business for his MBA; they are therefore denied. Defendant is without sufficient information to admit or deny whether there were other Caucasian employees who attended school during the summer of 2002.

12. Denied as stated, except it is admitted that Joe DeSantis ("DeSantis") was assigned the position of Acting EZ-Pass manager and that the position was later made permanent.

13. Defendant is without sufficient information to admit or deny whether Plaintiff sent a letter appealing his Hay Group pay structure in or around March 2002. The remainder of the allegations in this paragraph are denied.

14. Denied as stated, except it is admitted that Plaintiff's position was studied by the Hay Group in or around April 2002.

15. Denied as stated, except it is admitted that in or around May 2002 Plaintiff raised the lawsuit with Russell and that they may have discussed it. By way of further answer, it is admitted that Russell asked Plaintiff if he would testify as to how Russell treated the Plaintiff, and further notified Plaintiff that he would likely be subpoenaed to testify. Denied that Plaintiff was at any time retaliated against on the basis of race or the reporting of racial incidents. Defendant is without sufficient knowledge to admit or deny whether Charisse Rudolph ("Rudolph") was contacted by Linda Murphy ("Murphy"), who is no longer employed by Defendant, in May of 2002 and asked to send her job description and duties. By way of further answer, it is admitted that during the reorganization in November 2000, Glenn Cox, Director of Operations for the Ferry

("Cox), changed the Guest Service Supervisors' title to Guest Service Manager to correctly reflect their responsibilities; this change did not involve any additional compensation, nor did it alter the duties of the employees involved. This decision in no way affected Plaintiff's level within Defendant's organization. Denied that this or any other restructuring was based on race.

16. Denied as stated, except that it is admitted that on or about May 20, 2002, Plaintiff graduated from the University of Delaware. It is further admitted that on May 20, 2002, Lewis wrote a "letter of endorsement" to Villanova for the Executive MBA Program ("Program") which stated that Plaintiff would be "granted the necessary time to attend classes. Furthermore, the Delaware River & Bay Authority will provide financial support." Admitted that Lewis and Brad Hopkins ("Hopkins") provided recommendation letters for the Program. Defendant is without sufficient information to admit or deny that Plaintiff was contacted in 2002 by Lewis and informed that James Johnson ("Johnson") had overruled him and Defendant would no longer pay the cost of the Program. By way of further answer, Johnson was aware that Lewis had communicated to Plaintiff that Defendant would not pay in excess of $5250 per year toward Plaintiff's education, pursuant to its policy. Defendant is without sufficient information to admit or deny Plaintiff's allegation that he had already been invoiced $14,000 by Villanova or that he was committed to the $70,000 tuition cost, and it is therefore denied. Denied that Defendant's decision to adhere to the DRBA's written policy regarding education costs was based in any way on Plaintiff's race.

17. Denied that Plaintiff met with Johnson, Cox, Lewis, Russell, and Murphy in or around July 2002. By way of further answer, it is admitted that Plaintiff

4

met with Johnson, Cox, Russell, and Murphy in January 2003 to discuss operational issues related to the Ferry Reservations Department.

18. Denied as stated, except that it is admitted that in or around October 2002, Plaintiff applied for the Chief Operations Officer ("COO") position and received a letter in or around November 2002 that his background did not ideally fit the unique needs of the position. The remaining allegations are denied, except that it is admitted that Plaintiff met with Johnson regarding the COO position on November 20, 2002. By way of further answer, Johnson explained that the process was fair, unbiased, all applicants were judged evenly, and no one in the DRBA was involved in shortlisting. Johnson further explained that Defendant was not creating positions specifically for people to move into, that it was looking at where Defendant's needs were the greatest and developing positions based on need. Johnson told Plaintiff that his qualifications did not rank in the range to get to the next step in the process for the COO position.

19. Denied, except it is admitted that Johnson made the statements as set forth above in Paragraph 18 of this Answer.

20. Denied that Plaintiff was threatened in or around December 2002 by Russell. Denied that Russell made a statement "bring it on, you people are always bluffing." Admitted that Plaintiff reported this incident to Murphy and sent an email copying Johnson. Denied that Defendant did not take any disciplinary action or conduct an investigation into the matter. Denied that Plaintiff requested that his complaint be dropped in fear of additional retaliation. By way of further answer, Plaintiff requested that his complaint be dropped because he decided that it would be best to put his issues aside for the good of the organization.

21. Denied as stated, except that it is admitted that Russell advised Plaintiff that he would have to take leave time to attend class. It is further admitted that Russell denied Plaintiff's request to load software, which was part of the Program, onto his work computer. Defendant is without sufficient knowledge to admit or deny the allegation that thousands of brochures were sent out, all over the country and world listing the Defendant as a Villanova Executive MBA Sponsor.

22. Admitted that in or around May 2003 Plaintiff attended an Avaya conference in New Brunswick, New Jersey, with Curt Esposito ("Esposito") and Mike Scanlon ("Scanlon"). Defendant is without sufficient knowledge to admit or deny the allegations regarding statements by Esposito, who is no longer employed by Defendant; they are therefore denied.

23. Denied as stated, except it is admitted that in or around May 2003, Plaintiff met with Trudy Spence-Parker, Chief Human Resources Officer ("Spence-Parker"), regarding his career advancement within the DRBA. By way of further answer, she explained that he should not limit his opportunities for career advancement by looking only at opportunities within the DRBA. Admitted that Consuella Petty-Judkins ("Petty-Judkins") met with Plaintiff in or around August 2003. The specific content of their discussion is denied. Defendant is without sufficient knowledge to admit or deny what Plaintiff "believes" regarding Spence-Parker, and it is therefore denied.

24. Denied as stated, except that it is admitted that in or around September 2003, while the Defendant was searching for a permanent Director of Ferry Operations, the Acting Director of Ferry Operations position was assigned to Russell, without being posted.

25.  Denied as stated.  By way of further answer, during the time when Russell was the Acting Director of Ferry Operations, his previous position as Assistant Director of Ferry Operations remained unfilled.

26.  Admitted, except it is denied that Russell's actions were in violation of Plaintiff's sponsorship agreement with Defendant.  Denied that Russell's actions were related to his race or in retaliation for prior incidents.

27.  Denied as stated, except it is admitted that Russell sent a memo to Plaintiff on October 9, 2003, stating that because Plaintiff refused to sign the "Service Obligation Agreement" per Defendant's policy, the Defendant's financial support for his education would cease, and he would need to take leave time for any classes attended during normal work hours.  The memo further specifically stated that Plaintiff could continue his education.  Admitted that in or around October 2003, Plaintiff met with Spence-Parker and Jim Walls ("Walls") regarding this memo.  The remaining allegations regarding this meeting are denied, except it is admitted that Spence-Parker explained that no one within the DRBA had the authority to grant financial support for education in excess of the $5250 per year maximum allowed by federal tax laws.  It is further admitted that Walls explained his understanding of the Program was that it did not mandate that participating employees would not have to make up work time.  Denied that Defendant's requirement that Plaintiff make up work time and take annual leave to complete the Program was in violation of any signed agreement.

28.  Denied as stated, except that it is admitted that the Acting Toll Plaza Manager position was assigned to George Ayars ("Ayars").

29. Denied as stated, except that it is admitted that in or around November 2003, Plaintiff met with Spence-Parker to discuss applying for the senior position of Director of Ferry Operations. It is further admitted that Plaintiff applied for the position of Director of Ferry Operations. It is further admitted that Defendant hired Harry Nilsen ("Nilsen") for the position of Director of Ferry Operations. Denied that Nilsen did not have any ferry work experience. Admitted that Petty-Judkins sent Plaintiff a letter in January 2004 informing Plaintiff that Defendant had decided to pursue other candidates for the position.

30. Denied as stated, except it is admitted that Plaintiff met with Petty-Judkins regarding the Director of Ferry Operations position. Admitted that Plaintiff sent a letter dated February 2, 2004, to Defendant's Chairman and Vice Chairman of the Board of Directors alleging a long history of racism, no opportunities for minority promotions or advancement, under-representation of minorities, lower pay for minorities, lack of diversity and cultural competency, and continued affirmative action violations and practices.

31. Denied, except it is admitted that Plaintiff met with Johnson, Spence-Parker, and Petty-Judkins on April 1, 2004.

32. Denied as stated, except it is admitted that during Plaintiff's meeting with Johnson and Spence-Parker, he discussed his belief that DeSantis and Steve Strusowski ("Strusowski") were advanced into new positions and were given more pay without the respective positions being posted. By way of further answer, Plaintiff demanded to know salary information regarding these employees and accused Defendant of racism, and Spence-Parker became upset, pointed her finger, and explained that

Plaintiff could not label people racist without being held accountable and that he had better have support for his allegations. Denied that Plaintiff was "severely shaken." Admitted that Plaintiff leaned back in his chair and put his hands up. Denied that Plaintiff looked to Johnson and said "all I did was given you an example as instructed and now I am getting threatened."

33. Admitted. By way of further answer, Plaintiff later withdrew his Charge and requested a Notice of Right to Sue.

34. Denied, except it is admitted that in or around June 2004, Rudolph's position, studied by the Hay Group, was reclassified. Her official job title changed to Cape-May Lewes Ferry Customer Service Manager, and she received a pay increase.

35. Denied.

36. Denied as stated, except it is admitted that in or around 2004, Plaintiff applied for the Superintendent of Tolls and EZ-Pass. It is further admitted that Plaintiff requested budget information from Dana Read ("Read"), and that Read referred Plaintiff to Victor Ferzetti ("Ferzetti"), who referred Plaintiff to Walls. Admitted that Walls told Plaintiff that he could find the information he was looking for from public annual reports. Walls further stated that if Plaintiff was unable to locate the information he was looking for in the reports, to let him [Walls] know, and he would assist him further. Walls did not hear anything further from Moon regarding this request. Denied that Plaintiff was discriminated and retaliated against by Walls and Ferzetti on the basis of his race and subsequently denied the chance to better prepare himself for the interview.

37. Denied as stated, except that it is admitted that James Wilks ("Wilks") approached Johnson and requested a meeting between Johnson, himself, and a group of African-American employees. When Johnson learned that Plaintiff would be participating, he told Wilks that he was uncomfortable having such a meeting due to Plaintiff's attorney's request that any meeting regarding Plaintiff's litigation should be arranged through his attorney's office and conducted with his attorney present. Denied that Plaintiff was retaliated against because he filed an Equal Employment Opportunity Commission ("EEOC") Complaint.

38. Admitted that in or around July 2004, Plaintiff applied for the position of Assistant Director of Ferry Operations. Admitted that Plaintiff never received any response or letter of contact regarding the position. By way of further answer, due to an administrative error, none of the applicants received notice regarding the status of the opening. Defendant is without sufficient knowledge to respond to the allegation regarding when Plaintiff first learned that Heath Gerhke ("Gerhke") was awarded the position of Assistant Director of Ferry Operations. The remainder of the allegations are denied, except it is admitted that Gehrke was one of the final two candidates for the Director of Ferry Operations position in early 2004.

39. Denied, except that it is admitted that in August 2004, Plaintiff was selected to interview for the Superintendent of Tolls and EZ-Pass position and that Plaintiff was 1 of 4 candidates selected out of 28 applicants for interviews. Is further admitted that Walls informed Plaintiff that Defendant decided to continue looking for candidates for the position, and that none of the four interviewed candidates were selected for the position.

40. Admitted. By way of further answer, the EEOC dismissed the retaliation charge on January 31, 2005, determining that based on its investigation, it was unable to conclude that there was any violation.

41. Denied as stated, except it is admitted that the individuals who have held the positions of Executive Director, Deputy Executive Director, Chief Operations Officer, and Chief Financial Officer have all been Caucasian.

42. Denied, except that it is admitted that in 2005, Plaintiff's MUNIS budget was reduced by approximately 25% and that he contacted Gerhke who was unaware and upset by the budget reduction. It is further admitted that Nilsen and Gerhke met with Walls regarding the budget reduction.

43. Denied as stated, except that it is admitted in or around January 2005, Johnson asked Plaintiff to be the Co-Chairman of the Strategic Planning Communications Task Force.

44. Denied as stated, except it is admitted that in or around March 2005 Gehrke and Plaintiff presented a Business Case to Walls which included an expanded role for Plaintiff. Denied that Walls stated to Gerhke that "it appears that [Plaintiff] is just trying to put another feather in his cap" or that he informed Walls that the recommendation was his, not Plaintiff's idea. Denied that Plaintiff continues to be retaliated against because of his race while taking on additional duties, responsibilities, and projects without being promoted or receiving fair compensation.

45. This paragraph states a legal conclusion for which no response is required. To the extent a response is deemed required, the allegation is denied.

11

## FIRST CAUSE OF ACTION
**(Title VII – Retaliation)**

46. Defendant incorporates by reference its answers to Paragraphs 1 through 45, as if fully set forth herein.

47. This paragraph states a legal conclusion for which no response is required. To the extent a response is deemed required, the allegation is denied.

48. Denied.

49. Denied.

50. Denied.

## SECOND CAUSE OF ACTION
**(Racial Discrimination)**

51. Defendant incorporates by reference its answers to Paragraphs 1 through 50, as if fully set forth herein.

52. Denied.

53. Denied.

54. Denied.

55. Denied.

## THIRD CAUSE OF ACTION
**(Racial Discrimination – Failure to Promote)**

56. Defendant incorporates by reference its answers to Paragraphs 1 through 55, as if fully set forth herein.

57. Denied.

58. Denied.

59. Denied.

WP3:1110813.1                                                                                                                        051649.1010

60. Denied.

61. Denied.

## FOURTH CAUSE OF ACTION
### (Breach of the Covenant of Good Faith and Fair Dealing)

62. Defendant incorporates by reference its answers to Paragraphs 1 through 61, as if fully set forth herein.

63. Denied.

64. Denied.

65. Denied.

66. Denied.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim for which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

Defendant acted at all times on reasonable grounds and in good faith.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, for failure to exhaust all available statutory, administrative, or contractual remedies.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the applicable federal or state statutes of limitations, jurisdictional, and/or administrative requirements.

WP3:1110813.1                                                                                                              051649.1010

**FIFTH AFFIRMATIVE DEFENSE**

Plaintiff's claims are barred, in whole or in part, under 19 Del. C. § 712 (b), Chapter Seven of the Delaware Code, which states that that Chapter provides the sole and exclusive remedy for employment discrimination claims.

**SIXTH AFFIRMATIVE DEFENSE**

Defendant is insulated from liability for alleged discrimination and/or harassment to the extent that such claims are raised in this case because Defendant adopted and enforced an anti-discrimination/no-harassment policy, and Defendants neither knew nor had any reason to know of the alleged acts or omissions complained of in this case.

**SEVENTH AFFIRMATIVE DEFENSE**

Plaintiff's discrimination and/or harassment claims are barred in whole or in part because Defendant exercised reasonable care to prevent and correct any alleged discriminatory or harassing behavior, and Plaintiff unreasonably failed to take advantage of any preventative or corrective opportunities provided by Defendant or to otherwise avoid harm.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Adria B. Martinelli
William W. Bowser, Esquire (Bar I.D. 2239)
Adria B. Martinelli, Esquire (Bar I.D. 4056)
The Brandywine Building, 17th Floor
1000 West Street, P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6601, 6623
Facsimile: (302) 576-3282, 3314
wbowser@ycst.com; amartinelli@ycst.com
Attorneys for Defendant
Delaware River and Bay Authority

DATED:    June 14, 2005

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HOWARD L. MOON, JR., | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
|       v. | )   C.A. No. 05-261-JJF |
| | ) |
| THE DELAWARE RIVER AND BAY AUTHORITY, | )   JURY TRIAL DEMANDED |
| | ) |
|       Defendant. | ) |

## CERTIFICATE OF SERVICE

I hereby certify that on June 14, 2005, I electronically filed a true and correct copy of the foregoing **Answer** with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

    Jeffrey K. Martin (Bar I.D. 2407)
    Keri L. Morris (Bar I.D. 4656)
    Margolis Edelstein
    1509 Gilpin Avenue
    Wilmington, DE 19806

    YOUNG CONAWAY STARGATT & TAYLOR, LLP

    /s/ Adria B. Martinelli
    _____
    William W. Bowser, Esquire (Bar I.D. 2239)
    Adria B. Martinelli, Esquire (Bar I.D. 4056)
    The Brandywine Building, 17th Floor
    1000 West Street
    P.O. Box 391
    Wilmington, Delaware 19899-0391
    Telephone: (302) 571-6601, 6613
    Facsimile: (302) 576-3282, 3314
    Email: wbowser@ycst.com; amartinelli@ycst.com
    Attorneys for Defendants
    Delaware River and Bay Authority