IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HOWARD L. MOON, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-261-JJF |
| | ) | |
| THE DELAWARE RIVER AND BAY AUTHORITY, | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S OPENING BRIEF IN SUPPORT OF
ITS MOTION FOR JUDGMENT ON THE PLEADINGS**

YOUNG CONAWAY STARGATT & TAYLOR, LLP

William W. Bowser, Esquire (Bar I.D. 2239)
Adria B. Martinelli, Esquire (Bar I.D. 4056)
The Brandywine Building, 17th Floor
1000 West Street, P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6601, 6623
Facsimile: (302) 576-3282, 3314
wbowser@ycst.com; amartinelli@ycst.com
Attorneys for Defendant
Delaware River and Bay Authority

DATED:        August 3, 2005

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ................................................................. iii

NATURE AND STAGE OF THE PROCEEDING.........................................................2

STATEMENT OF FACTS ............................................................................3

SUMMARY OF ARGUMENT ......................................................................9

ARGUMENT ..............................................................................................9

I.     STANDARD OF REVIEW ................................................................9

II.    ALLEGATIONS REGARDING TITLE VII VIOLATIONS NOT
RAISED IN HIS EEOC CHARGES FILED WITH THE EEOC
SHOULD BE DISMISSED FOR FAILURE TO EXHAUST
ADMINISTRATIVE REMEDIES ....................................................10

A.    Claims Under Title VII Must Be Filed Administratively Unless A
Reasonable Investigation Would Have Revealed The Additional
Claims ......................................................................................10

B.    Moon's Claims Regarding Hostile Work Environment Must Be
Dismissed Because He Failed To Raise These Claims In His
EEOC Charges .........................................................................11

1.    Moon includes numerous factual allegations in his complaint
which were not included in his EEOC charges......................................11

2.    Moon's hostile work environment claims cannot be inferred from
his EEOC charges of discrimination and retaliation.............................12

3.    Moon's hostile work environment claims should be dismissed
because Moon failed to mention any facts which would support
such a claim in his EEOC charges .......................................13

4.    Moon's hostile work environment claims must be dismissed
because they do not "logically flow from" the allegations included
in his charge .............................................................................17

5.    Moon's hostile work environment claims must be dismissed
because neither the EEOC nor the defendant had notice of Moon's
hostile work environment ......................................................18

C.    Moon's Claims Regarding The Chief Operations Officer Position
Must Be Dismissed Because He Failed To Raise It In His EEOC
Charges And Because It Is Time-Barred ...............................18

DB01:1713626.5
051649.1010

III.    MOON'S IMPLIED COVENANT CLAIM SHOULD BE
        DISMISSED ..........................................................................................................19

A.      Moon's Implied Covenant Claim Should Be Dismissed Because It
        Is Barred By The Exclusivity Provision Of The Discrimination In
        Employment Act ................................................................................................19

B.      Moon's Implied Covenant Claim Should Be Dismissed Because He
        Was Not Terminated ..........................................................................................21

CONCLUSION ..........................................................................................................22

DB01:1713626.5

051649.1010

# TABLE OF AUTHORITIES

**CASES**                                                                                          **PAGE**

Antol v. Perry,
    82 F.3d 1291 (3d Cir. 1996) ..................................................................................... 13

Briggs v. New York State Dep't of Transportation,
    No. 04-CV-765, 233 F. Supp.2d 367 (N.D.N.Y. 2002)................................... 15, 16, 17

Byrne v. Telesector Resources Group, Inc.,
    2005 U.S. Dist. LEXIS 7155 (W.D.N.Y. Feb. 25, 2002) ...................................... 16, 17

Cheek v. Western & Southern Life Ins.,
    31 F.3d 497 (7th Cir. 1994) ...................................................................................... 12

Cornwell v. Robinson,
    23 F.3d 694 (2d Cir. 1994) ....................................................................................... 10

Doe v. Delie,
    257 F.3d 309 (3d Cir. 2001) ....................................................................................... 9

E.I. Dupont de Nemours and Co. v. Pressman,
    679 A.2d at 436 (Del. 1996) ............................................................................... 19, 20

Ebert v. Office of Info. Servs.,
    No. 97-530, 1998 U.S. Dist. LEXIS 9100 (D. Del. 1998).................................... passim

Hishon v. King & Spalding,
    467 U.S. 69 (1994)...................................................................................................... 9

Holman v. Trammel Crow Co.,
    No. 03-3603, 2005 U.S. Dist. LEXIS 1608 (E.D. Pa. Feb. 3, 2005) ........................... 14

Kaplan v. Int'l Alliance of Theatrical & Stage Employees,
    525 F.2d 1354 (9th Cir. 1975) ................................................................................... 10

Kloos v. Carter-Day Co.,
    799 F.2d 397 (8th Cir. 1986) ..................................................................................... 10

Lawton v. Sunoco, Inc.,
    No. 01-2784, 2002 U.S. Dist. LEXIS 13039 (E.D. Pa. July 17, 2002) ....................... 14

Lord v. Souder,
    748 A.2d 393 (Del. 2000) .......................................................................................... 19

Merrill v. Crothall-American, Inc.,
    606 A.2d 96 (Del. 1992) ...................................................................... 19, 21

Moore v. Tartler,
    986 F.2d 682 (3d Cir. 1993) ...................................................................... 9

Nerosa v. Storecast Merchandising Corp.,
    No. 02-440, 2002 U.S. Dist. LEXIS 16210 (E.D. Pa. Aug. 28, 2002) .................. 12, 17

Ostapowicz v. Johnson Bronze Co.,
    541 F.2d 394 (3d Cir. 1976) ...................................................................... 10

Paci v. Rollins Leasing Corp.,
    1997 U.S. Dist. LEXIS 21018 (D. Del. Dec. 8, 1997) ........................................... 10, 11

Rush v. Scott Specialty Gasses, Inc.,
    113 F.3d 476 (3d Cir. 1997) ...................................................................... 19

Schuster v. Rocilli,
    775 A.2d 1029 (2001) ............................................................................. 20

Turbe v. Gov't of the Virgin Islands,
    938 F.2d 427 (3d Cir. 1991) ...................................................................... 9

Visnikar v. Department of Environmental Protection,
    No. 02-963, 2004 U.S. Dist. LEXIS 3645, (W.D. Pa. Jan. 27, 2004) .................. 13, 14


## STATUTES

19 Del. C. § 712 (b) ........................................................................... 21

19 Del. C. Chapter 7 ........................................................................... 20

Fed. R. Civ. P. 12(b)(6)........................................................................ 9

Fed. R. Civ. P. 12(c) ........................................................................... 9

S.B. 154, 142d Gen. Ass. (Del. 2004)........................................................... 21

## NATURE AND STAGE OF THE PROCEEDING

Plaintiff Howard L. Moon ("Moon") filed this lawsuit against his employer, the Delaware River & Bay Authority ("DRBA") on May 2, 2005, claiming that the DRBA had unlawfully discriminated against him on the basis of race and that he was retaliated against after he filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). In his 66-paragraph complaint ("Complaint"), Moon makes allegations going back to 1992 , far exceeding the scope of his EEOC charges. Specifically, Moon asserts the following causes of action: (1) Title VII – Retaliation, based on his denial of promotions and hostile working environment; (2) Racial Discrimination – based on depriving Moon of equal employment opportunities in violation of Title VII; (3) Racial Discrimination – Failure to Promote – based on denying Moon opportunities to interview and denial of positions; (4) Breach of Covenant of Good Faith and Fair Dealing – based on failure to promote him and discriminating against him on the basis of race.

In Moon's Complaint, his discrimination allegations have morphed from the specific failure to promote claims identified in his charge of discrimination filed with the EEOC, to a litany of hostile work environment claims dating back to two weeks after his hire with the DRBA in 1992. D.I. 1 ¶ 5.

On June 14, 2005, DRBA filed its answer to Moon's Complaint. On August 3, 2005, DRBA filed a Motion for Judgment on the Pleadings. This motion seeks dismissal of Moon's hostile work environment claims and his claim regarding failure to promote to the COO position because these claims were not filed administratively with the EEOC. In addition, DRBA seeks to dismiss Moon's implied covenant claim as this

DB01:1713626.5                                                                  051649.1010

claim is barred by the exclusivity provision of Delaware's Discrimination in Employment

Act.  This is DRBA's brief in support of its Motion for Judgment on the Pleadings.

## STATEMENT OF FACTS

**Moon Files Charge Of Discrimination**

On April 6, 2004, Moon, the Ferry Reservations Administrator for the

DRBA, filed a Discrimination Charge with the EEOC.  D.I. 1 ¶ 33; A1-2.  This charge

was based solely on DRBA's failure to promote Moon to specific positions Moon applied

for in 2003.  Specifically, Moon alleged that he was unfairly denied the following

positions in favor of less-qualified Caucasian candidates:

1. He was denied a promotion to the position of
   EZ-Pass Manager in June 2003.

2. He was denied a promotion to the position of
   Business Development Representative (a position
   which he admits in the same charge he did not apply
   for) in November 2003.

3. He was denied the opportunity to compete for the
   position of Acting Director of Ferry Operations in
   September 2003.

4. He was denied the promotion to the position of
   Director of Ferry Operations in November 2003.

5. He was denied a promotion to the director of Toll
   Operations/Toll Superintendent December 2003.

A1-2.

In addition, Moon claimed that in or around April 1, 2204, he met with

Trudy Spence-Parker ("Spence-Parker"), James T. Johnson, Jr. ("Johnson"), and

Consuella Petty-Judkins ("Petty-Judkins") and that during the meeting in response to

Moon's providing examples of discrimination in the workplace, Spence-Parker "put her

finger in his face and shouted" at him.  A2.

Lastly, Moon alleged in his Discrimination Charge that "Black employees are discriminated against, as a class, by being subjected to differential terms and conditions of employment. Additionally, Black employees are under-represented, as a class, in upper management positions and the organization, as a whole." Moon checked the box "RACE" to identify what the alleged discrimination was based on and stated that the earliest discrimination took place on **June 1, 2003**, and that the latest discrimination took place on **January 26, 2004**. He did not check the box indicating that the discrimination was a "CONTINUING ACTION." A1.

**Moon Files Retaliation Charge With The EEOC**

On September 24, 2004, Moon filed a second charge, the Retaliation Charge, this time alleging retaliation for his earlier Discrimination Charge. A3-4. Specifically, he alleges in the Retaliation Charge that the following acts were a result of unlawful retaliation:

1. Moon's exclusion from Strategic Planning Meetings in April, June, and August 2004.

2. Walls's denial of public information Moon requested to prepare for his interview for the Superintendent of Tolls position in June 2004.

3. Moon was not selected to fill the Superintendent of Tolls position in August 2004.

4. Moon was not selected to interview for the position of Assistant Director of Ferry Operations in July 2004.

5. Johnson telling other employees not to talk to Moon since the DRBA was served a letter by Moon's attorney.

A2.

In addition, Moon makes a sweeping allegation similar to that in his Discrimination Charge, that "African American employees continue to be denied equal opportunity for promotions and advancement and [are] subjected to a different standard than white employees."  A4.

In his Retaliation Charge, Moon identified that his discrimination was based on "RETALIATION" and identified the dates discrimination took place as (earliest) **April 30, 2004**, through (latest) **September 24, 2004**.  A3.  He did not check the box indicating that the discrimination was a "CONTINUING ACTION."  A3.

**EEOC Dismisses Moon's Retaliation Charge**

On January 31, 2005, the EEOC issued a determination on Moon's Retaliation Charge, stating that it was "unable to conclude that the information obtained establishes violations of the statutes," and issued a Right-to-Sue.  A5.  Pursuant to Moon's request, the EEOC closed its investigation into the earlier-filed Discrimination Charge, and issued a Right-to-Sue on February 22, 2005.

**Moon Files Lawsuit Containing Hostile Work Environment Allegations Not Included In His EEOC Charges**

On May 2, 2005, Moon filed this lawsuit against the DRBA.  In his 66-paragraph Complaint, Moon makes allegations going back to 1992 , far exceeding the scope of his EEOC charges.  Specifically, Moon asserts the following causes of action: (1) Title VII – Retaliation, based on his denial of promotions and hostile working environment; (2) Racial Discrimination – based on depriving Moon of equal employment opportunities in violation of Title VII; (3) Racial Discrimination – Failure to Promote – based on denying Moon opportunities to interview and denial of positions; (4) Breach of

Covenant of Good Faith and Fair Dealing – based on failure to promote him and discriminating against him on the basis of race.  D.I. 1.

In Moon's Complaint, his discrimination allegations have morphed from the specific failure to promote claims identified in his EEOC charges, to a litany of hostile work environment claims dating back to two weeks after his hire with the DRBA in 1992.  D.I. 1 ¶ 5.  These allegations are synopsized in the chart below.  Any allegations which were included in Moon's EEOC charges are identified with an "**\***" or "**\*\***" and italicized.  All remaining allegations are brand new to the Complaint.

| DATE | ACT/INCIDENT |
|---|---|
| No dates given (started within 2 weeks of hire and continuing) | Racially derogatory comments (D.I. 1 ¶ 5) |
| No dates given (in Complaint near events of 2002) | Several budget reductions (attempt to constructively discharge) (D.I. 1 ¶ 19) |
| After 1/96 | "[R]acial gestures about Renard Johnson [sic]" (D.I. 1 ¶ 6) |
| Summer 1998 | Ku Klux Klan hoods, noose ropes, burning paper cone (did not happen to Moon but he expressed concern about them) (D.I. 1 ¶ 7) |
| Summer 1998 | Inadequate response to these incidents by Russell (D.I. 1 ¶ 7) |
| 11/00-02/01 | Investigation of Moon by Russell, Murphy, and Cox, and threats/intimidation of Russell (D.I. 1 ¶ 9) |
| 04/01 | Russell informs Moon that he cannot go to school that summer (D.I. 1 ¶ 11) |
| 05/01* | *Failure to promote: EZ Pass Manager (D.I. 1 ¶ 12)* |
| 03/02-5/02 | Hay Group Pay Structure Review Process (seems to allege improper manipulation of review process, but the facts and implications are not clear) (D.I. 1 ¶¶ 13-14) |
| 05/02 | Russell attempts to intimidate Moon into testifying for him in a discrimination suit (D.I. 1 ¶ 15) |

| DATE | ACT/INCIDENT |
|---|---|
| 07/02 | Moon informed DRBA will not pay full cost of MBA program<br>(D.I. 1 ¶ 16) |
| 07/02 | Meeting with Johnson, Cox, Lewis, Russell, and Murphy, attempted assault by Russell (no disciplinary action against Russell)<br>(D.I. 1 ¶ 17) |
| 10/02 | Failure to Promote: COO<br>(D.I. 1 ¶ 18) |
| 12/02 | Threatened by Russell<br>(D.I. 1 ¶ 20) |
| 01/03 | Moon "humiliated and offended" at meeting with Johnson and Murphy<br>(D.I. 1 ¶ 18) |
| 02/03 | Required to make up time missed for classes, refusal to allow special software on DRBA computer ("violation of sponsorship agreement")<br>(D.I. 1 ¶ 21) |
| 05/03 | Esposito comment about "black culture"<br>(D.I. 1 ¶ 22) |
| 05/03 | "Bad career advice" from Spence-Parker<br>(D.I. 1 ¶ 23) |
| 08/03 (no date was given but it was mentioned as being after hiring of EEO Manager) | Esposito comment about having positions for minorities as janitors<br>(D.I. 1 ¶ 24) |
| 09/03* | *Failure to promote: Acting Director of Ferry Operations*<br>*(D.I. 1 ¶ 24)* |
| 09/03* | *Failure to Promote: Acting Assistant Director of Ferry Operations*<br>*(D.I. 1 ¶ 25)* |
| 10/03 | Letter from Russell telling Moon that because he had not signed "service agreement" that he would not receive money for MBA classes<br>(D.I. 1 ¶ 26) |
| 10/03 | Meeting with Spence-Parker and Walls about Russell's letter (disputed leave time and funding (endorsement/sponsorship))<br>(D.I. 1 ¶ 27) |
| 10/03 | Failure to Promote: Acting Toll Plaza Manager<br>(D.I. 1 ¶ 28) |
| 11/03* | *Failure to Promote: Director of Ferry Operations*<br>*(D.I. 1 ¶ 29)* |

| DATE | ACT/INCIDENT |
|---|---|
| 02/03/04 | Moon's letter to Chair & Vice Chair of Board re: history of racism, lack of opportunities for promotion, lower pay, lack of diversity, under-representation, affirmative action violations<br>(D.I. 1 ¶ 30) |
| 04/01/04** | *Meeting with Spence-Parker, Johnson, and Petty-Judkins ("shouting/threats" by Spence-Parker)*<br>*(D.I. 1 ¶ 32)* |
| 04/04 and 06/04** | *Exclusion from planning meetings*<br>*(D.I. 1 ¶ 35)* |
| 06/04 | Promotion of Rudolph (affect on Moon is not clear)<br>(D.I. 1 ¶ 34) |
| 06/04** | *Controller refused to give Moon information to prepare for an interview*<br>*(D.I. 1 ¶ 36)* |
| 07/04** | *Statement of Johnson to another employee about Moon's EEOC charge and lawyer*<br>*(D.I. 1 ¶ 37)* |
| 07/04** | *Failure to Promote to Assistant Director of Ferry Operations*<br>*(D.I. 1 ¶ 38)* |
| 08/04 | Acting Toll Superintendent refused to meet with Moon before his interview for the job<br>(D.I. 1 ¶ 39) |
| 08/04** | *Failure to Promote to Superintendent of Tolls*<br>*(D.I. 1 ¶ 39)* |
| 01/05 | MUNIS budget reduction<br>(D.I. 1 ¶ 42) |
| 01/05 | Invitation to planning session<br>(D.I. 1 ¶ 43) |

\*    included in First (Discrimination) Charge

\*\* included in Second (Retaliation) Charge

As made clear by the above list, the vast majority of the allegations brought in Moon's

Complaint were not raised in either of his two charges filed with the EEOC.

## SUMMARY OF ARGUMENT

1.      Moon's allegations relating to hostile work environment, not previously raised in Moon's EEOC charges based on failure to promote, should be dismissed for failure to administratively exhaust because no reasonable investigation by the EEOC would have encompassed these claims.

2.      Moon's allegations relating his failure to receive the Chief Operations Officer position should be dismissed because he failed to raise this claim in his EEOC charges and it is time-barred.

3.      Moon's implied covenant claim should be dismissed because the Delaware Discrimination in Employment Act, 19 Del. C. Chapter 7, provides that the Act is the exclusive remedy for violations of that chapter, including racial discrimination.

## ARGUMENT

### I.      STANDARD OF REVIEW

The standard applied to a Fed. R. Civ. P. 12(c) motion for judgment on the pleadings is similar to that applied to a Fed. R. Civ. P. 12(b)(6) motion to dismiss. See Turbe v. Gov't of the Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991). Under Rule 12(b)(6), the court must "accept as true all of the factual allegations in the complaint as well as the reasonable inferences that can be drawn from them." Doe v. Delie, 257 F.3d 309, 313 (3d Cir. 2001) (citing Moore v. Tartler, 986 F.2d 682, 685 (3d Cir. 1993)). A complaint may be dismissed if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Delie, 257 F.3d at 313 (citing Hishon v. King & Spalding, 467 U.S. 69, 73 (1994)).

II.    **ALLEGATIONS REGARDING TITLE VII VIOLATIONS
NOT RAISED IN HIS EEOC CHARGES FILED WITH
THE EEOC SHOULD BE DISMISSED FOR FAILURE
TO EXHAUST ADMINISTRATIVE REMEDIES**

A.    **Claims Under Title VII Must Be Filed Administratively Unless A
Reasonable Investigation Would Have Revealed The Additional Claims**

A plaintiff must file a claim with the EEOC within a specified time period
after the alleged violation and obtain a right-to-sue letter before bringing an employment
discrimination claim under Title VII.  Paci v. Rollins Leasing Corp., 1997 U.S. Dist.
LEXIS 21018 at *15 (D. Del. Dec. 8, 1997); Cornwell v. Robinson, 23 F.3d 694, 706 (2d
Cir. 1994).  Because the statutory scheme of Title VII "emphasizes informal means of
achieving settlement over formal adjudication, a potential plaintiff normally is required to
set forth in the charge to the EEOC those allegations subsequently raised in the district
court."  Paci, 1997 U.S. Dist. LEXIS at *15.

This requirement has two purposes: (1) to give the charged party notice of
the alleged violation; and (2) to allow the agency an opportunity to investigate and
attempt to conciliate the charge.  Kloos v. Carter-Day Co., 799 F.2d 397, 400 (8th Cir.
1986).

As this Court has recognized, a civil suit filed under Title VII is limited to
claims that were within the scope of the EEOC investigation that can reasonably be
expected to flow from the charge of discrimination.  See Ostapowicz v. Johnson Bronze
Co., 541 F.2d 394, 399-98 (3d Cir. 1976); Ebert v. Office of Info. Servs., No. 97-530,
1998 U.S. Dist. LEXIS 9100, *12 (D. Del. 1998).  In this respect, "[t]he factual statement
included in the charge of discrimination is the 'crucial element' when examining [a]
charge for exhaustion."  Kaplan v. Int'l Alliance of Theatrical & Stage Employees, 525
F.2d 1354, 1359 (9th Cir. 1975).

DB01:1713626.5                                                            051649.1010

This Court in <u>Paci</u> set forth the standards for determining when a plaintiff may assert a new claim not contained in the charge filed with the EEOC.  In this regard, the Court stated:

> [A] trial court may assume jurisdiction over additional charges only if "they are reasonably within the scope of the complainant's original charges and if a reasonable investigation by the EEOC would have encompassed the new claims."

<u>Paci</u>, 1997 U.S. Dist. 21018 at *17 (citations omitted).

Moon has included in his Complaint numerous allegations which he did not raise in either of his two charges filed with the EEOC, as detailed above in the "Facts" section.  These allegations clearly exceed the scope of the original charges, and any investigation by the EEOC could not conceivably encompass such claims.  The specific allegations which Moon did not raise administratively are set forth and addressed below

**B.    Moon's Claims Regarding Hostile Work Environment Must Be Dismissed Because He Failed To Raise These Claims In His EEOC Charges**

**1.    Moon includes numerous factual allegations in his complaint which were not included in his EEOC charges**

The vast majority of the allegations contained in Moon's Complaint were not included in either of his EEOC charges.  <u>See</u> chart of allegations included in the "STATEMENT OF FACTS" above.  Moon's EEOC charges were based on a failure to promote theory and identified seven specific positions which he believed he was unfairly denied.  Furthermore, the EEOC charges were limited to discrete timeframes: **June 1, 2003 - January 26, 2004**, and **April 30, 2004 - September 24, 2004**.  Now, in an attempt to sweep otherwise time-barred allegations dating back to 1992 into his Complaint, his Failure to Promote claim has morphed into one for hostile work environment.  As shown

in the chart of allegations above, Moon has included in his Complaint more than 26 incidents spanning from 1992 – 2005, which he failed to address in either charge. As discussed below, the Court should not countenance this blatant attempt to evade the administrative requirements set forth in Title VII.

2.    **Moon's hostile work environment claims cannot be inferred from his EEOC charges of discrimination and retaliation**

Hostile work environment claims cannot ordinarily be inferred from administrative charges of discrimination. See Cheek v. Western & Southern Life Ins., 31 F.3d 497, 504 (7th Cir. 1994). See also Nerosa v. Storecast Merchandising Corp., No. 02-440, 2002 U.S. Dist. LEXIS 16210, at *16 (E.D. Pa. Aug. 28, 2002) (holding that "proof of bias or animus of a type required to establish any claim of intentional discrimination does not necessarily show the existence of a hostile work environment"). Therefore, Moon's allegations of racial discrimination in his administrative charges, without more, did not put the EEOC on notice of a hostile work environment claim.

This Court in Ebert analyzed the exhaustion requirement where the plaintiff had not explicitly set out the claims alleged in her complaint, in her earlier-filed charge of discrimination. In Ebert, the charge filed with the EEOC alleged an ongoing course of gender discrimination and retaliation. Id. at **14-15. In her complaint, she also included claims of hostile work environment and failure to promote. Id. at *15.

The Court held that Ebert's hostile work environment claims were within the scope of the initial charge allegations, while the failure to promote claims were not. The Court dismissed the failure to promote claims based on the following facts: (1) there was no mention or allegation of any facts to support a claim of failure to promote or advance in her charge or subsequent communications with the EEOC; (2) her failure to

promote claim does not logically flow from, and would have required investigation of events not raised by, claims of gender discrimination; and (3) neither the EEOC nor defendant were put on notice of plaintiff's failure to promote claim; thus the EEOC was not "afforded . . . the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court." Id. at **17-18 (quoting Antol v. Perry, 82 F.3d 1291, 1296 (3d Cir. 1996)).  These factors are applied to Moon's allegations below.

3.     **Moon's hostile work environment claims should be dismissed because Moon failed to mention any facts which would support such a claim in his EEOC charges**

        Moon's hostile work environment claims should be dismissed because Moon's EEOC charges did not mention any facts which would support a claim of hostile work environment.  Moon's EEOC charges focused on specific promotions he did not receive and alleged that these failures to promote him were motivated first by racial bias and later in retaliation for his initial EEOC charge.  Moreover, the EEOC charges delineated a specific timeframe: June 1, 2003 - January 26, 2004, and April 30, 2004 - September 24, 2004.  These allegations are not the type that would support a claim of a hostile work environment.  See, e.g., Visnikar v. Department of Environmental Protection, No. 02-963, 2004 U.S. Dist. LEXIS 3645, at *19 (W.D. Pa. Jan. 27, 2004) (stating that the EEOC investigation did not address any evidence of a hostile work environment, only evidence concerning her disparate treatment and retaliation claims).

        Moon failed to allege any specific facts he later supplied in his Complaint to support a hostile work environment claim.  For instance, in his Complaint he alleged incidents regarding several racially motivated statements dating back to 1998, none of which he mentions in either of his EEOC charges, which were limited to very discrete

timeframes.  The EEOC charges would in no way prompt an investigation of a hostile

work environment claim and certainly would not have prompted the EEOC to investigate

incidents which occurred as long as 10 years before the date that Moon identified as the

first occurrence of discrimination.

        Where the charge does not identify remarks which would put the agency

on notice of a hostile work environment claim, the hostile environment claims must be

dismissed.  See, e.g.,  Visnikar, 2004 U.S. Dist. LEXIS 3645, at *10 (dismissing hostile

work environment claims where the charge did not "identify a single remark or any other

sexually harassing conduct towards the [p]laintiff that would have put either the EEOC or

the defendants on notice that this type of claim served as the basis of her action[,]" and

the investigation conducted by the EEOC focused on the substance of the charges and did

not extend to the working environment); Lawton v. Sunoco, Inc., No. 01-2784, 2002 U.S.

Dist. LEXIS 13039, at *13 (E.D. Pa. July 17, 2002) (dismissing plaintiff's hostile

working environment allegations, noting that neither the charge filed with the EEOC nor

the supplementary document submitted with it identified "a single remark or any other

racially harassing conduct directed towards [the plaintiff]" and therefore did not provide

appropriate notice of these claims).  Moon, like the plaintiffs in Visnikar and Lawton,

failed to identify a single remark or harassing conduct he later included in his Complaint.

Therefore, these allegations must be dismissed.

        Even where facts are presented in the charge which may be

"environmental" in nature, such facts must be offered in the context of a hostile work

environment claim, not in relation to other claims.  In Holman v. Trammel Crow Co.,

No. 03-3603, 2005 U.S. Dist. LEXIS 1608, at *13 (E.D. Pa. Feb. 3, 2005), , for example,

                        

the court dismissed plaintiff's hostile work environment claim because, although the plaintiff had referenced racist remarks made by his supervisor in his EEOC charge, they were reported "in the context of [his supervisor's] interference with what [the plaintiff] believed to be his job duties," not a hostile work environment.

Similarly, while some facts alleged in Moon's EEOC charges could support a hostile work environment claim, they were not presented in the context of a racially hostile work environment.  For instance, Moon described in his first charge an incident in which Spence-Parker "put her finger in [his] face and shouted."  A2. However, this alleged behavior was in response to a statement by Moon about the promotion process at the DRBA.[1]  Similarly, factual elements in the second charge, such as Moon's exclusion from planning meetings, the refusal to give him information to prepare for an interview, and statements by Johnson about his initial charge, were all presented as evidence of retaliation—not as evidence of a hostile work environment. Therefore, these statements were insufficient to put the EEOC on notice that a hostile work environment claim was being implicated.  See Holman, 2005 U.S. Dist. LEXIS at *13.

Furthermore, Moon's conclusory and boilerplate statements, without supporting details, are insufficient to give notice of a hostile environment claim.  Briggs v. New York State Dep't of Transportation, No. 04-CV-765, 233 F. Supp.2d 367, 376 (N.D.N.Y. 2002); Byrne v. Telesector Resources Group, Inc., 2005 U.S. Dist. LEXIS

---

[1]The charge does not explain the context of the remark, however paragraph 32 of the Complaint reveals that Spence-Parker was reacting to a statement made by Moon about the promotions of other DRBA employees.

7155, at *23 (W.D.N.Y. Feb. 25, 2002) (both dismissing hostile work environment

claims where only notice consisted of conclusory or boilerplate statements).

In each of his EEOC charges, Moon includes vague and conclusory

statements, such as:

- "African Americans employees continue to be denied equal opportunity for promotions and advancement and subjected to a different standard than white employees"

- "Black employees are discriminated against, as a class, by being subjected to differential terms and conditions of employment."

- "Black employees are underrepresented, as a class, in upper management positions and the organization, as a whole."

A4; A2.  These types of statements are remarkably similar to the ones deemed

insufficient to provide notice of hostile work environment claims in Briggs and Byrne.  In

Briggs, the plaintiff alleged in the complaint that she was "subjected to a sexually

offensive and hostile work environment, subjected to different terms and conditions of

employment, and retaliated against for having complained about sexual harassment in

violation of Title VII."  Briggs, 233 F. Supp.2d at 371.  In Byrne, the plaintiff alleged in

her charge that "the hostile work environment has included many comments and conduct

which were offensive and sexual in nature," without providing any information as to

what, in her view, constituted offensive conduct, who engaged in the conduct or when

any incidents occurred.  Byrne, 2005 U.S. Dist. LEXIS at *23.

Like the "boilerplate" language and conclusory statements complained of

in Byrne and Briggs, Moon's conclusions, without factual support, would not reasonably

prompt the EEOC to investigate a hostile work environment.  Moreover, the nature of the

conclusory statements themselves are even less suggestive of a hostile work environment than those in <u>Briggs</u> and <u>Byrne</u>.

**4.    Moon's hostile work environment claims must be dismissed because they do not "logically flow from" the allegations included in his charge**

In addition, Moon's allegations supporting a hostile work environment do not "logically flow from" the specific allegations in his EEOC charges relating to his failure to receive certain promotions he applied for.  <u>See</u> <u>Ebert</u>, 1998 U.S. Dist. LEXIS at **17-18.  In order to put the administrative agency on notice of a hostile work environment claim where it is not specifically denoted in the charge, there must be a "close nexus between the facts" of that claim and the content of the administrative charges.  <u>Nerosa</u>, 2002 U.S. Dist. LEXIS 16210, at *12 (dismissing plaintiff's hostile work environment claims where nothing in the charge fulfilled the requirement of a "close nexus between the facts" of that claim and the content of the administrative charges).

The plaintiff in <u>Nerosa</u> filed an EEOC charge alleging that her employer had discriminated against her in salary because of her gender and that she had been terminated because of her gender and disability.  <u>Id.</u> at *5.  Moreover, she indicated on the charge that all discrimination took place on the date she was terminated.  <u>Id.</u> at *12.  Based on these facts, the court concluded that there was no "close nexus" between the facts of her lawsuit and administrative claims and dismissed her hostile work environment claims on the defendant's motion to dismiss.  <u>Id.</u> at *12.

Similarly, there is no close nexus of facts between Moon's hostile work environment allegations in his lawsuit and the facts asserted in his EEOC charges.  Like Nerosa, Moon restricted his EEOC charges to discrete timeframes, which did not include

the period during which the alleged acts creating a hostile work environment occurred.

Also like Nerosa, Moon identified discrete acts of discrimination, rather than statements

or actions that would suggest a hostile work environment.  Therefore, Moon's hostile

work environment allegations should be dismissed.

5.    **Moon's hostile work environment claims must be dismissed because neither the EEOC nor the defendant had notice of Moon's hostile work environment**

Finally, it is clear that neither the EEOC nor the DRBA were put on notice

of Moon's hostile work environment claim; thus the EEOC was not "afforded . . . the

opportunity to settle disputes through conference, conciliation, and persuasion, avoiding

unnecessary action in court."  See Ebert, 1998 U.S. Dist. LEXIS at \*\*17-18.  To allow

Moon's hostile work environment claims to proceed without notice to either the EEOC or

the DRBA would defeat the purpose of the administrative requirements of Title VII.  See

Ebert, 1998 U.S. Dist. LEXIS at \*12 (noting that the statutory scheme of Title VII

emphasizes informal means of achieving settlement over formal adjudication, thus

plaintiffs are required to set forth in the charge to the EEOC those allegations

subsequently raised in the district court).

C.    **Moon's Claims Regarding The Chief Operations Officer Position Must Be Dismissed Because He Failed To Raise It In His EEOC Charges And Because It Is Time-Barred**

Moon alleges in his Complaint that in November of 2002, he was passed

over for the position of Chief Operations Officer.  D.I. 1 ¶ 18.  He insinuates that the

decision was a result of racial discrimination in violation of Title VII.  He did not

mention this position (nor any allegations prior to June 1, 2003) in his Discrimination

Charge.  Therefore, he cannot now bring this allegation before the Court.

18

Moreover, this allegation is clearly time-barred. The Third Circuit Court of Appeals has held that failure to promote claims, which occur at a discrete point in time, cannot be woven into a hostile environment/ continuing violation claim such that a plaintiff would have more than 300 days to file a charge on such a claim. See Rush v. Scott Specialty Gasses, Inc., 113 F.3d 476, 484 (3d Cir. 1997) (holding that the defendant's failure to consider the plaintiff for promotion, was an "independent act" that should have prompted the plaintiff to file a charge of discrimination).

### III.    MOON'S IMPLIED COVENANT CLAIM SHOULD BE DISMISSED

### A.    Moon's Implied Covenant Claim Should Be Dismissed Because It Is Barred By The Exclusivity Provision Of The Discrimination In Employment Act

Delaware courts have carved out an exception to the general presumption that a contract for employment, unless otherwise expressly stated, is at-will in nature, with duration indefinite. Merrill v. Crothall-American, Inc., 606 A.2d 96, 102 (Del. 1992). While at-will employment remains a heavy presumption, the Delaware Supreme Court has recognized the limited application of the implied covenant of good faith and fair dealing (the "Covenant") to an at-will employment contract. Id.

The Delaware Supreme Court, however, has strictly limited the application of the Covenant in the employment context, holding that a plaintiff must establish that he or she falls into one of four specific categories. E.I. Dupont de Nemours and Co. v. Pressman, 679 A.2d at 436, 442 (Del. 1996); Lord v. Souder, 748 A.2d 393, 401 (Del. 2000) (holding that the four categories are exclusive). The four categories are: (1) where the discharge violates public policy; (2) where the employer misrepresented an important fact, and the employee relied thereon to either accept a new position or remain in a present one; (3) where the employer used its superior bargaining power to deprive an

employee of clearly identifiable compensation earned through the employee's past service; and (4) where the employer falsified or manipulated employment records to create fictitious grounds for discharge.  See Pressman, 679 A.2d at 441-44.

        Moon failed to allege which of the four prongs he is alleging under the implied covenant.  Moon states only that "Defendant breached the Covenant of Good Faith and Fair Dealing to Moon by failing to promote him and by discriminating against him because of his race."  D.I. 1 ¶ 64.  Based on this statement, as well as the detailed allegations in the remaining Complaint, the only conceivable category that could be implicated is the public policy prong.

        The Delaware Supreme Court established in Schuster v. Rocilli, 775 A.2d 1029 (2001), that a discrimination claim arising under Title VII or the Delaware Discrimination in Employment Act, 19 Del. C. Chapter 7 , violated the public policy of Delaware and as such could be raised under an implied covenant claim.  The effect of this ruling was to allow plaintiffs alleging discrimination to evade the administrative filing requirements and damage caps under Title VII.

        In 2004, the Delaware General Assembly acted to clarify the reach of implied covenant claims where they implicate rights already protected by state statutes. The amendment to the Delaware Code relating to Discrimination in Employment, enacted in July 2004, states that:

> the Department shall have jurisdiction over all cases arising under this chapter, affording review and oversight of employment practices in Delaware.  The Department shall endeavor to eliminate unlawful discrimination in employment through its administrative process set forth below.  This subchapter shall afford the sole remedy for claims alleging a violation of this chapter to the exclusion of all other remedies.

19 Del. C. § 712 (b) (emphasis added).  Furthermore, the synopsis of the amendments

written by the Delaware General Assembly states that:

> [t]his bill confirms that Chapter 7 is the exclusive and sole
> remedy for employment discrimination claims, requiring
> initial processing of all such claims with the Department of
> Labor for review and action.  This bill effectively re-
> establishes the exclusive remedy put in question by the
> decision in *Schuster v. Derocili*, 774 A.2d 1029 (2001).

S.B. 154, 142d Gen. Ass. (Del. 2004) (emphasis added).  Therefore, it is clear that the

Delaware General Assembly intended specifically to preclude the type of implied

covenant claim that Moon brings in this lawsuit.  His claims are based solely on racial

discrimination and retaliation, causes of action which are addressed in Title VII and the

Delaware Discrimination in Employment Act.  Therefore, these statutes provide the

exclusive remedy and Moon's implied covenant claim should be dismissed.

**B.      Moon's Implied Covenant Claim Should Be
          Dismissed Because He Was Not Terminated**

As discussed above, the implied covenant theory was created by Delaware

courts as an exception to the general rule of at-will employment.  See Merrill, 606 A. 2d

at 102.  As such, it is applicable only when an employee is terminated.  Moon was never

terminated; he remains an employee of the DRBA as of the filing of this brief.  D.I. 1 ¶ 1.

[2]  The implied covenant claim is therefore inapplicable to his claims, which consist of

racial discrimination and harassment, which never resulted in a termination.  For this

reason, Moon's implied covenant claim should be dismissed.

---

[2]Moreover, Moon has not alleged that he was constructively terminated, nor has he
alleged facts constituting a constructive termination.

## **CONCLUSION**

For the foregoing reasons, the DRBA respectfully requests that Moon's

Complaint be dismissed in part, dismissing the implied covenant claim and all other

allegations except the failure to promote allegations previously raised with the EEOC.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Adria B. Martinelli
William W. Bowser, Esquire (Bar I.D. 2239)
Adria B. Martinelli, Esquire (Bar I.D. 4056)
The Brandywine Building, 17th Floor
1000 West Street, P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6601, 6623
Facsimile: (302) 576-3282, 3314
wbowser@ycst.com; amartinelli@ycst.com
Attorneys for Defendant
Delaware River and Bay Authority

DATED:      August 3, 2005

DB01:1713626.5                                                                 051649.1010

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HOWARD L. MOON, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-261-JJF |
| | ) | |
| THE DELAWARE RIVER AND BAY AUTHORITY, | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on August 3, 2005, I electronically filed a true and correct

copy of the foregoing **Defendant's Opening Brief In Support Of Its Motion For Judgment**

**On The Pleadings and this Certificate of Service** with the Clerk of the Court using CM/ECF,

which will send notification that such filing is available for viewing and downloading to the

following counsel of record:

Jeffrey K. Martin (Bar I.D. 2407)
Keri L. Morris (Bar I.D. 4656)
Margolis Edelstein
1509 Gilpin Avenue
Wilmington, DE 19806

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Adria B. Martinelli
William W. Bowser, Esquire (Bar I.D. 2239)
Adria B. Martinelli, Esquire (Bar I.D. 4056)
The Brandywine Building, 17th Floor
1000 West Street
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6601, 6613
Facsimile: (302) 576-3282, 3314
Email: wbowser@ycst.com; amartinelli@ycst.com
Attorneys for Defendants
Delaware River and Bay Authority