IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HOWARD L. MOON, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-261-JJF |
| | ) | |
| THE DELAWARE RIVER AND BAY AUTHORITY, | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |

**UNREPORTED DECISIONS TO
DEFENDANT'S OPENING BRIEF IN SUPPORT OF
<u>ITS MOTION FOR JUDGMENT ON THE PLEADINGS</u>**

YOUNG CONAWAY STARGATT & TAYLOR, LLP

William W. Bowser, Esquire (Bar I.D. 2239)
Adria B. Martinelli, Esquire (Bar I.D. 4056)
The Brandywine Building, 17th Floor
1000 West Street, P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6601, 6623
Facsimile: (302) 576-3282, 3314
wbowser@ycst.com; amartinelli@ycst.com
Attorneys for Defendant
Delaware River and Bay Authority

DATED:     August 3, 2005

LEXSEE 2005 U.S. DIST LEXIS 7155

ANNE M. BYRNE, Plaintiff, v. TELESECTOR RESOURCES GROUP, INC., d/b/a VERIZON SERVICES GROUP, a/k/a VERIZON NEW YORK, INC., Defendant.

04-CV-76S

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF NEW YORK

*2005 U.S. Dist. LEXIS 7155*

**February 25, 2005, Decided**

**DISPOSITION:** [*1] Defendants' Motion to Dismiss Amended Complaint pursuant to *Rule 12(b)(6)* (Docket No. 18) GRANTED in part, and DENIED in part. Defendants' Motion to Dismiss original Complaint pursuant to *Rule 12(b)(6)* (Docket No. 3) DENIED as moot.

**LexisNexis(R) Headnotes**

**COUNSEL:** For Anne M. Byrne, Plaintiff: Josephine A. Greco, Offerman, Cassano, Greco & Slisz LLP, Buffalo, NY.

For Telesector Resources Group, Inc., doing business as Verison Services Group a/k/a Verizon New York Inc., Defendant: James S. Urban, Jones Day, Pittsburgh, PA; Paul K. Stecker, Phillips Lytle LLP, Buffalo, NY.

**JUDGES:** WILLIAM M. SKRETNY, United States District Judge.

**OPINIONBY:** WILLIAM M. SKRETNY

**OPINION:**

## DECISION AND ORDER

### I. INTRODUCTION

Plaintiff Anne M. Byrne commenced this action alleging that Defendant Telesector Resources Group, Inc., d/b/a Verizon Services Group, a/k/a/ Verizon New York, Inc. ("Defendant" or "Verizon") discriminated against her based on her sex, subjected her to a sexually hostile work environment, retaliated against her following her complaints of discrimination and paid her less than male employees performing the same duties, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), *42 U.S.C. § § 2000e et seq* [*2], the New York State Human Rights Law ("HRL"), *N.Y. EXEC. L. § § 290 et seq.*, and the Equal Pay Act ("EPA"), *29 U.S.C. § § 206 et seq.* (Docket No. 1).

Verizon moved to dismiss the complaint, except with regard to Byrne's contention that her receipt of a negative performance evaluation and below average raise in 2003 was retaliatory in violation of Title VII and the HRL (Docket Nos. 3, 4).

Byrne responded to Verizon's motion by first filing an amended complaint (Docket No. 12) and then submitting opposition papers (Docket Nos. 15 & 16). Verizon moved to dismiss the amended complaint on the ground that Byrne's amendment has not cured the deficiencies set forth in its original motion to dismiss (Docket Nos. 18-20).

Presently before this Court is Verizon's Motion to Dismiss the Amended Complaint. For the following reasons, Verizon's motion is granted in part and denied in part.

### II. BACKGROUND

#### A. Factual Allegations

According to the amended complaint, Byrne commenced employment at Verizon in or about September 1974 and worked there without incident for twenty-two years (Docket No. 12, P8). In 1996, Byrne [*3] was transferred to the NYNEX System Marketing Branch as a Systems Analyst (*Id.*, P9). Byrne claims that, following her transfer, she was subjected to sex-based disparate treatment with regard to the terms and

conditions of her employment, required to work in a sexually hostile work environment, retaliated against for complaining of unlawful discrimination, and paid less than similarly situated male employees (*Id*, PP11-17).

### 1. Disparate Treatment

In 1997, Byrne requested that she be promoted, but her request was denied (*Id*, P27). In 1999, Byrne requested that she be sent to a particular training program, but her request was denied until she complained to her manager (*Id*, PP29-30).

In 1999, Byrne and other employees in the title of Sales Analyst were considered for the position of Sales Engineer. Byrne was assessed as a Sales Engineer I, while men in her department were assessed at a higher level, Sales Engineer II. (*Id*, P31).

From September 1999 through February 2000, Byrne requested that her managers deem her "releasable" so that she could apply for positions in other departments, but her request was not granted until August 2000 (*Id*, PP34-39). [*4] In late 2000, Byrne was told she was the "desired candidate" for a position in another department for which she had applied, but was later informed that there was a hiring freeze and that she would not be transferred (*Id*, P40). Byrne remained in the same department and was promoted to Sales Engineer II in early 2001 (*Id*, P41). In early 2002, Byrne applied for a posted position in her department for which she was qualified, but an outside, male candidate was hired despite Verizon's practice of first making positions available to qualified internal candidates (*Id*, PP43-45, 47). Although Byrne subsequently performed the same duties as the newly hired male, he was given a higher salary (*Id*, PP47-48, 77-78, 143-44).

### 2. Hostile Work Environment

Byrne's hostile work environment claim appears to be based on conduct that she observed as well as conduct that she was not exposed to, but which other employees told her about

In October 2002, Byrne overheard two male employees who were standing approximately ten feet from her desk discuss *The Man Show* and its premise of degrading women (*Id*, P56). In early 2003, these same two employees had another conversation [*5] near Byrne's desk in which one of them complained of his lack of sexual intercourse due to the fact that his wife had just delivered a baby (*Id*, P23).

Byrne was informed by another employee that a manager, Michael McGowan, had made comments about her physical appearance (*Id*, P25). Byrne also heard anecdotally that, in early 2002, another manager, Daniel Irving, looked at a female employee's breasts and said the word "hooters" (*Id*, P46). At some time in 2003, Byrne was told that a male employee had given out his fax number as "25 PENIS" (*Id*, P63).

The amended complaint refers, without specificity, to "numerous" comments about the physical appearance of women by Michael McGowan, who worked in the same division as Byrne from 1996 to January 2000 (*Id*, PP22-24, 36).

### 3. Retaliation

After Verizon hired an outside candidate in April 2002 for a position for which Byrne had applied, she complained to management of sex discrimination (*Id*, P49). Verizon retaliated against Byrne by transferring her between product specialties, increasing her workload and assigning her menial duties (*Id*, PP52-54, 57, 62). In the summer of 2002, Byrne requested that she [*6] be reassessed as a Sales Engineer III (*Id*, P76). After being told she could not be promoted due to a freeze, Byrne discovered that other employees had received such promotions (*Id*). In early 2003, Byrne's manager gave her a negative performance appraisal for the year 2002 which, in turn, resulted in a below average raise (*Id*, P65).

Byrne made additional complaints of discrimination, hostile work environment and retaliation after receiving her negative evaluation. (*Id*, PP66-69, 72-74). Following these complaints, Byrne's position was upgraded to Sales Engineer III in July 2003, but she was required to go through an assessment process that was not required of males (*Id*, P77). In October 2003, after Byrne applied for an open Sales Engineer IV position, the position was reclassified to Sales Engineer II, a lower level than Byrne then held (*Id*, P80). In December 2003, Byrne applied for a Sales Engineer IV position in Verizon's Syracuse office (*Id*, P81). The position was offered to an external male candidate despite Verizon's practice of favoring qualified internal candidates, such as Byrne (*Id*).

### 4. Discrimination in Compensation

When Byrne [*7] was transferred to the NYNEX System Marketing Branch in 1996, her salary was set at only 90 percent of the midpoint range for her position (*Id*, P19). Commencing in April 2002, Byrne performed the same duties as a male employee, David Winley, but was compensated at a lower rate (*Id*, PP47-48, 77-78, 143-44).

### B. EEOC Charge

On July 17, 2003, Byrne filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging that, since April 1996, she had been subjected to different terms and conditions of employment and a

Case 1:05-cv-00261-GMS   Document 5-2   Filed 08/03/2005   Page 4 of 20

Page 3
2005 U.S. Dist. LEXIS 7155, *

hostile work environment because of her sex (Docket No. 16, Exh. B). Specifically, Byrne alleged that she was denied a promotion in November 2002 and given a negative performance evaluation in March 2003 (*Id*.). According to the charge, Byrne was retaliated against after she made complaints to Verizon management, its human resources department and one of its EEO advocates (*Id*.).

The EEOC investigated Byrne's allegations and issued a Determination, which also served as the notice of suit rights, dated November 4, 2003 (Docket No. 12, Exh. A). Therein, the EEOC noted that all of Byrne's allegations, except with regard to the disputed [*8] performance review, were untimely (*Id*.).

### C. Procedural History

Byrne instituted this action on February 2, 2004, by filing a complaint in the United States District Court for the Western District of New York. Verizon moved to dismiss the complaint, and Byrne filed an amended complaint. Verizon filed the instant motion to dismiss the amended complaint. After full briefing on the motion, this Court heard oral argument on June 15, 2004, and reserved decision at that time.

### III. DISCUSSION AND ANALYSIS

#### A. Standards on Motion to Dismiss

It is well-settled that in determining a dismissal motion for failure to state a claim under *Federal Rule of Civil Procedure 12(b)(6)*, a district court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v Carothers, 192 F.3d 52, 56 (2d Cir. 1999)*. A complaint should be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Davis v Monroe County Bd. of Educ., 526 U.S. 629, 654, 119 S. Ct. 1661, 143 L. Ed. 2d 839 (1999)* [*9] (citing *Conley v Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957))*. "The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes, 416 U.S. 319, 322, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)*.

"When determining the sufficiency of [a plaintiff's] claim for *Rule 12(b)(6)* purposes, consideration is limited to the factual allegations in plaintiff['s] . . . complaint, . . ., to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents [offered by the defendant that were] either in plaintiff's possession or of which [plaintiff] had knowledge and relied on in bringing suit." *Brass v American Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993)*; see also, *Cortec Ind., Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991), cert. denied, 503 U.S. 960, 118 L. Ed. 2d 208, 112 S. Ct. 1561 (1992)*. When matters outside the pleadings are presented and not excluded by the court, the motion shall be treated as one for summary [*10] judgment and disposed of as provided in *Rule 56. Fed. R. Civ. P. 12(b)*.

In this case, Byrne attached to her amended complaint the EEOC's Determination and its Notice of Suit Rights (Docket No. 12, Exhs. A, B). The amended complaint also expressly references Byrne's filing of an administrative charge with the EEOC (*Id*., P84(a)), and both parties have offered that document in connection with the instant motion. Beyond that, both parties have submitted materials outside the four corners of the pleadings. Specifically, Byrne has submitted an eleven page letter purportedly sent to the EEOC prior to her charge filing, along with administrative charges, affidavits, federal court complaints, subpoenas and responsive documents in proceedings involving other Verizon employees (Docket No. 16, Exhs. A, C-F, K-L). Verizon has submitted what it purports is the EEOC's case file relative to Byrne's charge, including correspondence on various matters between the EEOC and the parties' attorneys (Docket No. 20, Exh. A). Both parties urge that the Court can consider these various documents without converting the motion to one for summary judgment. [*11]

Applying the principles discussed in *Cortec*, this Court finds that it may properly consider, as part of the pleadings, the attachments thereto and the EEOC charge expressly referenced in the amended complaint. See *Jadoo v City of New York, 95 CV 3540, 1997 U.S. Dist. LEXIS 14950, at *6 (E.D.N.Y. Sept. 29, 1997)* (EEOC charge submitted with defendants' 12(b)(6) motion was incorporated in the complaint by reference and did not convert motion to one for summary judgment). Byrne's submissions, which were not appended to or referenced in the amended complaint, cannot now be considered part of the pleadings. Similarly, the decisions cited by Verizon in support of its EEOC case file submission discuss only the consideration of administrative complaints and agency determinations, not party correspondence and other extraneous materials Verizon would now have the Court consider.

This Court declines to convert Verizon's motion to one for summary judgment and therefore will consider only the attachments to Byrne's complaint and her EEOC charge.

#### B. Defendant's Motion to Dismiss

As discussed above, the amended complaint alleges sex-based disparate treatment and [*12] hostile work

Case 1:05-cv-00261-GMS   Document 5-2   Filed 08/03/2005   Page 5 of 20

Page 4
2005 U.S. Dist. LEXIS 7155, *

environment, unequal pay and retaliation. Verizon argues that: 1) Byrne failed to exhaust her administrative remedies with regard to each of her Title VII and Equal Pay Act claims, 2) most of the Title VII claims in the amended complaint are untimely, 3) the Equal Pay Act claim is barred by the statute of limitations, and 4) the "tag along" HRL claims are "not properly before the Court," or alternatively, are untimely (Docket No. 14, pp. 1-2). Verizon urges that this action can proceed only with regard to the allegations that Byrne received a negative evaluation and below average raise in 2003.

This Court will address each argument, starting with the Title VII claims.

### 1. Title VII Statute of Limitations

Verizon argues that most of the incidents of disparate treatment and retaliation n1 of which Byrne complains of are time-barred because they occurred more than 300 days prior to the filing of her EEOC charge. Byrne acknowledges the 300 day time limitation, but argues that the continuing violations doctrine applies to her Title VII claims because all of the incidents alleged in the amended complaint are part of a pattern and practice of discriminatory conduct.

---

n1 Verizon does not challenge the timeliness of the hostile work environment allegations.

---

[*13]

To maintain an action under *42 U.S.C. § 2000e-5*, a plaintiff must ordinarily file a timely charge with the EEOC, receive from that agency a right to sue letter, and commence an action within 90 days of receipt of that letter. *Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 712 (2d Cir. 1996)*; *Cornwell v. Robinson, 23 F.3d 694, 706 (2d Cir. 1994)*. In New York state, which has its own anti-discrimination laws and enforcement agency, an administrative charge must be filed with the EEOC or the New York State Department of Human Rights within 300 days of the alleged discrimination. *42 U.S.C. § 2000e-5(e)*; *Harris v. City of New York, 186 F.3d 243, 247 n 2 (2d Cir. 1999)*.

"The timeliness of a discrimination claim is to be measured from the date the claimant had notice of the allegedly discriminatory action." *Van Zant, 80 F.3d at 713* (citing *Morse v. Univ. of Vermont, 973 F.2d 122, 125 (2d Cir. 1992)*). The 300 day filing requirement "functions as a statute of limitations," *Quinn v. Green Tea Credit Corp, 159 F.3d 759, 765 (2d Cir. 1998),* [*14] and is strictly construed in this circuit, *see, e.g., Trenchfield v. DuPont Photomasks, No. 96 Civ. 1135, 1997 U.S. Dist. LEXIS 1321, at *16-20 (S.D.N.Y. 1997)* (Title VII claims filed with the EEOC 338 days after alleged discriminatory employment practice dismissed as untimely); *Van Zant v. KLM Royal Dutch Airlines, 870 F.Supp. 572, 575 (S.D.N.Y. 1994)* (sexual harassment and retaliation claims dismissed as time-barred where last alleged discriminatory act was 315 days before EEOC filing). Moreover, the Supreme Court recently reiterated its view that "'strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.'" *National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 108, 153 L. Ed. 2d 106, 122, S.Ct. 2061, 2070 (2002)* (quoting *Mohasco Corp. v. Silver, 447 U.S. 807, 826, 100 S.Ct. 2486, 65 L.Ed 2d 532 (1980)*).

Here, it is undisputed that Plaintiff filed her charge with the EEOC on July 17, 2003 (Docket No. 16, Exh. B.) Accordingly, any alleged incidents occurring before November 20, 2002 are time-barred. *See Miller v. N.Y. City Health & Hosp. Corp., No. 00 Civ 140, 2004 U.S. Dist. LEXIS 17050,* [*15] *at *8 (S.D.N.Y Aug. 25, 2004)* ("An incident that was not charged to the EEOC or DHR within 300 days of its occurrence is time-barred.").

All of the incidents upon which Byrne premises her claim of disparate treatment are alleged to have occurred in or before April 2002, and are therefore time-barred. The allegations of retaliation based on the imposition of additional duties in August and October 2002 and the denial of Byrne's request for a promotion to Sales Engineer III in the summer of 2002 are also time-barred.

Byrne argues that the continuing violation doctrine works to save her untimely allegations because "many of the acts at issue are a part of a pattern and practice of discriminatory conduct toward women within the Buffalo Office of the Enterprise Sales Group of . . . Verizon" (Docket No. 17, p. 22). In this Court's view, even accepting the allegations in the amended complaint as true and drawing all inferences in Byrne's favor, the continuing violation doctrine does not apply.

"The 'continuing violation' doctrine holds that an act that occurs within 300 days of an EEOC charge may implicate -- and therefore make timely -- incidents otherwise outside of the mandatory filing [*16] deadlines." *Miller, 2004 U.S. Dist. LEXIS 17050, at *8* (citing *Morgan, 536 U.S. at 114-21*). "[A] continuing violation may be found where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Cornwell v. Robinson, 23 F.3d at 704*.

It is well-settled that multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." *Lambert v. Genesee Hosp., 10*

F.3d 46, 53 (2d Cir. 1993) (citations omitted). Thus, discrete acts of discrimination or retaliation, such as termination, failure to promote, denial of transfer or refusal to hire, constitute separate unlawful employment practices which are actionable only to the extent that each occurred within the appropriate time period. *AMTRAK v. Morgan, 536 U.S. 101, 114, 153 L. Ed 2d 106, 122 S. Ct. 2061.* "There is simply no indication that [invoking] the term 'practice' converts related discrete acts into a single unlawful [*17] practice for the purposes of timely filing." *Id. at 111; see also, Lightfoot v. Union Carbide Corp., 110 F.3d 898, 907 (2d Cir. 1997)* (repeated demotions and failure to adequately compensate not sufficient for continuing violation theory); *Gross v. NBC, 232 F. Supp. 2d 58, 68 (S.D.N.Y. 2002)* ("The holding in Morgan is in accord with Second Circuit law which states that alleged failures to compensate adequately, transfers, job assignments and promotions cannot form the basis for a continuing violation claim.").

Here, accepting the allegations in the amended complaint as true and resolving all inferences in Byrne's favor, she does not allege, nor is there any inference of, an ongoing discriminatory policy or practice. To the extent the amended complaint refers to policy or practice at all, it states that the handling of two of Byrne's applications for internal postings was *contrary* to Verizon's practice. *See Bailey v. Colgate-Palmolive Co., No 99 Civ 3228, 2003 U.S. Dist. LEXIS 8175, at *24-27 (S.D.N.Y. May 13, 2003), aff'd, 93 Fed Appx. 321, 2004 U.S. App. LEXIS 6106 (2d Cir.* [*18] *Apr. 1, 2004)* (failure to set forth discriminatory policy or mechanism, such as discriminatory seniority lists or employment tests, is fatal to application of the continuing violation doctrine).

Similarly, there is no indication that related instances of discrimination were permitted to continue unremedied for so long as to amount to a discriminatory policy or practice. First, the allegations involve unrelated, discrete acts. Moreover, Byrne alleges that after she complained to management about various employment decisions, she was, in fact, sent to training, deemed "releaseable," and promoted from Sales Engineer I to level II and then level III. According to the amended complaint, these actions all took place within less than one year of her related complaints.

In sum, the continuing violation doctrine does not save the amended complaint's untimely allegations and to the extent that Byrne's disparate treatment and retaliation claims are premised on employment decisions occurring prior to November 20, 2002, they are time-barred.

**2. Failure to Exhaust Administrative Remedies**

Verizon argues that Byrne failed to exhaust her administrative remedies with regard to all claims set [*19] forth in her amended complaint, except as they relate to the purportedly retaliatory performance evaluation and raise in 2003, because she did not first present those claims to the EEOC. Byrne argues that all of the allegations in her amended complaint are "reasonably related" to the claims raised in her EEOC charge.

Ordinarily, a plaintiff commencing a Title VII action must exhaust her administrative remedies by first presenting her claims to the EEOC. *Bailey, 2003 U.S. Dist. LEXIS 8179, at *33-34.* Failure to do so defeats the purpose of Title VII's statutory notice provision, which is "to encourage settlement of discrimination disputes through conciliation and voluntary compliance." *Miller v IT&T, 755 F.2d 20, 26 (2d Cir. 1985); Burnett v. ESL Fed Credit Union, 198 F.Supp 2d 307, 314-15 (W.D.N.Y. 2002).* Consequently, courts routinely dismiss unexhausted Title VII claims. *Bailey, 2003 U.S. Dist. LEXIS 8175, 2003 WL 21108325, at *12* (citing cases).

However, "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, [*20] is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L. Ed 2d 234 (1982).* The Second Circuit has held that "'as a general matter, the failure to exhaust administrative remedies is a precondition to bringing a Title VII claim in federal court, rather than a jurisdictional requirement.'" *Francis v City of New York, 235 F.3d 763, 768 (2d Cir. 2000)* (quoting *Gibson v. West, 201 F.3d 990, 994 (7th Cir. 2000)); see also, Cruz v Coach Stores, Inc., 202 F.3d 560, 570 n.5 (2d Cir. 2000); Pietras v. Bd. of Fire Comm'rs of the Farmingville Fire Dist., 180 F.3d 468, 474 (2d Cir. 1999).* Thus, the requirement can be waived by the litigants or the court. *Zipes, 455 U.S. at 393, 102 S. Ct. 1127, 71 L. Ed 2d 234; Pietras, 180 F.3d at 474.*

Moreover, under some circumstances, courts may entertain claims that, while not expressly raised in the underlying administrative charge, are "reasonably related" to it. *See Butts v. City of New York Dep't of Hous. Pres. & Dev., 990 F.2d 1397, 1401 (2d Cir. 1993), superseded* [*21] *by statute on other grounds as stated in, Hawkins v 1115 Legal Serv. Care, 163 F.3d 684, 693 (2d Cir. 1998).* In Butts, the Second Circuit discussed three situations where unexhausted claims may be "reasonably related" to properly presented claims: (1) "where the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination;" (2) where the "claim is one alleging retaliation by an employer against an employee for filing an EEOC

charge" and (3) "where a plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Butts, 990 F.2d at 1402-03* (quotations and citations omitted).

The first type of "reasonably related" claim has been understood as allowing for "loose pleading." *Deravin v. Kerik, 335 F.3d 195, 200-01 (2d Cir. 2003)*. This is the test that Byrne urges applies to her claims. Alternatively, Byrne argues that any failure to exhaust should be excused because Verizon has "unclean hands" with regard to the EEOC investigation.

### (a) Disparate Treatment

Byrne alleged in her EEOC charge [*22] that, because of her sex, she had been subjected to "different terms and conditions of employment including work assignments, wages and benefits, promotions, performance evaluations and customer positioning events" (Docket No. 16, Exh. B) She specifically alleged that she was last denied a promotion in November 2002 and was given a negative performance evaluation in March 2003 (*Id*).

It is apparent that the EEOC did attempt to investigate the overall disparate treatment claim. In its determination, the EEOC stated that the "allegations of being subjected to different terms and conditions of employment and not being promoted are untimely because those incidents took place beyond the 300-day statute of limitation" (Docket No. 12, Exh. A).

Time-barred allegations in an EEOC charge "cannot serve as predicates for allegations in the complaint said to be reasonably related." *Butts, 990 F.2d at 1403*. Thus, even if some of the disparate treatment allegations in the amended complaint were timely; which they are not; they could not be "boot-strapped" to untimely charge allegations. Accordingly, this Court finds that none of the disparate treatment allegations in the amended [*23] complaint are reasonably related to the administrative charge.

### (b) Hostile Work Environment

In her EEOC charge, Byrne alleged that she had been "subjected to a hostile work environment" and "the hostile work environment has included many comments and conduct which were offensive and sexual in nature" (Docket No. 16, Exh. B). Despite alleging that the hostile work environment had commenced in April 1996 and still existed as of the date the charge was filed, Byrne did not provide any information as to what, in her view, constituted offensive conduct, who engaged in the conduct or when any incidents occurred. It is this Court's view that "boilerplate" language, such as was used by Byrne, is not sufficient to have alerted the EEOC to the conduct now alleged in the amended complaint in support of a hostile work environment claim.

In Butts, the plaintiff claimed in her EEOC charge that she had "constantly been the target of discriminatory practices and treatment" and that she was "denied promotional opportunities and consideration based on my race and sex." *990 F.2d at 1403*. In affirming the district court's dismissal of the plaintiff's disparate treatment claims, [*24] the Second Circuit noted that:

> Were we to permit such vague, general allegations, quite incapable of inviting a meaningful EEOC response, to define the scope of the EEOC investigation and thereby predicate subsequent claims in the federal lawsuit, such allegations would become routine boilerplate and Title VII's investigatory and mediation goals would be defeated.

*Id. See also, Murray v. Board of Ed. of New York, 984 F.Supp. 169, 176 (S.D.N.Y. 1997)* (dismissing the specific failure to promote claim asserted in the complaint where plaintiff's charge alleged only that a demotion "denied me future promotional opportunities"). While precise pleading is not required for purposes of Title VII exhaustion, *Deravin, 335 F.3d at 202*, a complete absence of specificity defeats a plaintiff's subsequent claims *Crespo v. New York City Transit Auth., 01-CV-0671, 2002 U.S. Dist. LEXIS 2977, at *26 (E.D.N.Y. Jan. 7, 2002)* ("specific factual allegations must be made in order for the EEOC to be able to investigate them reasonably"). *See Samborski v. W. Valley Nuclear Servs. n2, 99-CV-0213, 2002 U.S. Dist. LEXIS 12745,* [*25] *at *14-17 (W.D.N.Y. June 25, 2002)* (allegations of "sexual harassment" that created a "hostile environment" are boilerplate terms that fail to inform the EEOC of any alleged harassment based on events other than "lesbian" rumors, which are the only specific facts referenced in the charge); *Talyansky v. Xerox Corp., 22 F.Supp.2d 55, 56-57 (W.D.N.Y. 1998)* (plaintiff's EEOC charge was simply too vague and generalized to allow the EEOC to conduct an investigation and provide a meaningful response), *aff'd, 182 F.3d 901 (2d Cir. 1999), cert. denied, 528 U.S. 1020, 120 S.Ct. 530, 145 L.Ed.2d 410 (1999), reh'g denied, 528 U.S. 1132, 120 S.Ct. 974, 145 L.Ed.2d 842 (2000)*.

---

n2 Byrne objects to Verizon's reliance on Samborski, claiming that the decision erroneously held that a reasonably related claim

Case 1:05-cv-00261-GMS    Document 5-2    Filed 08/03/2005    Page 8 of 20

Page 7
2005 U.S. Dist. LEXIS 7155, *

applies only to alleged discriminatory conduct that occurred after the charge was filed. The Samborski decision set forth multiple bases for dismissing the plaintiff's hostile work environment claim. Verizon relies on a basis other than that to which Byrne takes exception.

[*26]

Byrne argues that the EEOC would reasonably have been alerted to the existence of a hostile work environment because other women had also filed EEOC complaints against Verizon. She relies on a multi-plaintiff case, *Dargento v. Bally's Holiday Fitness Centers, 990 F. Supp. 186 (W.D.N.Y. 1997)*, in support of her argument.

This Court has already declined to accept Byrne's exhibits regarding unrelated proceedings and to convert this motion to one for summary judgment. Therefore, her argument is unavailing. Moreover, the circumstances in *Dargento* are readily distinguished from this case. Quite simply, the hostile work environment claim in that case proceeded because those plaintiffs, unlike Byrne, provided the EEOC specific examples of the comments and conduct that formed the basis for their claim, including who had engaged in the offensive conduct. The court found the level of specificity in those charges sufficient to provide for a meaningful EEOC response. *990 F. Supp. at 191-92.*

This Court finds Byrne's allegations of hostile work environment in the amended complaint are not reasonably related to her EEOC charge where she couched her hostile work [*27] environment claim in vague generalities devoid of any factual basis.

(c) Retaliation

Verizon concedes that Byrne's claim of a retaliatory performance review in March 2003 and a resulting below average raise were sufficiently articulated in the EEOC charge. To the extent that the amended complaint contains other allegations of retaliation occurring prior to Byrne's EEOC filing, they are unexhausted for the same reasons as are her hostile work environment claims; *i.e.*, they were not articulated to the EEOC in a manner that would allow for a meaningful response.

Verizon's motion does not address the post-charge acts of retaliation now alleged by Byrne in her amended complaint. Accordingly, this Court expresses no view on whether the allegations of conduct occurring after Byrne's additional complaints to management and her EEOC filing are reasonably related to the charge.

(d) "Unclean Hands"

Byrne argues that Verizon is estopped from advancing an exhaustion argument because it did not submit a response to Byrne's EEOC charge or engage in pre-suit conciliation. Byrne provides no decisional authority in support for her estoppel argument. As has already been discussed, [*28] the touchstone for determining exhaustion is whether Byrne's presentation of her claims to the EEOC was sufficient to define the scope of the investigation and allow for a meaningful investigation. The onus is not on a defendant to define the plaintiff's claims via its response to the charge. Nor is it of any significance that the EEOC may not have been able to conduct a full investigation absent Verizon's participation. As Byrne acknowledges elsewhere in her response to Verizon's motion, "the test is not whether the EEOC did, in fact, investigate the alleged [discriminatory conduct] but whether the [allegations in the complaint] reasonably relate[] to the charges made to the EEOC and to its investigation." *Staples v. Avis Rent-a-Car System, Inc., 537 F. Supp. 1215, 1218 (W.D.N.Y. 1982).*

For the reasons stated, this Court finds that Byrne failed to exhaust her administrative remedies with regard to all allegations of disparate treatment, all allegations of hostile work environment, and those allegations of retaliatory conduct occurring prior to the March 2003 performance evaluation.

3. Equal Pay Act Claim

Byrne asserts that she was subjected to sex-based [*29] wage disparity in violation of both Title VII and the Equal Pay Act. (Docket No. 12, PP91, 126, 143) Verizon moves to dismiss the EPA claim (the seventh cause of action) on the same grounds it raised with respect to Title VII--that is, Byrne's failure to specify the wage claim in her EEOC charge and the untimeliness of the claim.

Unlike Title VII, the EPA does not require a grievant to exhaust administrative remedies prior to the commencement of a civil action. *County of Washington v. Gunther, 452 U.S. 161, 175 n.14, 68 L. Ed. 2d 751, 101 S. Ct. 2242 (1981); West v. City of New York, 78 Civ. 1981, 1985 U.S. Dist. LEXIS 23318, at *24 n.2 (S.D.N.Y. Jan. 18, 1985); Erickson v. New York Law School, 585 F. Supp. 209, 214 (S.D.N.Y. 1984).* Therefore, to the extent Byrne seeks relief under the EPA for an allegedly discriminatory wage disparity, it is immaterial whether she raised that issue in her EEOC charge.

As for Verizon's timeliness argument, the limitations period for an EPA claim is two years after the cause of action accrues, or three years if the claim arises out of a willful violation. *29 U.S.C. § 255(a).* Under the EPA, a separate claim accrues [*30] each time the claimant receives a paycheck reflecting discriminatory wages. *Pollis v. The New Sch. for Social Research, 132 F.3d*

*115, 119 (2d Cir. 1997); Downes v. J.P. Morgan Chase & Co., 03 Civ. 8991, 2004 U.S. Dist. LEXIS 10510, at *23 (S.D.N.Y. June 8, 2004); Erickson, 585 F. Supp. at 213.*

Thus, Byrne's seventh cause of action survives Verizon's motion to the extent she alleges that paychecks she received on or after February 2, 2001 n3 reflect a discriminatory pay disparity.

> n3 Actual recovery for this three year period, as opposed to the two year limitations period generally applicable to such claims, will depend on Plaintiff's ability to prove not only the existence of a violation, but willfulness.

### 4. The Human Rights Law Claims

Byrne's claims under the HRL must be brought within three years of the alleged discriminatory act or acts. *N.Y. C.P.L.R. § 214(2); Van Zant, 80 F.3d at 714.* Unlike Title VII, the [*31] HRL does not include an administrative exhaustion requirement. *Crespo, 2002 U.S. Dist. LEXIS 2977, at *31; see N.Y. EXEC. L. § 297(9)* ("Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages . . ."). Thus, to the extent Byrne's HRL allegations are premised on conduct occurring on and after February 2, 2001, her claims are timely and procedurally viable.

In moving to dismiss, Verizon characterizes Byrne's HRL claims as mere "tag alongs" to the Title VII claims. It urges that all HRL allegations that correspond to procedurally deficient Title VII claims should be dismissed. Verizon points to other decisions in this Circuit which have declined to exercise supplemental jurisdiction based on concerns that the plaintiffs would, in effect, get their Title VII claims in the back door of the courthouse were the HRL claims to proceed. *Crespo, 2002 U.S. Dist. LEXIS 2977, at *32-33; Cable v. New York State Thruway Auth. 4 F. Supp. 2d 120, 127 (N.D.N.Y. 1998); McNight v. Dormitory Auth. of State of New York, 995 F. Supp. 70, 81 (N.D.N.Y. 1998);* [*32] *Spurlock v. NYNEX, 949 F. Supp. 1022, 1035 (W.D.N.Y. 1996).*

This Court acknowledges that the courts in each of the foregoing decisions, without engaging in analysis, exercised their discretion to decline supplemental jurisdiction. However, this Court concludes that such an exercise of discretion is not appropriate in this case.

Pursuant to *28 U.S.C. § 1367(a)* and subject to that section's stated exceptions, "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." [emphasis supplied]. District courts may decline to exercise supplemental jurisdiction where (i) a novel or complex issue of state law is raised, (ii) the state law claim substantially predominates over the federal claims, (iii) the court has dismissed all claims over which it has original jurisdiction, or (iv) there are other compelling reasons for declining jurisdiction. *28 U.S.C. § 1367(c).*

In this Court's view, none of the exceptions exist [*33] here. The HRL allegations form part of the same case or controversy, the substantive analysis of those allegations is based on federal law, the Court has original jurisdiction over Byrne's remaining Title VII retaliation and EPA claims and the state law claims do not predominate, and Verizon has presented no other compelling reason for declining jurisdiction. Its "back door" argument ignores the fact that Byrne's HRL claims arise from a separate and independent statutory basis for recovery. In sum, there is no reason that Byrne should be required to litigate her HRL disparate treatment, hostile work environment and retaliation claims in another forum where they share a common nucleus of operative fact with the remaining federal claims such that the plaintiff would ordinarily be expected to try them all in one judicial proceeding. *See United Mine Workers v. Gibbs, 383 U.S. 715, 725, 16 L. Ed. 2d 218, 86 S. Ct. 1130 (1966).*

That being said, this Court reiterates that the HRL claims are subject to a three-year statute of limitations. Byrne's suggestion that the continuing violation doctrine applies to extend the limitations period for her state law claims is rejected for the same reasons as were [*34] discussed with respect to her Title VII claims.

### IV. CONCLUSION

For the foregoing reasons, Verizon's motion to dismiss the Title VII disparate treatment and hostile work environment claims (first and third causes of action) is granted; its motion to dismiss the Title VII retaliation claims that are based on conduct occurring prior to Plaintiff's March 2003 performance review is granted (fifth cause of action); its motion to dismiss the HRL claims is denied (second, fourth and sixth causes of action); and its motion to dismiss the Equal Pay Act claim is denied (seventh cause of action).

### ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion to Dismiss the Amended Complaint pursuant to

2005 U.S. Dist. LEXIS 7155, *

*Rule 12(b)(6)* (Docket No. 18) is GRANTED in part, and DENIED in part.

FURTHER, that Defendants' Motion to Dismiss the original Complaint pursuant to *Rule 12(b)(6)* (Docket No. 3) is DENIED as moot.

SO ORDERED.

Dated: February 25, 2005

Buffalo, New York

WILLIAM M. SKRETNY

United States District Judge

LEXSEE 1998 U.S. DIST. LEXIS 9100

CHRISTINE A. EBERT, Plaintiff, v. OFFICE OF INFORMATION SYSTEMS, an
Agency of the State of Delaware, Defendant.

C.A. No. 97-530-SLR

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

1998 U.S. Dist. LEXIS 9100

June 12, 1998, Decided

**NOTICE:** [*1] FOR ELECTRONIC PUBLICATION ONLY

**DISPOSITION:** Defendant's motion to dismiss denied in part and granted in part.

**LexisNexis(R) Headnotes**

**COUNSEL:** For plaintiff: Roy S. Shiels, Esquire, Brown, Shiels & Chasanov, Dover, Delaware.

For defendant: Elizabeth D. Maron, Esquire, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware.

**JUDGES:** Sue L. Robinson, District Judge.

**OPINIONBY:** Sue L. Robinson

**OPINION:**

MEMORANDUM OPINION

Dated: June 12, 1998
Wilmington, Delaware

**ROBINSON, District Judge**

**I. INTRODUCTION**

Plaintiff Christine A. Ebert filed this action on September 18, 1997 against defendant Office of Information Systems ("OIS"), an Agency of the State of Delaware, asserting a claim under the Civil Rights Act of 1964, *42 U.S.C. § 2000*(e) et seq. for sexual harassment, failure to promote, and retaliation. (D.I. 1) Plaintiff alleges that the actions of her manager and OIS, which were willful and intentional acts based on discriminatory animus, resulted in physical and mental abuse, including a mental breakdown disabling her from work. (D.I. 1) Currently before the court is defendant's motion to dismiss. (D.I. 5) This court has jurisdiction pursuant to *28 U.S.C. § 1331*.

For [*2] the reasons stated below, defendant's motion to dismiss will be denied in part and granted in part.

**II. BACKGROUND**

Beginning on or about October 16, 1980, plaintiff began employment with OIS as an Application Support Specialist. (D.I. 10 at A4) Plaintiff subsequently rose to the position of Management Information Specialist. (D.I. 10 at A4)

On October 28, 1994, plaintiff completed, as part of her employment, a Position Classification Questionnaire ("PCQ"). (D.I. 7 at A19-A24) In the general comments section of the questionnaire, plaintiff wrote the following:

> To be successful in this position, an incumbent must have an extremely large amount of endurance, resolve, persistence, resignation, stamina, backbone, guts, moxie, resilience, spirit, backbone, spunk, strength, pluck, chutzpa[] and determination to deal with items such as Attachment A. This item was given to me at the beginning of the first interview I had in this building with OIS-ASG.

Case 1:05-cv-00261-GMS    Document 5-2    Filed 08/03/2005    Page 13 of 20

Page 2
1998 U.S. Dist. LEXIS 9100, *

(D.I. 7 at A23) Attachment A was a "puzzle" containing a sexually offensive suggestion. (D.I. 7 at A24)

In November 1994, Assistant Manager of OIS, Thomas Burn, brought plaintiff's PCQ to the attention of Richard [*3] Iovino, Manager of OIS. After reviewing the PCQ, Iovino had Burn bring plaintiff to his office to discuss her allegations. (D.I. 7 at A4; A26-A27; A29-A30; A36) Plaintiff refused to cooperate in Iovino's investigation, denying that the conduct was sexual harassment (although admitting it was inappropriate) and refusing to identify the individual(s) who gave her the document in question. (D.I. 7 at A4; A26-A27; A29-A30; A36) As a result of her refusal to cooperate, Iovino reprimanded plaintiff, informing her that he would proceed with a "formal contact" for insubordination should she refuse to identify the individual(s) involved and that she was free to check the Merit Rules if she were in doubt as to his authority to do so. (D.I. 7 at A4; A26-A27; A29-A30; A36) Plaintiff left the room, returning a short while later with John Nold, Executive Director of OIS, whom she had asked to join the meeting. (D.I. 7 at A4; A26-A27; A29-30; A36) Iovino again asked plaintiff to identify the individual(s) involved and again she refused, indicating that Iovino was aware of the individuals' identities. (D.I. 7 at A4; A26-A27; A29-A30; A36) At no point during the meeting did Nold direct plaintiff to [*4] answer Iovino's questions. (D.I. 7 at A36)

On November 10, 1994, Iovino filed a "formal contact," charging plaintiff with insubordination, falsification of records, and insulting words toward the public or any state employee. (D.I. 7 at A4; A26-A27; A29-A30; A31-A32) Nold, acting as Hearing Officer for the "Third Step Grievance Proceeding" held on December 9, 1994, found that there existed insufficient testimony to substantiate the charges of falsification and insulting words; however, he found the charge of insubordination to be supported by the record. (D.I. 7 at A33-A34)

On September 5, 1995, plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Delaware Department of Labor against defendant, alleging continuing acts of sexual discrimination and retaliation beginning in November 1981 and continuing until November 10, 1994. (D.I. 7 at A2) Specifically, the charge alleged (1) an on-going course of sexually offensive behavior on the part of management; and (2) retaliation on the part of defendant and Iovino after plaintiff complained to management about a sexually offensive item she had been given during her initial interview [*5] in 1980. (D.I 7 at A2) In the charge, plaintiff stated:

> Mr. Iovino treats the women he supervises in a demeaning and insulting manner. In February, 1995, during a meeting of the entire office (approximately sixty people), Mr. Iovino criticized the women in the office. He said: "You women, you want to be treated equal but you're not willing to work equal." He accused the women employees of abusing the flex time policy to care for their children. He also criticized the women for using their accumulated sick leave to stay home and care for their sick children. . . . During the February, 1995, meeting Mr. Iovino criticized the women in the office but did not criticize the men who used flex time or sick leave.

(D.I. 10 at A4)

On September 18, 1995, as part of the Fourth Step Grievance Decision, plaintiff's written reprimand for insubordination was upheld while all other references to her alleged misconduct were purged from her file. (D.I. 7 at A35-A38)

On April 12, 1996, the State responded to the EEOC Charge of Discrimination, denying all the allegations made therein. (D.I. 7 at A3-A39)

Plaintiff appealed the insubordination disciplinary action to the Merit Employee [*6] Relations Board ("MERB"). (D.I. 7 at A5; A39) On September 4, 1996, defendant agreed to void the written reprimand and remove it from plaintiff's personnel file, thereby mooting the MERB grievance. (D.I. 7 at A40-A41) Consequently, the grievance was dismissed on September 6, 1996. (D.I. 7 at A42)

On August 28, 1996, after the EEOC's settlement efforts had failed, Marjorie McLean, the EEOC investigator assigned to plaintiff's charge, wrote to plaintiff asking her to reply to defendant's answer to the charge. (D.I. 10 at A9-A12; A16-A17) On September 12, 1996, plaintiff responded with a four-page letter supplementing her charge. (D.I. 10 at A9-A12) In the letter, plaintiff emphasized that her complaint was one of "'CONTINUING ACTION' with the earliest date of '11/81' with the last[] being '11/10/94.'" (D.I. 10 at A10) She further indicated that her complaint was "not about one incident of sexual harassment," citing to a number of other incidents of "sexual harassment." (D.I. 10 at A11)

On June 20, 1997, the EEOC issued a 90-day "Right to Sue" letter and dismissed plaintiff's charge, stating that

> based upon its investigation, the EEOC is unable to conclude that the information

[*7] obtained established violations of the statutes. This does not certify that the respondent is in compliance with the statutes

(D.I. 7 at A43)

Plaintiff filed this action on September 19, 1997 alleging generally that "continuous discriminatory acts of defendant, and Manager Richard Iovino in particular, have over a period of years deprived plaintiff of rights granted her by, and protected by *42 USC Section 2000*(e) et []seq., known as Title VII." (D.I. 1) Specifically, plaintiff alleges that (1) she has been denied advancement in status and pay because of her gender; (2) the behavior and statements of Iovino have resulted in a hostile work environment; (3) she has been retaliated against because of her complaints; (4) the discriminatory actions of Iovino and defendant "were willful and intentional acts based on discriminatory animus"; and (5) intentional misrepresentation of her work performance and interpersonal relationships caused or contributed to her lack of advancement in status and pay. n1 (D.I. 1)

> n1 In a sworn affidavit dated January 1998 submitted as an attachment to her answering brief, plaintiff clarified an unspecified count in the complaint as follows:
>
>> 2. That one count of the Complaint in [the case at bar] deals with impeding the upward reclassification of her position by administrative superiors, including a Richard Iovino.
>>
>> 3. That impeding consisted of inaction and the giving of incorrect information over an extended period of time, and no reclassification of the position of any male employee of the agency was treated in the same fashion.
>>
>> 4. She believes the impeding of the reclassification of her position occurred because of discrimination, and because she was retaliated against for raising complaints of discrimination.
>
> (D.I. 10 at A27)

[*8]

### III. STANDARD OF REVIEW

Since the parties have referred to matters outside the pleadings, defendant's motion shall be treated as one for summary judgment. n2 See *Fed R Civ P 12(b)*. Summary judgment should be granted only if the court concludes that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed R Civ P 56(c)*. The moving party bears the burden of proving that no genuine issue of material fact is in dispute. See *Matsushita Elec. Indus Co., Ltd v. Zenith Radio Corp., 475 U.S. 574, 586 n.10, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986)*. Once the moving party has carried its initial burden, the nonmoving party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id. at 587* (quoting *Fed R Civ P 56(e))*. "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Federal Kemper Life Assurance Co., 57 F 3d 300, 302 n.1 (3d Cir 1995)* (citations omitted). If the nonmoving [*9] party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, the moving party is entitled to judgment as a matter of law. See *Celotex Corp v. Catrett, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)*. The mere existence of some evidence in support of the nonmoving party will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that factual issue. See *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)*. This court, however, must "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir 1995)* (citation omitted). With respect to summary judgment in discrimination cases, the court's role is "'to determine whether, upon reviewing all the facts and inferences to be drawn therefrom in the light most favorable to the plaintiff, there exists sufficient evidence to create a genuine issue of material fact as to whether the employer [*10] intentionally discriminated against the plaintiff.'" *Revis v. Slocomb Industries, Inc., 814 F Supp. 1209, 1215 (D. Del 1993)* (quoting *Hankins v. Temple Univ., 829 F.2d 437, 440 (3d Cir 1987))*.

> n2 Rule 12(b) provides that
>
>> if, on a motion . . . to dismiss for failure of the pleading to state a

claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided by Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed R Civ P. 12(b).

## IV. DISCUSSION

### A. Exhaustion of Administrative Remedies

In the instant action, defendant maintains that plaintiff's Title VII n3 claims for hostile work environment and failure to promote are precluded because she failed to exhaust her administrative remedies by not including these claims in the charge filed with the EEOC. Defendant, [*11] thus, asserts that plaintiff's complaint should be dismissed. Alternatively, defendant requests that the court require plaintiff file a more definite statement of her claims.

> n3 Title VII of the 1964 Civil Rights Act provides in pertinent part:
>
>> (a) Employer practices. It shall be an unlawful employment practice for an employer--(1) to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.
>
> 42 U.S.C. § 2000e-2(a).

The preconditions (exhaustion requirements) to a suit under Title VII are [*12] the filing of a charge with the EEOC and the receipt of the EEOC's notice of the right to sue. See *42 U.S.C. §§ 2000e-5(e), 2000(e)-5(f)*. Because the statutory scheme of Title VII emphasizes informal means of achieving settlement over formal adjudication, a potential plaintiff normally is required to set forth in the charge to the EEOC those allegations subsequently raised in the district court. See *Schanzer v. Rutgers University, 934 F. Supp. 669, 673 (D.N.J. 1996)*.

In accordance with the exhaustion requirement, there are limitations on the presentation of new claims in the trial court. See *Howze v. Jones & Laughlin Steel, Corp., 750 F.2d 1208, 1212 (3d Cir. 1984)*. The parameters of the resulting civil complaint that may follow a notice of a right to sue from the EEOC are "'defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination,'" regardless of the actual scope of the EEOC investigation. *Hicks v. ABT Assocs., Inc., 572 F.2d 960, 966 (3d Cir. 1978)* (quoting *Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398-99 (3d Cir. 1976)*, cert. denied, *429 U.S. 1041, 50 L. Ed. 2d 753, 97 S. Ct. 741 (1977))* [*13] Therefore, a trial court may assume jurisdiction over additional charges only if "the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." *Antol v. Perry, 82 F.3d 1291, 1295 (3d Cir. 1996)* (quoting *Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984))*. However, this standard must be applied in accord with the "sound and established policy that procedural technicalities should not be used to prevent Title VII claims from being decided on the merits." *Revis, 814 F. Supp. at 1216* (quoting *Gooding v. Warner-Lambert Co., 744 F.2d 354, 358-59 (3d Cir. 1984))*.

Where the allegations in the complaint were sufficiently distinct from those presented in the EEOC charge and were not part of the EEOC investigation, courts have refused to entertain the expanded claims until administrative procedures have been exhausted. See e.g., *Zalewski v. M.A.R.S. Enterprises, Ltd, 561 F. Supp. 601, 604-05 (D. Del. 1982)* (finding the charge of gender discrimination presented to the EEOC and the claim of sexual harassment in the civil suit to be unrelated and independent charges since the facts alleged [*14] in the complaint were wholly different from those set forth in the charge); *Sandom v. Travelers Mortgage Services, Inc., 752 F. Supp. 1240, 1246-48 (D.N.J. 1990)*, aff'd without op., *998 F.2d 1005 (3d Cir. 1993)* (dismissing a sexual harassment claim that was not raised in the EEOC charge because it arose from a set of wholly distinct facts and thus would not have been discovered by a reasonable

EEOC investigation of the filed charge of sexual discrimination). However, courts have heard claims not specifically mentioned in the prior EEOC charge where there was a close nexus between the facts supporting the claims raised in the charge and those in the complaint. See e.g., *Howze, 750 F.2d at 1212* (finding the claim in the civil suit that plaintiff was discriminated against because of her involvement with a "Black Caucus" explained the original EEOC charge, which alleged racial discrimination in job promotion); *Ostapowicz, 541 F.2d at 398-99* (finding that additional charges of gender discrimination filed during the pendency of the administrative proceedings may be considered "explanations of the original charge and growing out of it")

In the instant action, the charge [*15] filed with the EEOC alleged an on-going course of gender discrimination and retaliation. (D.I. 33 at A8) The question is whether or not a reasonable investigation would have led to the facts surrounding plaintiff's claims of hostile work environment and failure to promote. See *Zalewski, 561 F. Supp. at 604*.

Reviewing the EEOC complaint filed by plaintiff and her September 12, 1995 response to the EEOC inquiry, the court finds, as a matter of law, that plaintiff's hostile work environment claim qualifies under the above standard. First, there is a close nexus between the facts supporting plaintiff's charge of gender discrimination and those supporting the complaint's claim of hostile work environment. Second, an EEOC investigation of retaliation and gender discrimination based on the original charge would have disclosed the hostile work environment claim. Cf. *Zalewski, 561 F. Supp. at 605* (finding "the sole common denominator of the two charges [a male-female sexual discrimination claim and a sexual harassment claim based on termination for refusal to accept offer for homosexual favors] is the fact that the discrimination allegedly involved sex, yet the two sex discrimination [*16] claims were in no way 'alike or related.'") (citations omitted)). Third, in the instant action, the activity alleged by plaintiff in her charge to the EEOC and her supplemental letter could give rise to both gender discrimination and hostile work environment claims. See *Ostapowicz, 541 F.2d at 399* ("The additional charges filed during the pendency of the administrative proceedings may fairly be considered explanations of the original charge and growing out of it."); accord *Schanzer, 934 F. Supp at 674* Accordingly, the court finds that a reasonable investigation by the EEOC of plaintiff's charge would have encompassed the allegations raised in her complaint with regard to the hostile work environment claim.

Unlike the hostile work environment claim, however, plaintiff's failure to promote or advance claim does not fall within the scope of the EEOC complaint or a reasonable investigation thereof. First, there is nothing in the record to indicate that the EEOC investigated or had any reason to investigate whether plaintiff had been discriminated against by defendant's failure to promote or advance her. Plaintiff's charge alleged continuing discriminatory and retaliatory conduct; [*17] there was no mention of or allegation of any facts to support a claim of failure to promote or advance in the charge or in her September 12, 1996 letter to the EEOC. See *Antol, 82 F.3d at 1295-96* (finding that a disability discrimination charge did not encompass a claim for gender discrimination even though investigation would have revealed that the position plaintiff (a man) was denied was filled by two female employees); *Parsons v. City of Philadelphia Coordinating Office of Drug & Abuse Programs, 822 F. Supp. 1181 (E.D. Pa. 1993)* (finding that claims of retaliation and race discrimination for failure to compensate "out-of-class" for additional duties did not encompass a claim for failure to promote despite the fact that the EEOC investigation considered whether plaintiff was qualified for the position). Second, a claim of failure to promote does not flow logically from, and would have required investigation of events not raised by, claims of gender discrimination or retaliation. See *Parsons, 822 F. Supp. at 1183-84*, cf. *Foust v. FMC Corp., 962 F. Supp. 650 (E.D. Pa 1997)* (finding that the additional allegation raised in the complaint was within the scope of the [*18] EEOC investigation since it "merely added other improper motives" for the same event raised in the charge). The record indicates that the occurrences of alleged failure to promote were distinct incidents from those of alleged gender discrimination and retaliation. Third, under the circumstances, neither the EEOC nor defendant were put on notice of plaintiff's failure to promote claim; thus the EEOC was not "afforded . . . the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court." *Antol, 82 F.3d at 1296*, see also, *Rush v. Scott Specialty Gases, Inc., 113 F.3d 476, 485 (3d Cir. 1997)* ("To allow a stale claim to proceed would be inconsistent with the administrative procedure established by Title VII which contemplates prompt filing of charges so that discrimination controversies may be resolved promptly."). Accordingly, the court concludes that plaintiff's failure to promote or advance claim is a distinct claim not within the scope of the EEOC charge. See *Rush, 113 F.3d at 483-85* (finding plaintiff's failure to promote and train claim distinct from her sexual harassment claim because, inter alia, the claims [*19] address different types of conduct). Consequently, to the extent that Counts I, n4 III, n5 and V n6 of the complaint

Case 1:05-cv-00261-GMS    Document 5-2    Filed 08/03/2005    Page 17 of 20

Page 6
1998 U.S. Dist. LEXIS 9100, *

allege failure to promote or advance claims, they shall be dismissed for failure to exhaust administrative remedies. n7

    n4 Count I provides in relevant part:

    10. By constant belittling of the work performance and contributions to the agency of women in general, and plaintiff in particular, Iovino made it clear to plaintiff as well as to subordinate supervisors that he did not believe females sufficiently contributed to be given advancements in status and pay equal to males.

    11. Despite satisfactory or better than satisfactory work performance plaintiff has consistently been, over a period of years, denied advancement in status and pay within the agency because of her sex leading to severe frustration and mental distress, including a mental breakdown disabling plaintiff from work.

(D.I. 1)

    n5 Count III provides in relevant part:

    16. Plaintiff on a number of occasions complained to her supervisor or to Manager Iovino of the discriminatory treatment, and hostile work atmosphere, based on specific events which had occurred.

    17. Defendant and Iovino took little or no action to effectively address plaintiff's complaints but instead retaliated against plaintiff because of those complaints.

(D.I. 1) [*20]

    n6 Count V provides in relevant part:

    21. The actions of Iovino were intended to, and did, cause higher level administrative superiors within the agency to have a false impression of plaintiff's work performance and interpersonal relationships within [the] agency.

    22. The intentional misrepresentations of plaintiff's work performance and interpersonal relationships caused or contributed to plaintiff's lack of advancement in status and pay, and the mental frustration and stress thereby caused plaintiff.

(D.I. 1)

    n7 Even assuming arguendo that plaintiff exhausted administrative remedies with respect to the failure to promote or advance claim, she has failed to present sufficient evidence to establish a prima facie case under Title VII. In order to establish a prima facie case of failure to promote or advance a plaintiff must show:

    (a) she belongs to a protected category; (b) she applied and was qualified for a promotion; (c) despite her qualifications, she was denied the promotion; and (d) other employees of similar qualifications who were not members of the protected group were promoted at the time the plaintiff's request for promotion was denied.

*Lewis v. State of Delaware Dept of Public Instruction*, 948 F. Supp. 352, 358 (D Del 1996). In the instant action, even accepting her allegations as true, plaintiff has not made such a showing. Specifically, although plaintiff alleges that Iovino impeded reclassification of her position (D.I. 1 at P 6A) and indicated that women did not deserve advancements in status and pay equal to that of men (D.I. 1 at P 10), plaintiff has failed to allege, much less establish, that she was qualified for a promotion or advancement and that male employees of similar qualifications were promoted or advanced while she was not.

[*21]

Case 1:05-cv-00261-GMS   Document 5-2   Filed 08/03/2005   Page 18 of 20

Page 7
1998 U.S. Dist. LEXIS 9100, *

### B. The EEOC 300-Day Filing Requirement

Defendant contends that only those discriminatory acts which occurred during the 300 days prior to the filing of the EEOC charge are actionable. Consequently, defendant argues that to the extent plaintiff's allegations are based on events occurring prior to November 9, 1994 the charge is untimely and that plaintiff failed to preserve her claims. Defendant contends that the EEOC charge relates solely to the 1994 discipline, which it argues was not raised in plaintiff's complaint.

According to *42 U.S.C. § 2000e-5(e)*, a charge of employment discrimination must be filed within 300 days "after the alleged unlawful employment practice occurred." This filing requirement, however, "is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393, 71 L. Ed. 2d 234, 102 S. Ct. 1127 (1982)*. In *West v. Philadelphia Electric Co., 45 F.3d 744 (3d Cir. 1995)*, the Third Circuit determined the continuing violation theory to be one such equitable exception to the timely filing requirement. [*22] See *id. at 754*. Under this theory, a "plaintiff may pursue a Title VII claim for discriminatory conduct that began prior to the filing period if he can demonstrate that the act is part of an ongoing practice or pattern of discrimination of the defendant." Id. To establish a continuing violation, a plaintiff must demonstrate (1) that at least one discriminatory act occurred within the filing period and (2) that the harassment is "'more than the occurrence of isolated or sporadic acts of intentional discrimination'" but is a "persistent, on-going pattern." *Id. at 754-55* (quoting *Jewett v. Int'l Tel. & Tel. Corp., 653 F.2d 89, 91 (3d Cir. 1981))*; accord *Rush, 113 F.3d at 481 (3d Cir. 1997)*. In determining whether a continuing violation exists, the court must consider:

> (i) subject matter--whether the violations constitute the same type of discrimination; (ii) frequency; and (iii) permanence--whether the nature of the violations would trigger the employee's awareness of the need to assert her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate.

*West, 45 F.3d at 755 n.9* (adopting [*23] the approach taken by the Fifth Circuit in *Berry v. Bd. of Supervisors of Louisiana State Univ., 715 F.2d 971, 981 (5th Cir. 1983))*; accord *Rush, 113 F.3d at 481-82*. "Once the plaintiff has alleged sufficient facts to support use of the continuing violation theory, however, the 300-day filing period becomes irrelevant--as long as at least one violation has occurred within that 300 days." *West, 45 F.3d at 755*.

As the Third Circuit in West noted, "there is a natural affinity between" hostile work environment and continuing violation claims. *Id. at 755*.

> "In the arena of sexual [or racial] harassment, particularly that which is based on the existence of a hostile environment, it is reasonable to expect that violations are continuing in nature: a hostile environment results from acts of sexual [or racial] harassment which are pervasive and continue over time, whereas isolated or single incidents of harassment are insufficient to constitute a hostile environment. Accordingly, claims based on hostile environment sexual [or racial] harassment often straddle both sides of an artificial statutory cut-off date."

Id. (quoting *Jenson v. Eveleth Taconite* [*24] *Co., 824 F. Supp. 847, 877 (D. Minn. 1993))* (alterations in original).

In the case at bar, a reasonable jury could conclude that plaintiff has alleged sufficient facts to support application of the continuing violation theory to her hostile environment claim. n8 First, the record indicates that there were episodes of alleged harassment after the 300-day period began to run on November 9, 1994. n9 Specifically, plaintiff cited the "formal contact" she received on November 10, 1994 and a February 1995 office meeting during which Iovino allegedly criticized the women, but not the men, in the office. Second, the record supports a finding that plaintiff experienced continuous sexual harassment, including intensified harassment after the filing of the EEOC charge. Plaintiff has cited a series of allegedly discriminatory incidents occurring consistently over the period of her employment. n10 These purported incidents all involved sexual harassment in some form, either demeaning comments, rude behavior, inappropriate touching, or discriminatory conduct. The alleged harassment, i.e., impeding the classification of her position, grabbing by a co-worker, Iovino's derogatory statements, was [*25] not of such a nature as to "trigger a duty of the plaintiff to assert [her] rights arising from the deprivation." *45 F.3d at 756*. Since plaintiff has alleged sufficient facts to

support use of the continuing violation theory, the 300-day filing period is irrelevant. See id. Consequently, plaintiff may present evidence of the entire continuing violation. n11 See id.

n8 Although in the charge, plaintiff alleged the first and last dates of discrimination as being November 1981 and November 10, 1994, respectively, she also indicated that the discriminatory activity was continuing.

n9 Plaintiff filed the requisite EEOC charge on September 25, 1995. Consequently, the 300-day retrospective limitations period began to run on November 9, 1994.

n10 In many, if not most, of her allegations, plaintiff fails to specify the date of the purported discriminatory conduct. However, viewing the facts and all reasonable inferences therefrom in the light most favorable to the plaintiff, sufficient indicia exist for the court to discern a continuous pattern of allegedly discriminatory conduct.

n11 Since the court has already concluded that plaintiff's hostile work environment claim falls within the scope of the EEOC investigation, plaintiff also may present evidence of incidents of sexual harassment occurring subsequent to the filing of the charge. See *Robinson v. Dalton,* 107 F.3d 1018 at 1025, *Waiters,* 729 F.2d at 235.

[*26]
C. Plaintiff's Hostile Environment Claim

Defendant next contends that plaintiff has failed to produce sufficient evidence to establish a prima facie case of hostile work environment under Title VII. The Supreme Court has recognized that Title VII is violated by a "work environment abusive to employees because of their race, gender, religion, or national origin." *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 22, 126 L. Ed. 2d 295, 114 S. Ct. 367 (1993), see also *Meritor Sav Bank, FSB v. Vinson,* 477 U.S. 57, 66, 91 L. Ed. 2d 49, 106 S. Ct. 2399 (1986) ("[A] plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment."). To be cognizable within the meaning of Title VII, the harassment "must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Meritor Sav Bank, FSB,* 477 U.S. at 67 (quoting *Henson v. Dundee,* 682 F.2d 897, 904 (11th Cir. 1982). In order to establish a hostile work environment, a plaintiff must establish "by the totality of the circumstances, the existence of a hostile [*27] or abusive working environment which is severe enough to affect the psychological stability of a minority employee."

*Andrews v. City of Philadelphia,* 895 F.2d 1469, 1482 (3d Cir. 1990) (quoting *Vance v. Southern Bell Tel. & Tel. Co.,* 863 F.2d 1503, 1510 (11th Cir. 1989). Specifically, a plaintiff must demonstrate that:

(1) the employees suffered intentional discrimination because of their sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of respondeat superior liability.

Id.

Defendant argues that plaintiff has failed to make the specific allegations required to establish factors four and five of the Andrews test. n12 In addressing the objective standard of factor four, the Third Circuit noted:

To make out a case under Title VII it is "only necessary to show that gender is a substantial factor in the discrimination, and that if the plaintiff 'had been a man she would not have been treated in the same manner.'"

895 F.2d at 1485 (quoting [*28] *Tomkins v. Public Serv. Elec. & Gas Co.,* 568 F.2d 1044, 1047 n.4 (3d Cir. 1977) (citation omitted)). The court went on to hold that "the pervasive use of derogatory and insulting terms relating to women generally and addressed to female employees personally may serve as evidence of a hostile environment." Id. Review of the record reveals that plaintiff has alleged incidents involving demeaning comments, inappropriate touching, pornographic material, and discriminatory conduct. Considered as a whole and in a light most favorable to plaintiff, the court concludes that a reasonable juror could conclude that these incidents "produce a work environment hostile and offensive to women of reasonable sensibilities." 895 F.2d at 1486.

Case 1:05-cv-00261-GMS    Document 5-2    Filed 08/03/2005    Page 20 of 20

Page 9
1998 U.S. Dist. LEXIS 9100, *

> n12 Defendant does not dispute that plaintiff has alleged sufficiently factors one, two, and three.

In accord with the agency principles, to establish respondeat superior liability as required by the fifth factor, a plaintiff must demonstrate

> that management-level employees [*29] had actual or constructive knowledge about the existence of a sexually hostile environment and failed to take prompt and adequate remedial action.

Id. Defendant argues that by statute only Nold, the Executive Director of OIS, had sufficient authority so as to be an agent for Title VII purposes and that since plaintiff does not assert that Nold knew of the alleged hostile environment, defendant has no liability under Title VII. The Third Circuit, however, has stated that, under Title VII, "'the act of a supervisory employee or agent is imputed to the employer.'" *Levendos v. Stern Entertainment, Inc., 909 F.2d 747, 751 (3d Cir. 1990)* (quoting *Meritor Sav. Sank, FSB, 477 U.S. at 75*). In Levendos, the Third Circuit found that a person with the power to hire and fire, or influence hiring and firing decisions, is a supervisory agent of the employer. See *909 F.2d at 751-52; Antol, 82 F.3d at 1301* (finding that an employee's discriminatory acts may be imputed to the employer if the employee is within "'the chain of decision-makers who had the authority to hire and fire plaintiff'") (quoting *Gomez v. Allegheny Health Services, Inc., 71 F.3d 1079, 1085 (3d Cir.* [*30] *1995)*. Thus, even if Nold was the only individual with the authority to hire and fire and was without knowledge of the sexually hostile environment, respondeat superior liability could still be found as long as a supervisory employee in a position to affect plaintiff's work situation subjected her to sexual harassment, i.e, contributed to the hostile work environment. See *Harris, 510 U.S at 21-23*

Review of the record reveals that plaintiff has produced sufficient evidence to establish respondeat superior liability. Plaintiff has alleged that Iovino, her manager, not only acquiesced in, but also wilfully and intentionally participated in, the hostile work atmosphere. She also contends that she complained repeatedly to her supervisor as well as to Iovino of the discriminatory treatment but to no avail. A reasonable jury could conclude that Iovino, as well as plaintiff's supervisor, are middle-management employees whose actions are properly imputed to defendant. Accordingly, the court concludes that the five-part Andrews test has been satisfied and plaintiff's claim for hostile work environment should go forward.

## IV. CONCLUSION

For the reasons stated above, the [*31] court finds that there exist genuine issues of material fact relating to plaintiff's claims of hostile environment discrimination under Title VII. The court further finds that to the extent plaintiff alleges failure to promote or advance claims in Counts I, III, and V, they shall be dismissed for failure to exhaust administrative remedies. Therefore, defendant's motion to dismiss shall be denied in part and granted in part. An appropriate order shall issue.