LEXSEE 1997 US DIST LEXIS 21018

**GREGORY J. PACI, Plaintiff, v. ROLLINS LEASING CORPORATION, a Delaware corporation, Defendant.**

**C.A. No. 96-295-SLR**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*1997 U.S. Dist. LEXIS 21018*

**December 18, 1997, Decided**

**NOTICE:** [*1]  FOR ELECTRONIC PUBLICATION ONLY

**DISPOSITION:** Defendant Rollins' motion for summary judgment granted.

**LexisNexis(R) Headnotes**

**COUNSEL:** For plaintiff: Joseph M. Bernstein, Esquire, Wilmington, Delaware.

For defendant: James J. Sullivan, Jr., Esquire, Katherine R. Witherspoon, Esquire, Klett, Lieber, Rooney & Schorling, Wilmington, Delaware.

**JUDGES:** Sue L. Robinson, District Judge.

**OPINIONBY:** Sue L. Robinson

**OPINION:**

### MEMORANDUM OPINION

Dated: December 18, 1997
Wilmington, Delaware

**ROBINSON, District Judge**

### I. INTRODUCTION

Plaintiff Gregory J. Paci ("Paci"), a New Jersey resident, filed this action on June 6, 1996 against defendant Rollins Leasing Corporation ("Rollins"), a Delaware corporation, asserting a claim under the Civil Rights Act of 1964, *42 U.S.C. § 2000*(e), et seq. for sex discrimination. (D.I. 1) Specifically Paci alleges that

Rollins was motivated by the fact that Paci was male in deciding to terminate his employment. (D.I. 1) Paci also asserts a state law claim for wrongful discharge in violation of the implied covenant of good faith and fair dealing. n1 Currently before the court is defendant Rollins' motion for summary judgment. (D.I. 31) This court has jurisdiction pursuant to [*2] *28 U.S.C. § 1331* and § 1343.

n1 In his answering brief, Paci conceded that Rollins is entitled to summary judgment on plaintiff's state law claim. (D.I. 38 at 1) After reviewing the record, the court concludes that Paci has not adduced sufficient evidence to prove a claim of breach of the implied covenant of good faith and fair dealing. Accordingly, the court shall grant summary judgment in Rollins' favor on this claim.

For the reasons stated below, defendant's motion for summary judgment will be granted.

### II. BACKGROUND

#### A. Paci's Employment History

Plaintiff Paci, a white male, was employed from September 1987 until his termination on June 20, 1995 as an at-will employee by defendant Rollins, a Delaware corporation in the commercial truck leasing business with its principal place of business in Wilmington, Delaware. (D.I. 33 at A37; D.I. 39 at B8-9) During his tenure with Rollins, Paci was promoted from rental manager to branch manager and his annual salary increased from $ 20,000 to $ 42,000 [*3] plus bonuses. (D.I. 39 at B 12-15)

1997 U.S. Dist. LEXIS 21018, *

In June 1994, Paci became the manager of Rollins' branches 221 and 245 ("the New Castle branch"), which encompass New Castle, Delaware and Salisbury, Maryland. (D.I. 33 at A14-15; D.I. 39 at B11-12) As branch manager, Paci's responsibilities included supervising office and sales staff and preparing employee performance appraisals. (D.I. 33 at A14-15) Paci reported to Kirt Barden ("Barden"), a Rollins district manager. (D.I. 33 at A14-15) As part of his responsibilities, Paci was to keep Barden apprised of any important personnel issues which arose. (D.I. 39 at B35-36) Although Paci had the authority to recommend disciplinary actions be taken against an employee on his staff, final decisions regarding personnel were made jointly by Paci and Barden. (D.I. 33 at A15; D.I. 39 at B33, B62-63)

According to Larry Brown ("Brown"), who was Rollins' executive vice president, during the year Paci was branch manager of the New Castle branch, a number of department heads under Paci complained to him that Paci was belligerent, uncooperative, unreasonably demanding, and uncompromising in his dealings with people. (D.I. 33 at A49) Brown spoke to Terry Scott, the [*4] regional vice president and Barden's supervisor, about the problem, but he continued to receive complaints about Paci. (D.I. 33 at A50) Barden's evaluation of Paci in March 1995 advised Paci to

> study the book How to Win Friends and Influence People [and to] direct [his] focus on getting along better with employees, corp[orate] personnel, [and] internal and external customers. Your strong desire to fix things fast comes across as an irritation. Be patient--other people don't think like you!

(D.I. 39 at B19) Barden also communicated his concerns about Paci's performance to Scott. (D.I. 33 at A39)

### B. Paci's Encounters with Catherine Meara

Catherine Meara ("Meara") was already a Rollins' employee when Paci became Branch Manager of the New Castle branch. (D.I. 33 at A14, A18) Meara reported to Paci, who was responsible for preparing performance evaluations of her. (D.I. 33 at A14) According to Paci, when he assumed his job at the New Castle **branch, he was aware from discussions with prior branch managers and co-workers that Meara was a "problem" employee**. (D.I. 39 at B36-37, B39-40) Paci claims that, prior to his assuming the branch manager position, [*5] he met with Scott specifically to discuss Meara and was told to document everything regarding her. (D.I. 39 at B39-40) Beginning in June 1994, Paci began giving Meara verbal and written

warnings concerning her attitude and job performance. (D.I. 33 at A18-19) Some of these warnings, although originating with Paci, were approved by Barden. (D.I. 39 at B64-69) According to Paci, in the last quarter of 1994 he recommended to Barden and Scott that Meara be discharged. (D.I. 33 at A20)

### C. The February 3, 1995 Incident

On February 3, 1995, Paci and Meara went to the Salisbury, Maryland branch office on an overnight business trip. According to Paci, n2 the two stayed at the Hampton Inn in separate, but adjoining, rooms. (D.I. 33 at A29-30) After eating dinner together, during which they each had two alcoholic drinks, Paci and Meara returned to the hotel, where Meara followed Paci to his room. (D.I. 33 at A30) After entering Paci's room, Meara took off her coat and went to the bathroom. (D.I. 33 at A30) At the same time, Paci took off his coat, turned on the television, and sat at a round table in the room. (D.I. 33 at A30) When Meara emerged from the bathroom, she was not wearing [*6] her blouse. (D.I. 33 at A30) Paci asked Meara "What the hell are you doing?" to which she replied "I'm attracted to you and I want to make love with you." (D.I. 33 at A30) Meara then went over and sat on the bed, removed her jeans, and got under the covers. (D.I. 33 at A30) Paci told Meara that she was placing him in a compromising position since he was her boss, and he asked her if she wanted to talk about it. (D.I. 33 at A30) Meara did not respond. (D.I. 33 at A30) Paci left the room, taking Meara's room keys, and spent the night in Meara's room. (D.I. 33 at A30-31)

> n2 Because Meara has refused to discuss the incident with Rollins' General Counsel and there is no record of the incident in the log Paci kept regarding Meara, the following version of events is based solely on Paci's deposition testimony.

Approximately two days later, Paci called John Matlock ("Matlock"), vice-president of rental operations, and told him about the incident at the Hampton Inn. (D.I. 39 at B54, B101-103) Matlock was not Paci's direct [*7] supervisor, rather he was a personal friend from whom Paci would seek advice about work problems or situations. (D.I. 39 at B99-100) Paci claims, he did not seek Barden's advice as to how to deal with the situation because he did not feel comfortable bringing a matter of this nature to Barden's attention. (D.I. 39 at B43-44) According to Matlock, he advised Paci to report the incident to Paci's supervisor, but Paci did not wish to do so and asked Matlock not to tell anyone of the incident. (D.I. 33 at A48) Paci contends, however, that Matlock advised him not to discuss the incident with anyone because it could damage Paci's career. (D.I. 39 at B54)

Paci admits that between February and June 1995, in response to his inquiries, Matlock repeatedly informed Paci that he had told no one about the incident. (D.I. 33 at A33-34)

### D. Rollins' Management Learns about the February 3 Incident

Paci continued to have problems with Meara's job performance. On June 12, 1995, Paci prepared a Record of Discipline for insubordination. (D.I. 33 at A21) According to Paci, Meara reacted by stating that she was going to see an attorney. (D.I. 39 at B26) The next day Paci contacted Barden to discuss [*8] Meara's discipline. (D.I. 33 at A22, A24) Paci indicated to Barden Meara's intent to consult an attorney. (D.I. 39 at B43)

In early June 1995, Meara met with Carlisle Peet ("Peet"), Rollins' in-house General Counsel, to discuss disciplinary actions which she had received from Paci. (D.I. 33 at A52) Meara claimed that she was being harassed by Paci and that the disciplinary warnings were unjustified. (D.I. 33 at A52) Meara did not mention the February 3 incident during the meeting with Peet, however, she did indicate that she was intending to consult with an attorney. (D.I. 39 at B83-84, B86) Peet scheduled a meeting for June 20, 1995 with Paci, Barden, and Scott to discuss the validity of some of the disciplinary actions taken against Meara and to explain to Paci and Barden how to handle any future problems. (D.I. 33 at A53)

Subsequently, Barden contacted Paci to tell him that a meeting with Rollins management had been scheduled for June 20, 1995 to discuss the Meara situation. (D.I. 39 at B43) It was then that Paci told Barden of the February 3 incident with Meara because he was concerned that Meara would bring it up. (D.I. 33 at A42-43; D.I. 39 at B45-46, B71-72) According to Barden, [*9] he was furious that Paci had not told him earlier of the incident. (D.I. 39 at B72) After his conversation with Barden, Paci contacted Matlock and asked him to tell Brown about the February 3 incident. (D.I. 33 at A50-51) After learning about the incident from Matlock, Brown contacted Peet to discuss how the matter should be handled. (D.I. 39 at B85, B106-108)

Peet met with Meara on June 19, 1995 to discuss the February 3 incident. (D.I. 39 at B88) Meara refused to respond to Peet's inquiry as to whether she felt she had been sexually harassed by Paci and told Peet she wished to consult an attorney. (D.I. 39 at B27-28, B90-93) Meara did, however, reiterate that she felt that Paci was harassing her and she alluded to the fact that she considered the repetitive harassment by Paci to be the cause of a miscarriage she had suffered earlier that year. (D.I. 39 at B27-28, B90-93) Peet never met with Paci to discuss the February 3 incident. (D.I. 39 at B86)

### E. Rollins Terminates Paci's Employment

On June 20, 1995, Brown and Peet jointly determined that Paci could not remain in a supervisory position with respect to Meara because his actions in allowing Meara, a female subordinate, [*10] into his hotel room indicated poor judgment and compromised his ability to manage Meara. (D.I. 33 at A51, A54-55) According to Peet, other considerations were that Paci had failed to report the incident to his supervisors until months after it occurred and that his actions subjected Rollins to liability from Meara. (D.I. 39 at B94) Although transferring or demoting Paci was discussed, Brown and Peet determined these were not feasible alternatives, and the decision was made to discharge Paci. (D.I. 33 at A45-46) That same day, Barden told Paci that his employment with Rollins was terminated. (D.I. 33 at A45-46; D.I. 39 at B48) According to Paci, Barden told him he was being fired because of his "inability to get along with people." (D.I. 39 at B48) However, Paci felt he was discharged because of the situation with Meara. (D.I. 39 at B49)

On June 21, 1995, Paci called Peet to discuss why he had been discharged. (D.I. 39 at B50) According to Paci, Peet told him:

> Greg, we sought outside counsel, we researched this, and our people tell us that we are--we were looking at a half-a-million-dollar lawsuit. There is not a jury in the world that would not believe a woman who got on the [*11] stand crying and who had a miscarriage . . .

(D.I. 39 at B50)

The following day, Paci filed a Charge of Discrimination with the Delaware Department of Labor ("DDOL"), charging Rollins with retaliation for terminating his employment "because [he] informed [his] supervisor, Kirt Barden, that [he] was sexually harassed by a subordinate." (D.I. 33 at A8) The charge stated that the earliest and last dates of discrimination were June 20, 1995, the date of Paci's termination. (D.I. 33 at A8) The charge did not specifically allege sexual discrimination. Paci has been represented by counsel continuously within five days after filing his charge. (D.I. 42 at C1)

On July 6, 1995, the DDOL informed Paci in writing that his charge was being forwarded to the Equal Employment Opportunity Commission ("EEOC") because the DDOL did not have jurisdiction over a charge based on retaliation. (D.I. 42 at C2) The EEOC, on April 30, 1996, sent Paci a notification of his statutory right to sue. (D.I. 39 at B1) There is no indication that the EEOC ever investigated Paci's charge.

1997 U.S. Dist. LEXIS 21018, *

Paci filed this action against Rollins on June 6, 1996. (D.I. 1) The claims asserted under Title VII are set forth **[\*12]** in paragraph 10 of Paci's complaint and provide:

> 10. The acts as described above by defendant Rollins, acting through its agents and employees referred to above, constituted unlawful sex discrimination in violation of Title VII in that:
>
> (a) Rollins failed to investigate Paci's complaint that he had been subjected to sexual harassment by C.M. on February 3, 1995, on account of Paci's sex, when it would have investigated such a complaint if the complaining party had been a female;
>
> (b) Rollins was motivated by the fact that Paci was male in deciding to terminate Paci's employment because Rollins believed: (1) that it could fire a male without incurring Title VII liability; (2) that firing Paci would insulate Rollins from any possible Title VII claim by C.M., whereas retaining Paci might expose Rollins to possible Title VII claims, even though Rollins knew or should have known that there was no basis in fact for C.M. to assert a Title VII claim.

(D.I. 1)

Currently before the court is defendant Rollins' motion for summary judgment filed on May 7, 1997. (D.I. 31)

### III. STANDARD OF REVIEW

Summary judgment should be granted only if the court concludes that "there **[\*13]** is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed R Civ P. 56(c)*. The moving party bears the burden of proving that no genuine issue of material fact is in dispute. *Matsushita Elec Indus. Co., Ltd v. Zenith Radio Corp., 475 U.S. 574, 586 n 10, 89 L Ed 2d 538, 106 S Ct 1348 (1986)*. Once the moving party has carried its initial burden, the nonmoving party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id at 587.* "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Federal Kemper Life Assurance*

*Co., 57 F.3d 300, 302 n 1 (3d Cir. 1995)* (citations omitted). If the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex Corp v. Catrett, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S Ct 2548 (1986)* The mere existence of **[\*14]** some evidence in support of the nonmoving party will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that factual issue. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 91 L. Ed. 2d 202, 106 S Ct 2505 (1986)* This court, however, must "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir 1995)* (citation omitted). With respect to summary judgment in discrimination cases, the court's role is "'to determine whether, upon reviewing all the facts and inferences to be drawn therefrom in the light most favorable to the plaintiff, there exists sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff.'" *Revis v. Slocomb Industries, Inc., 814 F. Supp. 1209, 1215 (D. Del. 1993)* (quoting *Hankins v. Temple Univ., 829 F.2d 437, 440 (3d Cir. 1987))*

### IV. DISCUSSION

#### A. Jurisdiction

In the instant action, Rollins maintains that Paci's Title **[\*15]** VII n3 claim for gender discrimination is precluded because Paci failed to exhaust his administrative remedies since he did not include a gender discrimination claim n4 in the charge filed with the EEOC. The jurisdictional prerequisites (exhaustion requirements) to a suit under Title VII are the filing of a charge with the EEOC and the receipt of the EEOC's notice of the right to sue. *42 U.S.C. § § 2000e-5(e), 2000(e)-5(f)*. Because the statutory scheme of Title VII emphasizes informal means of achieving settlement over formal adjudication, a potential plaintiff normally is required to set forth in the charge to the EEOC those allegations subsequently raised in the district court. See *Schanzer v. Rutgers University, 934 F. Supp. 669, 673 (D.N.J. 1996)*

> n3 Title VII of the 1964 Civil Rights Act provides in pertinent part:
>
> (a) Employer practices. It shall be an unlawful employment practice for an employer--(1) to fail or

refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

*42 U.S.C. § 2000e-2*(a). [*16]

n4 Although the only charge set forth in Paci's Charge of Discrimination was for retaliation, neither Paci's complaint nor his answering brief make reference to such a claim. Nor does Paci make specific mention of a claim for sexual harassment. Rather, Paci's complaint is couched broadly in terms of "unlawful sex discrimination in violation of Title VII." (D.I. 1, P 10) His answering brief in opposition to Rollins' motion for summary judgment also refers broadly to "Title VII claims." (D.I. 38 at 15) However, other statements in Paci's answering brief indicate that his claim is one of gender discrimination:

> It is perfectly reasonable to assume that at some point in the investigation, the EEOC would have "re-labeled" Paci's EEOC charge as a "sex discrimination" charge. (D.I. 38 at 14)

> In sum, Plaintiff submits that there is "direct evidence" under Price Waterhouse and its progeny, that would permit a jury to conclude that Paci's gender, as opposed to any misconduct, was a motivating factor in Rollins' decision to fire Paci. In other words, Paci's gender, which placed him in the "unprotected class" created a virtually risk-free opportunity, by

firing Paci, for Rollins to avoid any liability to Meara, who, because of her gender, was in the "protected class." (D.I. 38 at 19)

Therefore, the court concludes that Paci's claim is for gender discrimination. To the extent that Paci stated a claim for retaliation and/or sexual harassment, the court finds that Paci has failed to set forth facts to support a prima facie case of retaliatory discharge and/or harassment. Accordingly, to the extent that Paci alleges retaliation and sexual harassment, the court grants summary judgment in favor of Rollins.

[*17]

In accordance with the exhaustion requirement, there are limitations on the presentation of new claims in the trial court. *Howze v. Jones & Laughlin Steel, Corp., 750 F.2d 1208, 1212 (3d Cir. 1984).* The parameters of the resulting civil complaint that may follow a notice of a right to sue from the EEOC are "'defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination,'" regardless of the actual scope of the EEOC investigation. *Hicks v. ABT Assocs., Inc., 572 F.2d 960, 966 (3d Cir. 1978)* (quoting *Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398-99 (3d Cir. 1976)*, cert. denied, *429 U.S. 1041, 50 L. Ed. 2d 753, 97 S. Ct. 741 (1977)).* Therefore, a trial court may assume jurisdiction over additional charges only if "they are reasonably within the scope of the complainant's original charges and if a reasonable investigation by the EEOC would have encompassed the new claims." *Howze, 750 F.2d at 1212.* However, this standard must be applied in accord with the "sound and established policy that procedural technicalities should not be used to prevent Title VII claims from being decided on the merits." *Revis,* [*18] *814 F. Supp. at 1216* (quoting *Gooding v. Warner-Lambert Co., 744 F.2d 354, 358-59 (3d Cir. 1984)*)

Where the allegations in the complaint were sufficiently distinct from those presented in the EEOC charge and were not part of the EEOC investigation, courts have refused to entertain the expanded claims until administrative procedures have been exhausted. See e.g., *Zalewski v. M.A.R.S. Enterprises, Ltd., 561 F. Supp. 601, 604-05 (D. Del. 1982)* (finding the charge of gender discrimination presented to the EEOC and the claim of sexual harassment in the civil suit to be unrelated and independent charges since the facts alleged in the complaint were wholly different from those set forth in the charge); *Sandom v. Travelers Mortgage Services, Inc., 752 F. Supp. 1240, 1246-48 (D.N.J. 1990)*, aff'd without op., *998 F.2d 1005 (3d Cir. 1993)* (dismissing a

sexual harassment claim that was not raised in the EEOC charge because it arose from a set of wholly distinct facts and thus would not have been discovered by a reasonable EEOC investigation of the filed charge of sexual discrimination). However, courts have heard claims not specifically mentioned in the prior EEOC charge where [*19] there was a close nexus between the facts supporting the claims raised in the charge and those in the complaint. See e.g., *Howze, 750 F.2d at 1212* (finding the claim in the civil suit that plaintiff was discriminated against because of her involvement with a "Black Caucus" explained the original EEOC charge, which alleged racial discrimination in job promotion); *Ostapowicz, 541 F.2d at 398-99* (finding that additional charges of gender discrimination filed during the pendency of the administrative proceedings may be considered "explanations of the original charge and growing out of it") In the instant action, the charge filed with the EEOC stated that Paci was terminated in retaliation for informing his supervisor that he was sexually harassed by a female subordinate. (D.I. 33 at A8) The question is whether or not a reasonable investigation would have led to the facts surrounding Paci's claim of gender discrimination. See *Zalewski, 561 F. Supp. at 604*

Reviewing the EEOC complaint filed by Paci, the court finds, as a matter of law, that Paci's gender discrimination claim qualifies under the above standard. First, the facts supporting Paci's charge of retaliation are the [*20] same as those supporting the complaint's claim of gender discrimination. Second, an EEOC investigation of retaliation based on the original charge would have disclosed the gender discrimination claim. Cf. *Zalewski, 561 F. Supp. at 605* (finding "the sole common denominator of the two charges [a male-female sexual discrimination claim and a sexual harassment claim based on termination for refusal to accept offer for homosexual favors] is the fact that the discrimination allegedly involved sex, yet the two sex discrimination claims were in no way 'alike or related'") (citations omitted)). In the instant action, the activity alleged by Paci in his charge to the EEOC could give rise to both retaliation and sex discrimination claims. Accordingly, the court finds that a reasonable investigation would have revealed the facts surrounding Paci's gender discrimination claim.

**B. Paci's Title VII Sex Discrimination Claim Against Rollins**

**1. Legal standard for claims brought under Title VII**

Generally, to state a disparate treatment in employment claim under Title VII, a plaintiff must demonstrate that he was "singled out and treated less favorably than others similarly situated [*21] on the basis of an impermissible criterion." *Equal Employment Opportunity Comm'n v. Metal Serv. Co., 892 F.2d 341, 347 (3d Cir. 1990)* The plaintiff may present either direct evidence of discriminatory intent under *Price Waterhouse v. Hopkins, 490 U.S. 228, 104 L. Ed. 2d 268, 109 S. Ct. 1775 (1989)* ("mixed motives" cases) or indirect evidence of discrimination under the framework of *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973)* and *Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981)* ("pretext" cases). In both pretext and mixed motives cases, the plaintiff must first state a prima facie case of gender discrimination. He can do so by showing by a preponderance of the evidence that: (1) he is a member of a protected class; (2) he was qualified for the position from which he was discharged; and (3) similarly situated members of the opposite sex were treated more favorably. See *Stinson v. Delaware River Port Authority, 935 F. Supp. 531, 539 (D.N.J. 1996)* To make a prima facie case of reverse discrimination, the plaintiff also must demonstrate "background circumstances [*22] supporting the suspicion that the defendant is that unusual employer who discriminates against the majority." *Davis v. Sheraton Society Hill Hotel, 907 F. Supp. 896, 899 (E.D. Pa 1995)*

The burden of proof varies depending on whether the case is characterized as a being a "pretext" or "mixed motives" case. See *Price Waterhouse, 490 U.S. at 246-48* In a mixed motives case under Price Waterhouse, once the plaintiff has produced direct evidence that an illegitimate criterion was a motivating factor in the employment decision, both the burden of production and the burden of persuasion shift to the defendant. See *id., 490 U.S. 228 at 277* The defendant then must show by a preponderance of the evidence it would have made the same employment decision regardless of its discriminatory animus. See *id. at 244-46* To come within the Price Waterhouse framework, the evidence presented by the plaintiff "must directly reflect a discriminatory . . . animus on the part of a person involved in the decision making process." *Armbruster v. Unisys Corp., 32 F.3d 768, 778 (3d Cir. 1994)*, see also, *Ostrowski v. Atlantic Mutual Ins. Cos., 968 F.2d 171, 182 (2d Cir. 1992)* "'Direct [*23] evidence is evidence which, if believed, proves the fact without inference or presumption.'" *Nixon v. Runyon, 856 F. Supp. 977, 983 (E.D. Pa. 1994)* (quoting *Brown v. East Miss. Elec. Power Ass'n, 989 F.2d 858, 861 (5th Cir. 1993)*); *Clark v. Coats & Clark, Inc., 990 F.2d 1217, 1223 (11th Cir. 1993)* ("Evidence [of discrimination] is direct when it is sufficient to prove discrimination without inference or presumption.").

In contrast, in pretext cases, once the plaintiff has established a prima facie case of employment discrimination, the burden of going forward shifts to the defendant who is then required to articulate a legitimate, nondiscriminatory reason for the challenged employment action. See *McDonnell Douglas, 411 U.S. at 802-03, Burdine, 450 U.S. at 252-55, Bellissimo v. Westinghouse Electric Corp., 764 F.2d 175, 179 (3d Cir. 1985),* cert. denied, *475 U.S. 1035, 89 L. Ed. 2d 353, 106 S. Ct. 1244 (1986).* The defendant need only present enough evidence to raise a genuine issue of fact "as to whether it discriminated against the plaintiff." *Burdine, 450 U.S. at 254-55.* If the defendant is successful in meeting its burden of production, the presumption [*24] of discrimination created by the prima facie showing drops from the case, and the plaintiff must show by a preponderance of the evidence that the defendant's proffered reason for the employment decision was merely pretext for discriminatory animus. See *id. at 256.* The plaintiff can satisfy his burden of proof "either directly by persuading the [fact finder] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Id.; see also *Armbruster, 32 F.3d at 783.* At all times, the ultimate burden of persuading the trier of fact of the defendant's discriminatory intentions remains with the plaintiff. See *St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507, 125 L. Ed. 2d 407, 113 S. Ct. 2742 (1993).*

## 2. Summary judgment standard in Title VII cases

In the Title VII context, the defendant is entitled to summary judgment if it can demonstrate that: (1) the plaintiff is unable to establish a prima facie case of discriminatory discharge; or (2) if the plaintiff can establish a prima facie case, the plaintiff cannot produce sufficient evidence of pretext to rebut the defendant's [*25] legitimate, nondiscriminatory reason for discharging the plaintiff. See *Stinson, 935 F. Supp at 539.* The court evaluates defendant's summary judgment motion as follows:

> The district court must determine whether the plaintiff has cast sufficient doubt upon the employer's proffered reasons to permit a reasonable factfinder to conclude that the reasons are incredible . . .

*Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1072 (3d Cir. 1996)* (en banc), cert. denied, *138 L. Ed. 2d 1031, 117 S. Ct. 2532 (1997).* The plaintiff can demonstrate that there is "sufficient doubt" by showing "'weaknesses, implausibilities, inconsistencies,

incoherences, or contradictions in the employer's proffered legitimate reasons for its action [such] that a reasonable factfinder could rationally find them 'unworthy of credence.'" Id. (quoting *Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994)* (citations omitted)). Alternatively, a Title VII plaintiff can defeat a motion for summary judgment by showing "that the reason for the employer's act was discrimination." *Bray v. Marriott Hotels, 110 F.3d 986, 990 (3d Cir. 1997).*

## 3. Paci's Title VII claims [*26]

In moving for summary judgment, Rollins contends that Paci has failed to establish a prima facie case of gender discrimination under Title VII. Moreover, Rollins asserts that, even if Paci could establish a prima facie case, he has not rebutted Rollins' legitimate, nondiscriminatory reason for his termination. In response, Paci argues that genuine issues of material fact exist concerning the establishment of a prima facie case and that plaintiff has set forth direct evidence indicating that it was his gender, not any misconduct, that was the motivating factor in Rollins' decision to discharge Paci.

Paci contends that his claim is of the mixed motives type because he has presented direct evidence of discrimination. Paci argues that Peet's alleged remark on June 21, 1995 that "[Rollins was] looking at a half-a-million-dollar lawsuit . . . [because t]here [wasn't] a jury in the world that would not believe a woman who got on the stand crying and who had a miscarriage . . ." (D.I. 39 at B50) constitutes direct evidence that discriminatory intent was a motivating factor in his termination. However, this single statement simply does not constitute direct proof sufficient [*27] to establish by a preponderance of the evidence that Paci was fired because of his gender. "Only the most blatant remarks whose intent could be nothing other than to discriminate constitute direct evidence." *Clark, 990 F.2d at 1223.* This remark does not directly reflect a discriminatory bias on the part of Peet or Rollins. At best, this statement constitutes only indirect evidence of a discriminatory attitude. See *Nixon, 856 F. Supp. at 984.* Accordingly, because Paci has failed to present direct evidence of discriminatory animus, the McDonnell Douglas-Burdine pretext case framework is the applicable mode of analysis.

Under the McDonnell Douglas-Burdine framework, Paci has failed to satisfy the elements of his prima facie case. To prove his prima facie case, Paci must produce evidence that similarly situated female employees were treated differently and that there was no adequate nondiscriminatory explanation for the disparate treatment. See, e.g., *Bryant v. Int'l Schools Services, Inc., 675 F.2d 562, 575 (3d Cir. 1982).* Here, Paci has failed to present any evidence that Rollins afforded better or

different treatment to similarly situated females than to [*28] him. In fact, Paci admits that Rollins has no female branch managers. (D.I. 42 at C8) He also admits that he is unaware of any female manager at Rollins who was treated differently than he with regard to discipline and/or discharge following an incident with an employee. (D.I. 42 at C8)

The only individuals to whom Paci seeks to compare his treatment are other male employees of Rollins, specifically other branch managers and a vice president (Matlock). (D.I. 33 at A9; D.I.42 at C3-5, C8) Paci claims that when these individuals were accused of sexual harassment or misconduct they were found other positions within Rollins, whereas he was discharged. n5 (D.I. 33 at A9; D.I.42 at C3-5, C8) These individuals are neither similarly situated to Paci nor female, and thus their conduct and resulting discipline are not relevant to Paci's claim of gender discrimination. Therefore, Paci has failed to satisfy the third element of a prima facie case of gender discrimination. See *Greenslade v. Chicago Sun-Times, Inc., 112 F.3d 853, 863-64 (7th Cir. 1997)* Moreover, to the extent that Paci alleges reverse gender discrimination, the evidence provided does not create the suspicion that Rollins [*29] is the unusual employer who discriminates against men. Accordingly, the court shall grant summary judgment in favor of Rollins on Paci's claim of gender discrimination. See *Bellissimo, 764 F.2d at 182* (granting summary judgment in favor of employer where employee failed to show that any similarly situated male employees were treated differently)

n5 Specifically, Paci alleges:

To my knowledge there have been incidents of sexual harassment where the harasser has not been subjected to as harsh a discipline as I have. John Matlock, V.P. Rental Operations, was accused of sexual misconduct and was not discharged. There have [been] several instances where Branch Manager[s] have committed infractions of a more serious nature and they were found other positions within the company. I was discharged without being

accused of any sexual misconduct. I was discharged without the benefit of disciplinary warnings. Also, I was not afforded the opportunity to be reassigned or offered the opportunity to be demoted as has been offered to other managers who have had discipline problems.

(D.I. 33 at A9)

[*30]

Even assuming, arguendo, that Paci could establish a prima facie case, Rollins has set forth evidence of a legitimate, nondiscriminatory reason for Paci's discharge, and Paci has not offered sufficient rebuttal evidence. In his attempt to show that Rollins' enunciated reason was pretextual, the only fact noted by Paci was Peet's alleged June 21 remark. This evidence does not show that Rollins' proffered explanation for Paci's discharge was pretext for discrimination. Rather, the evidence shows that Paci was fired for only one reason: he used poor judgment in allowing Meara to enter his motel room and in failing to tell his direct supervisor about the incident until months later. See *Bouton v. BMW of North America, Inc., 29 F.3d 103, 107 (3d Cir. 1994)* ("Under negligence principles, prompt and effective action by the employer [in response to report of harassment] will relieve it of liability."); *Andrews v. City of Philadelphia, 895 F.2d 1469, 1486 (3d Cir. 1990)* (imposing respondeat superior liability under Title VII where the employer knew or should have known of the harassment and failed to take prompt remedial action). Consequently, even if Paci had established a [*31] prima facie case, summary judgment in favor of Rollins is proper because Paci has failed to present evidence raising a triable issue of fact concerning the issue of pretext.

**IV. CONCLUSION**

For the reasons stated above, the court concludes that there are no genuine issues of material fact relating to plaintiff Paci's claims of discrimination under Title VII. Therefore, defendant Rollins' motion for summary judgment shall be granted. An appropriate order shall issue.

LEXSEE 2004 U.S. DIST. LEXIS 3645

**MELISSA VISNIKAR, Plaintiff, v. DEPARTMENT OF ENVIRONMENTAL PROTECTION, et al., Defendants.**

**Civil Action No. 02-963**

**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

*2004 U.S. Dist. LEXIS 3645*

**January 27, 2004, Decided**

**DISPOSITION:** [*1] Magistrate Judge's recommendation to grant defendants' motion for summary judgment.

**LexisNexis(R) Headnotes**

**COUNSEL:** For MELISSA W. VISNIKAR, plaintiff: Lois Glanby, McMurray, PA.

For DEPARTMENT OF ENVIRONMENTAL PROTECTION, THOMAS FLAHERTY, DAVID JANCO, JIM ERB, defendants: Thomas F. Halloran, Office of the Attorney General, Pittsburgh, PA.

**JUDGES:** FRANCIS X. CAIAZZA, U.S. Magistrate Judge. Judge McVerry.

**OPINIONBY:** FRANCIS X. CAIAZZA

**OPINION:**

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I. RECOMMENDATION**

For the reasons stated below, it is respectfully recommended that the Defendants' Motion for Summary Judgment (Doc. 19) be granted.

**II. REPORT**

**BACKGROUND**

A. Procedural History

Melissa W. Visnikar ("the Plaintiff") is a female geologist, who currently works at the Department of Environmental Protection, Bureau of Oil and Gas Management ("the DEP"). *See generally* Compl. (Doc. 1). On May 28, 2002, the Plaintiff commenced this action against the DEP and various members of its management (referred to collectively as "the Defendants"). *See generally id.* The individuals named in the complaint include: Thomas Flaherty ("Flaherty"), the DEP's Technical Services Chief; David Janco ("Janco"), [*2] the DEP's Program Manager; and Jim Erb ("Erb"), the DEP's Bureau Director. *See id.* PP 6, 7 & 8. The Complaint generally alleges "employment discrimination and harassment based on gender/sex and retaliation for engaging in protected acts." *See id.*, "Complaint." The Plaintiff was allegedly discriminated against "by being denied promotion[s] and reclassification, while other, less qualified males with less seniority who were trained by the Plaintiff were promoted over her ...." *See id.* P 13(a). In addition, the Plaintiff claims she was "harassed and subjected to sexual innuendo and sexually offensive comments." *See id.* P 13(b). As the Plaintiff has characterized the suit in her subsequent briefing, "the crux of this case is whether Plaintiff, one of the only female geologists, who has worked in the same position for over a decade at the DEP, was continually discriminated against, subjected to a hostile work environment, unlawfully denied a promotion, and retaliated against, all because of her gender." *See* Pl.'s Resp. to Defs.' Mot. for Summ. J. (Doc. 25; hereinafter cited as "Pl.'s Br.") at 1.

The Complaint specifically alleges the following claims against the various [*3] Defendants:

Case 1:05-cv-00261-GMS    Document 5-4    Filed 08/03/2005    Page 12 of 27

Page 2
2004 U.S. Dist. LEXIS 3645, *

Employment discrimination against the DEP in violation of Title VII of the Civil Rights Act of 1964, *42 U.S.C. Section 2000e et seq.* ("Title VII") and the Equal Pay Act, *29 U.S.C. Section 206(d)* ("the EPA"). *See* Count I; n1

Federal civil rights violations against all Defendants based on the alleged denial of equal protection as provided by the *Fourteenth Amendment* under *42 U.S.C. Section 1983* ("*Section 1983*"). *See* Count II;

Pendant state claims against all Defendants based on alleged violations of the Pennsylvania Human Relations Act, *43 P.S. Section 951 et seq.* ("the PHRA"). *See* Count III; and

Aiding and abetting employment discrimination claims against Flaherty, Janco, and Erb under the PHRA, *43 P.S. Section 955(e)*. *See* Counts IV, V, VI.

n1 Count I also references certain provisions the Civil Rights Act of 1991, *42 U.S.C. Sections 1981* and *1985* ("*Section 1981 and 1985* claims") as potentially creating additional bases of liability. The parties, however, appear to stipulate to the dismissal and/or withdrawal of these claims. *See* Statement of Material Facts Accompaniment to Mot. for Summ. J. (Doc. 22; hereinafter cited as "Defs.' Facts") P 3 (omitting *Section 1981 and 1985* claims from those claims listed in the Complaint); *see* Pl.'s Statement of Disputed Material Facts in Resp. to Defs.' Mot. for Summ. J. (Doc. 27; hereinafter cited as "Pl.'s Facts") (responding "Undisputed" to Defendants' characterization of claims in P 3, above).

[*4]

The Plaintiff seeks, *inter alia,* injunctive relief; actual and consequential damages, including back and front pay with prejudgment interest; compensatory, punitive, and nominal damages; litigation costs; and any other relief the court finds just. *See* "Wherefore" Clauses.

On August 5, 2003, the Defendants filed a Motion for Summary Judgment ("the Defendants' Motion" or "Motion"). *See* Mot. for Summ. J. (Doc. 19; hereinafter cited as "Defs.' Mot."). On the following day, the Defendants submitted: a supplement to their Motion, *see*

Supplement to Mot. for Summ. J. (Doc. 20; hereinafter cited as "Defs.' Supp."); a supporting brief, *see* Br. in Supp. of Mot. for Summ. J. (Doc. 21; hereinafter cited as "Defs.' Br."); and a statement of material facts, *see* Defs.' Facts.

In turn, on November 24, the Plaintiff filed: a response brief, *see* Pl.'s Br.; various exhibits, *see* Pl.'s App. of Exs. in Resp. to Defs.' Mot. for Summ. J. (Doc. 26; hereinafter cited as "Pl.'s Exs."); and a statement of disputed material facts, *see* Pl.'s Facts. The briefing has come to a close and the matter is now ripe for adjudication.

B. Facts

The Plaintiff has been employed at [*5] the DEP since 1992. *See* Letter from Duritsa to Visnikar dated July 26, 1992 (attached as Ex. F4 to Pl.'s Exs. at 3) (confirming the Plaintiff's employment at the DEP). From 1993 to 2001, she held the position of "Geologist I." *See* EEOC Charge of Discrimination (attached as Ex. A to Pl.'s Exs.; hereinafter cited as "EEOC Charge"). In April, 2001, she was reclassified as a "Geologic Specialist." *See* Letter from Coakley to Visnikar dated Apr. 6, 2001 (attached as Ex. G to Defs.' Mot.; hereinafter cited as "Reclassification Letter") (informing the Plaintiff of change of classification, effective April 21, 2001). By the Plaintiff's own admission, she has not obtained a professional geologist's license. n2 *See* Dep. of Melissa W. Visnikar (attached as Ex. A to Defs.' Mot.; hereinafter cited as "Visnikar Dep.") at 42.

n2 According to the Plaintiff's submissions, a professional geologist's license can be obtained in one of two ways: either by taking an exam, or by a "grandfathering in" process. *See* Dep. of Bryan McConnell (attached as Ex. G to Pl.'s Exs.) at 91-92. Under the latter procedure, an applicant must have five years of experience relevant to the practice of geology and submit three references to the relevant state agency verifying that experience. *See id.* at 92.

[*6]

In 1997, Flaherty, the Chief of the Technical Services Section of the Gas and Oil Program, allegedly assigned to the Plaintiff the title of "Senior Geologist," a position that entailed, among other responsibilities, providing "training and assistance" to geologist trainees. n3 *See* Decl. of Melissa Visnikar (attached as Ex. K to Pl.'s Exs.; hereinafter cited as "Visnikar Decl.") PP 3 & 4 and accompanying exs.; *see* also Pl.'s Facts P 2. During this time, she trained two less senior male geologists in her unit: Eric Draper ("Draper") n4 and Robert

Case 1:05-cv-00261-GMS    Document 5-4    Filed 08/03/2005    Page 13 of 27

Page 3
2004 U.S. Dist. LEXIS 3645, *

Swansboro ("Swansboro") n5. *See* Pl.'s Facts P 2. Both Draper and Swansboro have been licenced through the grandfathering process. *See* Flaherty Dep. at 48, 55.

> n3 The Plaintiff's submissions indicate that such training is typical of the Geologist I's position. *See* Dep. of Tom Flaherty (attached as Ex. H to Pl.'s Exs.; hereinafter cited as "Flaherty Dep.") at 46 ("Q: Is it typical for someone with a lower classification than geologist 2 or professional geologist to be training someone? A: Yes. That's sort of standard office procedure not just in oil and gas but other programs to help the supervisor out."). [*7]

n4 Draper's employment commenced on November 1, 1993. *See* Letter from Duritsa to Swansboro dated December 22, 1993 (attached as Ex. F4 to Pl.'s Exs. at 7).n5 Swansboro was hired on January 25, 1993. *See* Letter from Duritsa to Swansboro dated August 25, 1993 (attached as Ex. F4 to Pl.'s Exs. at 5).

Between April 1997 and April 2000, the Plaintiff received strong appraisals from her supervisors. *See* Pl.'s Br. at 6. In fact, her annual reviews identify the Plaintiff's performance in all areas during this time period as either "Commendable" or "Outstanding." *See id.; see also* Employee Performance Reviews (attached as Ex. J to Pl.'s Exs.).

At some point prior to February 1999, the Plaintiff allegedly communicated to Flaherty her desire to be promoted to a Geologist II position. *See* Pl.'s Br. at 6-7; Flaherty Dep. at 41-43. During this "informal discussion," Flaherty informed the Plaintiff that he would discuss the matter with his supervisor, Janco. *See* Flaherty Dep. at 41-42. Flaherty and Janco allegedly concluded that because "the personnel people were rewriting [*8] the class specifications for the geologist series[,]" they "agreed that rather than try to present a request for reclassification when the class specs were being rewritten that it seemed to make more sense to wait for reclassification to be completed and then address it if [they] could." *See id.* at 42.

In February of 1999, the Plaintiff filed a grievance ("the 1999 Grievance") with her employer and/or her union based on the denial of her promotion to Geologist II ("the 1999 Promotion Denial"). *See* EEOC Charge. While the parties have not outlined in detail the process through which the 1999 Grievance reached its final disposition, the Plaintiff's deposition testimony indicates that the Plaintiff's union determined not to arbitrate the issue, and that it was denied and withdrawn on January

11, 2001. *See* Visnikar Dep. at 12-13; *see also* EEOC Charge. n6

> n6 The Plaintiff, however, did not commence any of the administrative proceedings with the EEOC at that time.

On April 6, 2001, the DEP adopted [*9] a new classification system ("the 2001 Reclassification"), as evidenced by a letter issued by the DEP's Bureau of Personnel stating: "On March 14, 2001, the Executive Board formally adopted a new classification series for geologists and hydrologists based on a settlement between the Commonwealth and AFSCME." *See* Reclassification Letter.

Pursuant to the reclassification, the Plaintiff's former classification as "Geologist I" became known as "Geologic Specialist," a fact that otherwise had no effect on the Plaintiff's status or salary. *See id.*

However, the position of "Geologist II" - the position previously sought by the Plaintiff - was now classified as "Licensed Professional Geologist." *See* Flaherty Dep. at 34; *see also* Professional Geologist Implementation (attached as Ex. I to Defs.' Supp.; hereinafter cited as "Implementation Chart") at 6. As the title suggests, a professional geologist license was now required to assume that position. *See* Defs.' Br. at 12.

Through this reclassification, Draper and Swansboro were both promoted to the position of Licensed Professional Geologist, which increased their salaries to paygrade 8. *See* EEOC Charge. In contrast, [*10] the Plaintiff, as Geologic Specialist, remained at paygrade of 7. *See id.* The court will refer to these events as "the 2001 Failure to Promote".

On June 1, 2001, the Plaintiff filed a complaint with the EEOC ("the EEOC Charge"). *See* Pls.' Facts P 4. The EEOC Charge indicates that it was cross-filed with the Pennsylvania Human Relations Commission. n7 *See* EEOC Charge. The EEOC Charge alleges unlawful discrimination claims under Title VII - the first based on the Plaintiff's sex, and the second based on retaliation for the Plaintiff's filing of the 1999 Grievance. *See id.* It also alleges a violation of the EPA. *See id.* As the parties dispute the precise scope of the EEOC Charge, its substance will be explored in greater detail below. *See* discussion, *infra,* at 11-18. The EEOC dismissed the Plaintiff's claims. *See* EEOC Dismissal and Notice of Rights (attached as Ex. to Compl.). In a letter dated January 25, 2002, the EEOC clarified: "The evidence obtained in the investigation of the [EEOC Charge] thus far does not support your allegation of sex and/or

retaliation discrimination. Respondent has met its burden of articulating a legitimate, non-discriminatory [*11] reason for its action ..." *See* Letter from Sinkler to Visnikar dated Jan. 25, 2002 (attached as Ex. D to Defs.' Mot.; hereinafter cited as "EEOC Explanation Letter").

> n7 As the Plaintiff properly notes, "the PHRC and EEOC have a work-sharing agreement in which 'they have apportioned initial jurisdiction over discrimination complaints in order to avoid unnecessary duplication of investigatory time and effort.'" *See* Pl.'s Br. at 3 (citing *Toomey v. Apple Press, Ltd., 2000 US Dist LEXIS 10608, 2000 WL 1049278, *1 (E.D. Pa. July 27, 2000)*). Further, "each agency waives its right to initially review claims that are first filed with the other agency," and the second agency essentially defers to the first. *See Toomey, 2000 US Dist LEXIS 10608, 2000 WL 1049278 at *1* (citation omitted).

In addition to the facts identified above, the Plaintiff alleges that "throughout my 11 years at Defendant DEP, I was subjected to degrading, hostile comments that the male employees were not subjected to[,] such as David Janco, Program [*12] Manager and Tom Flaherty's supervisor (my boss' boss) telling me to 'lick my fingers' after he ate a cinnamon roll during a meeting, and to speak softly in the office." *See* Visnikar Decl. P 8. n8

> n8 In addition to the allegations outlined above, the Plaintiff's opposition brief introduces a new theory of discrimination based on new facts - namely, that Draper and Swansboro were hired at a higher salary than the Plaintiff. *See* Pl.'s Br. at 5 (stating "as discovery produced by Defendants' [sic] revealed, Plaintiff was hired at a lower rate of pay than the two male geologists in her unit ..."). This theory was not raised in its Complaint, nor has the Plaintiff sought to amend its Complaint to include such allegations. In a recent decision by the United State District Court for the Eastern District of Pennsylvania, the court forbid a plaintiff from raising new theories of discrimination based on new facts in order to avoid summary judgment, reasoning that "much of the value of summary judgment procedure ... would be dissipated if a party were free to rely on one theory in an attempt to defeat a motion for summary judgment and then, should that theory fail, come back along thereafter and fight on the basis of some other theory." *See Doltz v. Harris*

& *Assocs., 280 F. Supp.2d 377, 392 (E.D. Pa. 2003)* (quoting *Pallottino v. City of Rio Rancho, 31 F.3d 1023, 1027 (10th Cir. 1994)*). Accordingly, the court will not address these allegations, nor do they serves as an impediment to the granting summary judgment in favor of the Defendants in this case.

[*13]

C. Legal Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Fed. R. Civ. P. 56(c)*. An issue is "'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *See Anderson v. Liberty Lobby, Inc., 477 US. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)*. A factual dispute is "material" if it might affect the outcome of the suit under governing law. *See id.*

The party seeking summary judgment always bears the initial responsibility of informing the district court of the basis of its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett, 477 US. 317, 323, 91 L. Ed 2d 265, 106 S. Ct. 2548 (1986)*. Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply [*14] by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." *See id. at 325.*

After the moving party has met its initial burden, "the adverse party's response, by affidavits or otherwise as provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." See *Fed. R. Civ. P. 56(e)*. That is, summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex, 477 US. at 322.* "If the opponent [of summary judgment] has exceeded the 'mere scintilla' [of evidence] threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent." *See Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).* Under *Rule 56*, the Court must [*15] view the evidence presented on the motion in the light most

favorable to the opposing party. *See Anderson, 477 U.S. at 255* (citation omitted).

## ANALYSIS

### 1. The Plaintiff Has Failed to State Claims Under Title VII and the PHRA.

#### a. The Plaintiff has Failed to Exhaust Administrative Remedies in Regard to Certain Claims.

Before reaching the merits of the Plaintiff's Complaint, the Defendants argue that the District Court cannot consider several of the Plaintiff's claims because they were not exhausted in the administrative proceedings below. *See* Defs.' Br. at 1-5, 10-11. More specifically, the Defendants maintain that the court's review is limited to claims relating to the 2001 Failure to Promote, which represent the only claims presented to the EEOC. *See id.* It follows, therefore, that the Plaintiff's claims based on other theories, including, *inter alia,* an alleged hostile work environment and the 1999 Promotion Denial must be dismissed. *See id.*

It is well established that to bring suit under Title VII and the PHRA, a plaintiff must first file a timely administrative charge with the EEOC or a similar state agency. *See 42 U.S.C. Section 2000e-5(e)* [*16] ; *see also, e.g., Woodson v. Scott Paper Co., 109 F.3d 913, 925 (3d Cir. 1997).* If the plaintiff "fails to exhaust administrative remedies her claims can be dismissed." *See Zezulewicz v. Port Auth. of Allegheny County, 290 F. Supp.2d 583, 591 (W.D. Pa. 2003).* As the United States Court of Appeals for the Third Circuit ("the Third Circuit Court") has explained, the purpose of the exhaustion requirement "is to afford the EEOC the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court." *See id.* (quoting *Antol v. Perry, 82 F.3d 1291, 1296 (3d Cir. 1996)).* It also is intended to benefit the defendant employer by putting it "on notice that a complaint has been lodged against [it] and gives [it] the opportunity to take remedial action." *See Lawton v. Sunoco, Inc., 2002 U.S. Dist. LEXIS 13039, 2002 WL 1585582, *4-*5 (E.D. Pa. July 17, 2002)* (citations omitted). Accordingly, "because the aim of the statutory scheme is to resolve disputes by informal conciliation, prior to litigation, suits in the district court are limited to matters of which the EEOC has had notice and [*17] chance, if appropriate, to settle." *Anjelino v. New York Times Co., 200 F.3d 73, 79 (3d Cir. 1999)* (citations omitted).

To determine what claims are properly before the District Court, the test developed by the Third Circuit Court is whether the claims at issue fall "fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." *See Antol, 82 F.3d at 1295* (citation

omitted). n9 The Third Circuit Court has cautioned against reading a plaintiff's EEOC Charge too narrowly, stating that courts must "keep in mind that charges are drafted by one who is not well versed in the art of legal description." *See Hicks v. ABT Assoc., Inc., 572 F.2d 960, 965 (3d Cir. 1978).* Thus, "the scope of the original charge should be liberally construed." *See id.* (citation omitted).

> n9 This standard applied to the PHRA claims as well. *See Ackah v. Hershey Foods Corp., 236 F. Supp.2d 440, 444* (applying same test to exhaustion arguments under Title VII and the PHRA, stating "the PHRA should be construed in light of the principles of fair employment law which have emerged relative to the federal statute[s] ...") (citations and internal quotations omitted).

[*18]

Here, the EEOC Charge identifies the "cause[s] of discrimination" as two-fold: (1) "sex"; and (2) "other," which is specified as "Equal Pay." *See* EEOC Charge. It indicates, as the "Date Discrimination Took Place" ("the Date Box") from "04/20/2001" to "04/20/2001." *See id.* The box labeled "continuing action," however, is also marked. *See id.*

The narrative portion of the EEOC Charge comprises three paragraphs. *See id.* The first paragraph states: that the Plaintiff's employment began in 1993; that she was assigned "Senior Geologist" in 1997, and trained two less senior, male Geologists; that in April 2001, the two males were promoted to a paygrade 8, while she remained at paygrade 7; and that her grievances were denied by the Defendants. *See id.* P 1. The second paragraph explains that Flaherty had previously denied her a promotion in February 1999, and that she filed a grievance that was later denied and withdrawn. *See id.* P 2. It again states that in April of 2001, the Plaintiff was notified that her male co-workers were being promoted to paygrade 8. *See id.* The final paragraph states "I believe that I have been unlawfully discriminated against because [*19] of my sex, female, and in retaliation [based on the 1999 Grievance], in violation of Title VII ... [The Defendants] promoted a less senior, less experiences males, while I have been denied [a promotion]." *See id.* P 3.

The Plaintiff's alleged hostile work environment claims simply cannot be construed as "fairly within the scope of the prior EEOC complaint." *See Antol, 82 F.3d at 1295* (citation omitted). The EEOC charge does not identify a single remark or any other sexually harassing

conduct towards the Plaintiff that would have put either the EEOC or the Defendants on notice that this type of claim served as the basis of her action. *See Lawton, 2002 U.S. Dist. LEXIS 13039, 2002 WL 1585582 at \*4-\*5* (dismissing hostile work environment claim where EEOC Charge alleged only failure to promote). Nor did the EEOC's investigation appear to address evidence relating to a hostile work environment - instead, it appears to have been limited to assessing the Plaintiff's disparate treatment and retaliation claims. *See* EEOC Explanation Letter ("The evidence obtained in the investigation of the [EEOC Charge] thus far does not support your allegation of sex and/or retaliation [\*20] discrimination. Respondent has met its burden of articulating a legitimate, non-discriminatory reason for its action ...."). Accordingly, the Plaintiff's hostile work environment claim must be dismissed. *See Zezulewicz, 290 F. Supp.2d at 591* ("If the plaintiff fails to exhaust administrative remedies her claims can be dismissed.") n10

n10 Even if the court were to reach the merits of the hostile work claim, the Plaintiff has failed to put forth sufficient evidence to state a *prima facie* case. *See Shramban v. Aetna, 262 F. Supp.2d 531, 535 (E.D. Pa. 2003)* (to establish a sexually hostile work environment, the plaintiff must prove: "(1) the employee suffered intentional discrimination because of [membership in a protected class]; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the Plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same [protected group] in the same position; and (5) the existence of respondeat superior liability.") (citing *Kunin v. Sears Roebuck & Co., 175 F.3d 289, 295 (3d Cir. 1999))*. The Plaintiff bald assertion that she was subjected to continuous "degrading, hostile comments," referencing two undated events - Janco's "telling [the plaintiff] to 'lick my fingers' after he ate a cinnamon roll during a meeting, and to speak softly in the office, "*see* Visnikar Decl. P 8 - even if taken as true, are not sufficiently "pervasive and regular" enough to constitute a hostile work environment. *See Shesko v. City of Coatesville, 292 F. Supp.2d 719, 725-26 (E.D. Pa. 2003)* (holding that "based on the totality of circumstances, [the following complained-of conduct, in addition to failure to promote claims] is not sufficiently pervasive and regular" to establish a claim for a sexually hostile work environment: "approximately three of Plaintiff's co-employees have referred to her as either a 'bitch' or 'cunt' behind her back; an officer told Plaintiff that he overheard a conversation in which [co-workers] stated that women police officers were 'glorified dispatchers' and didn't belong in police work; one of Plaintiff's fellow sergeants asked Plaintiff it was 'that time of the month' and called her an 'hysterical female'; [on occasion] Plaintiff found pornographic material in the visor of the patrol car she shares with other sergeants [and] in the women's restroom; [her superior] told Plaintiff a story about how he believed his son had sex with a woman who later became a police officer and lost a sexual harassment claim ... and told Plaintiff about a program he was listening to about sexually transmitted diseases among women in Plaintiff's age group"); *Cooper-Nicholas v. City of Chester, 1997 U.S. Dist. LEXIS 20810, 1997 WL 799443, \*3-4 (E.D. Pa. Dec. 30, 1997)* (holding that plaintiff's work environment was not severely hostile where plaintiff's supervisor consistently made disparaging, vulgar, and offensive comments at office gatherings including: telling an employee, on three occasions, a story about plaintiff's sorority sister who had tried to rape him in college; referring to another employee as "a CW," a "crotch-watcher," and that "she just has to have my body," and "look how she's watching me"; telling an employee that she was fornicating with her fiance, and that he have to would marry her; stating to an employee "whoremongers like you ... will never get things like this"; telling an employee that his secretary was "doing the wild thing" at lunch; commenting on an employee having a baby out of wedlock; and noting an employee who wore skirts with slits and calling her a "whoremonger")

[\*21]

Nor does the EEOC Charge fairly encompass the Plaintiff's claims relating to the 1999 Promotion Denial. Both the Date Box, and the narrative portions of the charge identify the harm as occurring in April 2001 - the date when Draper and Swansboro were promoted, and she was notified thereof. *See* EEOC Charge. At best, the mention of the 1999 Promotion Denial was provided as background to explain the factual basis of the Plaintiff's retaliation claim. Thus, the Plaintiff's claims based on the 1999 Promotion Denial must also be dismissed. *See Zezulewicz, 290 F. Supp.2d at 591.* n11

n11 These claims must also be dismissed as time-barred, as the EEOC complaint was filed long after the 180-day filing period required

2004 U.S. Dist. LEXIS 3645, *

under Title VII and the PHRA. *See West v. Philadelphia, 45 F.3d 744, 754 n.8 (3d Cir. 1995)* (noting that where plaintiff chooses to initially file charges with the EEOC that is later cross-filed with local agency, the applicable filing period is 180 days) (citing *42 U.S.C. Section 2000e-5(e)*). In this regard, the Plaintiff argues that the continuing violations doctrine preserves these claims. *See* Pl.'s Br. at 5-6. In supporting this position, the Plaintiff argues that the body of the charge "clearly recites an ongoing pattern and practice of discrimination ... [including] among other things, a violation of the Equal Pay Act, denial of promotion [the 1999 Promotion Denial], retaliation for filing a grievance, and although she was assigned 'Senior Geologist' in 1997 and required to train two less senior males, they were promoted in 2001 while she remains at the same pay grade she has held since 1993." *See id.* The Third Circuit Court has squarely rejected this argument. *See Rush v. Scott Specialty Gases, Inc., 113 F.3d 476, 483-84 (3d Cir. 1997)* (holding that district court erred by treating failure to promote claims as a continuing violation, despite Plaintiff having alleged ongoing disparate treatment and harassment, stating that failure to promote claims comprised discrete instances of discrimination and "were not susceptible to a continuing violations analysis"). District courts in Pennsylvania have also consistently reached the same conclusion. *See, e.g., Ryan v. Gen. Mach. Prods., 277 F. Supp.2d 585, 592-93 (E.D. Pa. 2003)* (holding that repeated promotion denials over the course of twelve years, and occuring outside the filing peried, were time-barred, stating, "if [the plaintiff] had wanted to challenge these alleged discriminatory failures to promote, she was required timely to file charges with the EEOC or the PHRC ... her failure to do so was fatal, and these stale claims cannot be resuscitated by the continuing violation theory"); *Kovoor v. Sch. Dist. of Philadelphia, 211 F. Supp.2d 614, 622 (E.D. Pa. 2002)* (holding, in case where plaintiff was annually denied promotions over the course of several years, that the failure to be considered for or receive a promotion was "a discrete claim" that triggered a duty to file a complaint under Title VII; therefore, "plaintiff [could not] rely on a series of failures to promote to extend the relevant statutory period, because each individual rejection ... was actionable under the civil rights laws"); *Allen v. Best Foods Baking Co., 2003 US Dist. LEXIS 24675, 2003 WL 22858351, *4 (E.D. Pa., Oct. 22, 2003)* (noting same). The 1999 Promotion Denial

triggered a duty file a charge with the EEOC and the Plaintiff simply failed to do so; therefore, these claims must be dismissed. *See Rush, 113 F.3d at 485* (stating "to allow a stale claim to proceed would be inconsistent with the administrative procedure established by Title VII which contemplates prompt filing of charges so that discrimination controversies may be resolved promptly") (citation omitted).

[*22]

The undersigned therefore finds that the Plaintiff's claims are restricted to those relating to the 2001 Failure to Promote - as they represent the only claims that are "fairly within the scope" of the EEOC Charge. The court's analysis may therefore be limited to whether the 2001 Failure to Promote constitutes discrimination based on gender and/or retaliation under Title VII and the PHRA. To the extent that there are other claims raised by the Plaintiff, they must be dismissed for failure to exhaust administrative remedies. n12

> n12 The undersigned need not reach the other potential issue of whether the claims against the individual Defendants are also barred based on the Plaintiff's failure to identify those parties in her EEOC Charge. *See, e.g, Catagnus v. Aramark Corp., 235 F. Supp.2d 413, 416 (E.D. Pa. 2002)* (stating "an action under Title VII and/or the PHRA may only be brought against a party previously named in a charge filed with the appropriate administrative agency") (citations omitted); *see also* EEOC Charge (naming only the DEP as the respondent). As the court concludes that the Plaintiff has failed to state a claim under Title VII and the PHRA, *see* discussion, *infra,* at 18-35, the issue is moot.

[*23]

**b. The Plaintiff Has Failed to State a Failure to Promote Claim under Title VII or the PHRA Based on Gender.**

Failure to promote claims brought under Title VII are analyzed under the familiar burden-shifting framework the Supreme Court articulated in *McDonnell Douglas Corp. v. Green, 411 US. 792, 36 L. Ed 2d 668, 93 S. Ct. 1817 (1973)* ("the McDonnell Douglas analysis"). *See, e.g., Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994).* n13 As the Third Circuit Court has summarized, the McDonnell Douglas analysis proceeds in three stages. *See Jones v. Sch. Dist. of Philadelphia, 198 F.3d 403, 410 (3d Cir. 1999).* First, "the plaintiff must establish a prima facie case of discrimination." *See*

*id.* Second, "if the plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *See id.* (citation and internal quotations omitted). Finally, "should the defendant carry this burden, the plaintiff then must have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant [*24] were not its true reasons, but were a pretext for discrimination." *See id.* (citation omitted).

> n13 Discrimination claims brought under the PHRA are analyzed under the same standards as their federal counterparts. *See Connors v. Chrysler Fin. Corp., 160 F.3d 971, 972 (3d Cir. 1998).* Thus, the court's determination of whether the Defendants' conduct - including the claims based on gender discrimination and retaliation - violated Title VII is dispositive of the Plaintiff's claims under PHRA as well. *See Zezulewicz v. Port Auth. of Allegheny County, 290 F. Supp.2d 583, 601 (W.D. Pa. 2003).*

The Third Circuit Court has further explained that "while the burden of production may shift, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *See id.* (citation and internal quotations omitted). In addition, the Third Circuit Court's experience "is that most cases [*25] turn on the third stage, *i.e.,* can the plaintiff establish pretext." *See id.*

Here, the Defendants argue that the Plaintiff has failed to establish a *prima facie* case. *See generally* Defs.' Br. at 8-16. In the alternative - and to the extent the court concludes that a *prima facie* case has been established - they argue that they have presented a legitimate, non-discriminatory reason for the Plaintiff's rejection. *See id.* They further maintain that the Plaintiff has failed to come forth with evidence proving that their reason was a pretext. *See id.* For the reasons stated below, the undersigned agrees with the Defendants in all regards.

To establish a *prima facie* case, the plaintiff must show: (1) that she belongs to a protected class; (2) that she sought and was qualified for the promotion; (3) that despite her qualifications she was rejected; and (4) the failure to promote occurred under circumstances "that give rise to an inference of unlawful discrimination" - *i.e.,* a "non-member of the protected class was treated more favorably." *See, e.g., Jones, 198 F.3d at 410-11; Young v. Pennsauken Township Sch. Dist., 47 Fed.Appx.*

160, 161 [*26] *(3d Cir. Sept. 27, 2002); Shesko v. City of Coatesville, 292 F. Supp. 2d 719, 724 (E.D. Pa. 2003).*

In its two-fold challenge to the Plaintiff's *prima facie* case, the Defendants argue: (1) that the Plaintiff was not qualified for the position of "Licensed Professional Geologist" as she did have a geologist's licence; and (2) that the Plaintiff failed to point out similarly situated males - that is, unlicenced male geologists - who received more favorable treatment. *See* Defs.' Br. at 12-16. The undersigned need not reach the second argument, as the court finds that the Plaintiff does not possess the objective qualifications required for the position of Licensed Professional Geologist. n14

> n14 Further, the Defendants' arguments relating to whether similarly situated individuals from non-protected classes received more favorable treatment is premature in the *prima facie* stage of the McDonnell Douglas analysis, and is better addressed at the pretext stage. *See Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 646* (noting that the elements of *prima facie* case are not intended to "onerous," and reserving the similarly situated analysis for the pretext stage, where "the factual inquiry into the alleged discriminatory motives of the employer has risen to a new level of specificity").

[*27]

The Plaintiff does not dispute that the position that she sought required a license, and that she did not have one. *See* Visnikar Dep. at 76 ("Q: And that would be a licensed professional geologist position that you're seeking? A: Right"); *see id.* at 57 ("Q: And do you have a license? A: No."). Instead, the Plaintiff contends that, notwithstanding the licensing requirement, she was as qualified if not more qualified than her peers who were promoted. *See* Pl.'s Br. at 5-8 (noting, among other things: that the Plaintiff was more senior than the co-workers who were promoted; that she had trained these co-workers; and that she received exceptional reviews for the relevant years).

The Third Circuit Court has made clear, however, that within the context of assessing a *prima facie* case, a district court must view a plaintiff's "qualifications" based on objective criteria. *See Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313, 320 (3d Cir. 2000)* (stating "we have held that ... objective job qualifications should be considered in evaluating a plaintiff's prima facie case ....") (citation omitted); *Sempier v. Johnson & Higgins, 45 F.3d 724, 729 (3d Cir. 1995)* [*28] (noting "we determine a plaintiff's qualifications from the

purposes of proving a prima facie case by an objective standard.") (citation omitted). Thus, the Plaintiff's own subjective opinion that she was qualified for a given position - including the assertions listed above -- is immaterial. *See Kepple v GPU Inc, 2 F. Supp 2d 730, 741 (W.D. Pa 1998)* (stating "the employer is entitled to establish the job requirements and the plaintiff must offer more than his own opinion that he is qualified") (citing *In re Carnegie Ctr Assocs, 129 F 3d 290, 293 (3d Cir 1997))*. As the unrefuted evidence demonstrates that the Plaintiff simply does [not] meet the objective criterion required for the position of Licensed Professional Geologist, the undersigned concludes that the Plaintiff is not "qualified" and therefore has failed to establish a *prima facie* case.

Nonetheless, this is not the sole basis for granting summary judgment in this case. The undersigned recognizes there may be certain instances where an employer's creation of new qualifications - such as the addition of the licensing requirement pursuant to the 2001 Reclassification - could be [*29] "self-serving." *See Chu v Samuel Geltman & Co, 1993 U.S. Dist. LEXIS 17473, 1993 WL 492747, *4 (E.D. Pa Nov 17, 1993)* (concluding that although plaintiff did not have valid Pennsylvania real estate license required for the position and was thus not qualified, it was proper to evaluate defendant's non-discriminatory reason and pretext plaintiff in the event that the licensing requirement was a "sham"). The court will, therefore, analyze the Defendants' proffered reason and the Plaintiff's evidence of pretext.

The Defendants have met their burden of articulating a legitimate reason - again, that the Plaintiff was not qualified for the position due to the fact that she did not have a license, *see Defs' Br. at 13* -- therefore the onus rebounds to the Plaintiff, who must now show by a preponderance of the evidence that the DEP's explanation was pretextual. *See Fuentes, 32 F 3d at 763* (stating "once the employer answers its relatively light burden by articulating a legitimate reason for the unfavorable employment decision, the burden of production rebounds to the plaintiff, who must now show by a preponderance of the evidence that the employer's explanation is pretextual [*30] (thus meeting the plaintiff's burden of persuasion)").

To defeat summary judgment at this stage, the Plaintiff must either: (1) point to some evidence that discredits the proffered reasons, either circumstantially or directly; or (2) adduce evidence, whether circumstantial or direct, that discrimination was more likely than not a motivation or determinative cause of the adverse employment action. *See id at 764*. For the reasons stated below, the undersigned concludes that the Plaintiff has failed to meet its burden.

To discredit the Defendants' proffered reason, "a plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether the discriminatory animus motivated the employer, not whether the employer is wise, shrew, prudent, or competent." *See Keller v. Orix Credit Alliance, Inc, 130 F 3d 1101, 1109 (3d Cir 1996)* (citations omitted). Instead, she must cast sufficient doubt upon the employer's reason by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered reason for its action that a reasonable factfinder [*31] could rationally find them unworthy of credence." *See Jones, 198 F 3d at 413* (citation omitted). As the Third Circuit Court has summarized: "federal courts are not arbitral boards ruling on the strength of [the] 'cause' for [the adverse employment action]. The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is discrimination." *See Keller, 130 F 3d at 1109* (citation omitted). Moreover, "the plaintiff must show, not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason." *See id*

In this regard, the Plaintiff attempts to discredit the licensing requirement by alleging that there "is some question" as to whether a Pennsylvania law requires that geologists be licensed. *See Pl.'s Br. at 7 n.2*. The Plaintiff has attached an exhibit identified as the Commonwealth of Pennsylvania's *"Engineer, Land Surveyor and Geologist Registration Law*, Act 367" issued by the "State Registration Board for Professional Engineers, Land Surveyors, and Geologists." *See* Engineer, Land Surveyor and Geologist [*32] Registration Law, Act 367 (attached as Ex I to Pl.'s Exs). The Plaintiff contends that under Section 5 of these provisions, oil and gas geologists are exempt from licensure and registration requirements. *See Pl.'s Br at 7 n.2*.

Although that very well may be the case, it remains unrefuted that pursuant to the 2001 Reclassification, it was the DEP's policy that a license was required to assume the position that the Plaintiff sought. *See* discussion, *supra*, at 7-8, 20-22. The fact that such a requirement was not mandated by law is simply not sufficient to create the inference that the licensing requirement was "superficial," "irrational," or otherwise "unworthy of credence." *See Chu, 1993 U.S. Dist LEXIS 17473, 1993 WL 492747 at *5* (holding that the fact that Pennsylvania law did not require a real estate license did not demonstrate pretext where "it was [defendant employer's] policy that full-time rental managers [the position the plaintiff sought] should have a real estate license"). Nor has the Plaintiff cited authority suggesting that the DEP was not authorized to impose qualification

requirements above and beyond those required under the relevant law. As stated above, **[*33]** the court is forbidden from assessing the propriety of the DEP's decision to add a licensing requirement - the question being only whether the Defendants' actions were motivated by discriminatory animus. *See, e.g.*, cases discussed, *supra*, at 23-24; *See also Lewis v. State of Del Dep't Of Pub. Instruction, 948 F. Supp. 352 (D. Del. 1996)* (stating "an employer is free to ruin his business with medieval practices, so long as those practices are not motivated by discriminatory animus"). The undersigned concludes that the Plaintiff has failed to meet this burden.

The court may therefore limit its analysis to whether the Plaintiff has adduced sufficient evidence from which a factfinder could reasonably conclude that discrimination was more likely than not a motivation or determinative cause of the adverse employment action. *See Fuentes, 32 F.3d at 765.* Under this analysis, the Plaintiff may show, for example, that "the employer in the past had subjected him to unlawful discriminatory treatment, that the employer treated other, similarly situated persons not of his protected class more favorably, or that the employer has discriminated against **[*34]** other members of his protected class or other protected categories of persons." *See id.*

The Plaintiff's primary argument is that Draper and Swansboro, the two less senior co-workers whom she trained were promoted in 2001; whereas she remained at the same level despite receiving exceptional reviews, and being named as "Senior Geologist." *See Pl.'s Br.* at 5-6. She maintains that the promotion of these allegedly similarly-situated males clearly demonstrates pretext. *See id.* at 7, n15. The Defendants, in turn, contend that the comparison to Draper and Swansboro is unpersuasive, as both Draper and Swansboro are both licensed geologists, and therefore not similarly situated. The undersigned agrees.

n15 The Defendants' briefing also identifies Susan Banks as a third comparator; however, the Plaintiff's opposition brief does not rely upon that comparison. *See Pl.'s Br.* at 5-8. As the Plaintiff bears her burden of showing evidence of pretext at this stage, *see Simpson, 142 F.3d at 645* (stating "plaintiff has the burden of demonstrating that similarly situated persons were treated differently"), the court will follow the Plaintiff's lead and not address that comparison. Nor does the undersigned believe that such a comparison would affect the court's analysis.

**[*35]**

The Third Circuit Court has stated "in determining whether similarly situated nonmembers of a protected class were treated more favorably that a member of the protected class, the focus is on the particular criteria or qualifications identified by the employer as the reason for the adverse action." *See Simpson, 142 F.3d at 647* (citation omitted; emphasis added). Moreover, "the plaintiff must point to evidence from which a factfinder could reasonable infer ... that the employer did not actually rely upon the stated criterion." *See id.* (citation omitted).

Here, to meet this standard, the Plaintiff would have to establish that unlicensed male geologists - licensing being the criterion articulated by the Defendants as its nondiscriminatory reason - received more favorable treatment. The Plaintiff has failed to do so. In fact, the comparison to Draper and Swansboro negate, rather than advance, the Plaintiff's position. The fact that licensed geologists were promoted, and unlicensed geologists were not, serves to confirm that the Defendants decision did, in fact rely "upon the stated criterion." *See id.*

The Plaintiff's recitation of other qualifications **[*36]** have no bearing on the court's analysis, as the Defendants have identified licensing as the sole basis for its decision. *See id.* (stating "the employee's positive performance in another category is not ... relevant, [nor] is the employee's judgment as to the importance of the stated criterion.") (citations omitted); *see also Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 528-29 (3d Cir. 1993)* (finding that plaintiff's abilities in areas other than legal analysis, the reason identified for not promoting plaintiff, was not relevant in determining pretext). Thus, the Plaintiff's positive reviews, assignment to a senior position, and training skills, though admirable, cannot serve as evidence of pretext in this case. *See Simpson, 142 F.3d at 647* ("the court does not subjectively weigh factors its considers important.").

In addition, recognizing the Third Circuit Court's admonition to district courts that "the evidence cannot be viewed in a vacuum," *see id. at 646-47* (citations omitted), the undersigned finds that a global view of the record confirms the absence of pretext.

The Defendants have submitted a document **[*37]** entitled "Professional Geologist Implementation," *see* Implementation Chart, which, according to the Defendants, illustrates the different reclassifications for various geologists working for the Commonwealth of Pennsylvania pursuant to the 2001 Reclassification. *See* Defs.' Br. at 13-14. n16 The undersigned finds it significant that, while the Plaintiff has addressed two male co-workers she believes were treated more favorably, the Plaintiff's Brief does not identify or compare the Plaintiff to any of the approximately 150

other employees whose positions were reclassified. *See* Implementation Chart. In fact, a cursory inspection of this document reveals that there were males who were reclassified as "Geologic Specialist," *see id* at 2-3 (chart entitled "Lateral Reclassification to Geologic Specialist"), as well as females who were promoted to "Licensed Professional Geologist," *see id* at 6 (chart entitled "Promotion to Licensed Professional Geologist").

> n16 The Plaintiff does not challenge the authenticity of the document, nor does she challenge its accuracy. The undersigned therefore concludes that it may properly consider it.

[*38]

The Third Circuit Court has noted under similar circumstances that a plaintiff "cannot pick and choose a person she believes is a valid comparator who was allegedly treated more favorably, and completely ignore a significant group of [potential] comparators who were treated equally or less favorably than she." *See Simpson, 142 F.3d at 646-47.* Accordingly, the undersigned finds that the Plaintiff has failed to meet its burden of showing pretext based on the comparison to only a select few of the her co-workers, while neglecting the vast majority.

The Plaintiff's other argument relates to the events following the 1999 Promotion Denial, and leading up to the 2001 Failure to Promote. The Plaintiff contends that an inference of discrimination can be drawn from the fact that after she was denied a promotion in 1999, Flaherty deliberately concealed information, that if known, would have allowed the Plaintiff to obtain a license and thus be qualified for the promotion in 2001. *See* Pl.'s Br. at 6-7 (arguing that, following the 1999 Promotion Denial, "what [Flaherty] failed to mention was that he knew: 1) that the 2001 Reclassification would eventually make 'licensure' [*39] mandatory ...; 2) that Melissa was not 'licensed'; 3) that she would not have the opportunity to be 'grandfathered in' as the 'grandfathering in' procedure would no longer be available; and 4) therefore, she would not be promoted after the reclassifications because she was not 'licensed.'") (citation omitted).

This argument fails on at least two levels. First, the Plaintiff's theory finds no support in the portions of the record she identifies as relevant. *See* Pl.'s Br. at 7 (citing Flaherty, Dep. at 33, 41-43). Nor can she rely solely on her own declaration to establish these facts. *See id* (citing *Visnikar Decl.), Longstreet v. Holy Spirit Hospital, 67 Fed.Appx. 123, 126 (3d Cir. May 22, 2003)* ("unsupported assertions, speculation, or conclusory allegations" are insufficient to avoid summary judgment) (citation omitted). Second, the Defendants have

submitted evidence demonstrating that the 2001 Reclassification was the product of negotiations between the Commonwealth of Pennsylvania and the Plaintiff's union. *See* Reclassification Letter. The Plaintiff has not identified - nor is the court aware of - any authority imposing an affirmative duty on an employer [*40] to speculate as to what qualifications these entities may find necessary in regard to a prospective reclassification, or to ensure that each employee who falls within a protected class will meet that those criteria. *See Ezold, 983 F.2d at 531* ("Title VII, however, does not demand that an employer give preferential treatment to ... women.") (citation omitted). At some point, the impetus must fall upon the employee to obtain the necessary credentials - even if they are obtained by the perfunctory gesture of filing an application with the state. n17

> n17 The Plaintiff has not offered any explanation as to why she never submitted the necessary paperwork under the grandfathering system to obtain a geologist license at any point between 1998, when she ostensibly would have had the necessary five years of experience under the system, and 2001 Reclassification.

Having carefully considered the parties' arguments and submissions, the undersigned concludes that the Plaintiff has failed to meet its [*41] burden of showing that the Defendants' proffered reason is pretext. For all the reasons stated above, the Defendants' Motion should be granted.

### c. The Plaintiff Has Failed to State a Failure to Promote Claim under Title VII or the PHRA Based on Retaliation.

Retaliation claims under Title VII involve the same *McDonnell Douglas* burden-shifting analysis as outlined above. *See* discussion, *supra,* at 18-19; *see also Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 187 (3d Cir. 2003).* To establish a *prima facie* case of retaliation, the plaintiff must show: 1) she engaged in a protected activity; 2) the employer took an adverse employment action either after or contemporaneous with the employee's protected activity; and 3) a causal connection between the employee's protected activity and the employer's adverse employment action. *See Shellenberger, 318 F.3d at 187* (citing *Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997)*)

Here, the Plaintiff has failed to proffer sufficient evidence to establish a *prima facie* case - more specifically, the Plaintiff has failed to demonstrate a causal link [*42] between the filing of the 1999 Greivance and the 2001 Failure to Promote. To establish

2004 U.S. Dist. LEXIS 3645, *

such a link, the Plaintiff must show either temporal proximity between the events or some other evidence suggesting causation, such as an ongoing pattern of antagonism. *See, e.g., Hartman v. Sterling, 2003 U.S. Dist. LEXIS 18140, 2003 WL 22358548, *10 (E.D. Pa. Sept. 10, 2003)* (after reviewing Third Circuit case law, stating "unless the temporal proximity is 'unusually suggestive,' it, taken alone, is insufficient to establish the necessary connection . . . [Instead,] timing plus other evidence [such as a pattern of antagonism] is the appropriate test"); *see also Robinson v. City of Pittsburgh, 120 F.3d 1286, 1302 (3d Cir. 1997)* ("The mere fact that [an] adverse employment action occurs after a complaint will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two events") (citation omitted).

Here, over two years elapsed between the two events. *See Krouse, 126 F.3d 503-04* (concluding that nineteen months between the alleged retaliation and the protected activity was too great a passage of time to draw an [*43] inference of causation without other evidence of causation). Nor does the record demonstrate an ongoing pattern of antagonism towards the Plaintiff based on the retaliatory animus. The Plaintiff's unsupported allegations that she was subjected to "degrading, hostile comments" are do not persuade the court otherwise. *See Longstreet v. Holy Spirit Hospital, 67 Fed.Appx. 123, 126 (3d Cir. May 22, 2003)* ("unsupported assertions, speculation, or conclusory allegations" are insufficient to withstand summary judgment) (citation omitted). When viewed as a whole, the record simply does not support a finding of causation. *See, e.g., Woodson v. Scott Paper, 109 F.3d 913, 920 (3d Cir. 1997)* (stating that in regard to whether evidence is sufficient to establish causation, district courts must make determinations "based on the whole picture") (citation omitted). Thus, the record fails to demonstrate the elements of a *prima facie* case of retaliation.

Even if the court were to conclude that a *prima facie* case had been established, the Plaintiff's claims nevertheless must fail based on the second and third prong of the *McDonnell Douglas* analysis. [*44] For the same reasons identified in the previous analysis regarding the Plaintiff's gender discrimination claims, *see* discussion, *supra*, at 22-34, which rest on the same adverse employment action, the court finds that the Plaintiff has failed to show that the licensing requirement was a mere pretext for retaliatory animus. Thus, the Plaintiff's retaliation claims must be dismissed.

For all the reasons stated above, the Plaintiff has failed to state a claim under Title VII and the PHRA, based on either gender and/or retaliation; accordingly,

summary judgment should be granted in favor of the Defendants. n18

n18 This conclusion resolves the Plaintiff's aiding and abetting claims under the PHRA as well. As the Plaintiff has failed to state a claim under Title VII or the PHRA, these additional claims must also be dismissed. *See, e.g., Varela v. Philadelphia Neighborhood Hous. Servs., Inc., 68 F. Supp.2d 575, 584 (E.D. Pa. 1999)* (holding that where the court granted summary judgment on the plaintiff's claim of unlawful discrimination against state agency, the plaintiff's aiding and abetting claim against an individual defendant under the PHRA also failed); *see also, e.g., Atkinson v. Lafayette College, 2003 U.S. Dist. LEXIS 13951, 2003 WL 21956416, * 10 (E.D. Pa., Jul 24, 2003)* (dismissing aiding and abetting claims against individual defendant where court found defendant college/employer had not violated PHRA).

[*45]

**2. The Plaintiff Has Failed to State a Claim Under the EPA.**

Before reaching the merits of the Plaintiff's cause of action under the EPA, the Defendants put forth extensive arguments maintaining that EPA claims brought against a governmental agency, such as the DEP, are barred by the states' sovereign immunity under the *Eleventh Amendment. See Defs.' Br.* at 18-22. These arguments border on frivolous. The Third Circuit Court has made clear that states are not immune from claims brought under the disparate wage provisions of the EPA. *See Arnold v. BlaST Intermediate Unit 17, 843 F.2d 122, 126 (3d Cir. 1988)* ("Further, it is well established that Congress intended to abrogate state immunity from suit in applying the [EPA's] provision[s] to state or local entities in their role as employers.") (citations omitted).

The Third Circuit Court's approach represents that majority view, and, in fact, is consistent with the decisions from every circuit that has ruled on the issue. *See, e.g., Siler-Khodr v. Univ. of Tex. Health Sci. Ctr. San Antonio, 261 F.3d 542, 550-51 (5th Cir. 2001)* (holding that a state was not entitled to *Eleventh [*46] Amendment* immunity for claims brought under the EPA); *Cherry v. Univ. of Wis. Sys. Bd. of Regents, 265 F.3d 541, 553 (7th Cir. 2001)* (holding that the *Eleventh Amendment* immunity did not bar plaintiff's gender-based disparate pay claims against state employers brought under the EPA); *Kovacevich v. Kent State Univ., 224 F.3d 806, 820-21 (6th Cir. 2000)* (holding that

"Congress's abrogation of state immunity pursuant to the EPA is ... proper, and [the state defendants'] alleged violation of the EPA is not shielded by the *Eleventh Amendment*"); *Hundertmark v. Florida DOT, 205 F.3d 1272, 1274 (11th Cir. 2000)* (affirming district court's ruling that "Congress had amended the Equal Pay Act and abrogated the States' sovereign immunity pursuant to *[Section] 5 of the Fourteenth Amendment* and therefore the *Eleventh Amendment* did not bar an action against the State in Federal Court"); *O'Sullivan v. Minn., 191 F.3d 965, 967-68 (8th Cir. 1999)* (stating "we join every court of appeals that has decided the issue and hold Congress properly abrogated the states' sovereign immunity when it enacted the EPA," and noting the [*47] contrast to lawsuits brought under the other provisions of the *Fair Labor Standard Act*, where sovereign immunity applies) (citations omitted). The undersigned will therefore reach the merits of the Plaintiff's claims.

Claims brought under the disparate wage provisions of the EPA follow a two-step burden-shifting paradigm. *See, e.g., Stanziale v. Jargowsky, 200 F.3d 101, 107 (3d Cir. 2000)*; *Ryan v. Gen. Mach. Prods., 277 F. Supp.2d 585, 596 (E.D. Pa. 2003)*; *Velez v. QVC, Inc., 227 F. Supp.2d 384, 420 (E.D. Pa. 2002)*. The plaintiff must first establish a *prima facie* case by demonstrating that employees of the opposite sex were paid differently for performing "equal work" - that is, work of "substantially equal skill, effort and responsibility, under similar working conditions." *See Stanziale, 200 F.3d at 107* (citation omitted). Once met, the burden of persuasion then shifts to the employer to demonstrate the applicability of one of the four affirmative defenses available under the EPA: (1) a bona fide seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; [*48] or (4) a differential based on any factor other than sex. *See id.* (citations omitted). In order to prevail at the summary judgment stage, the employer must, prove at least one affirmative defense "so clearly that no rational jury could find to the contrary." *See id. at 108.* In addition, the defendant employer must produce sufficient evidence from which a reasonable factfinder could conclude that the proffered reasons not only could explain, but did in fact motivate, the wage disparity. *See id. at 107-08* (citations omitted).

The facts underpinning the Plaintiff's EPA claims are virtually identical to those forming the basis of her Title VII action. *Compare* Pl.'s Br. at 5-8 (discussing Title VII claims) *with* Pl.'s Br. at 4 (discussing EPA claims). Moreover, the Plaintiff alleges that two of her male co-workers, Draper and Swansboro - who performed "equal work" at the DEP - were moved to paygrade 8 pursuant to the 2001 Reclassification, while she remains at paygrade 7. n19 According to the

Plaintiff's submissions, the difference between these two paygrades amounts to $ 4147.00 annually. *See* Chart (attached as Ex. F4 to Pl.'s Ex.) at 2. [*49]

n19 While the court has concluded that the Plaintiff's allegations relating to the disparity in starting salaries cannot be considered, *see* discussion, *supra*, at 9 n.8, these allegations would nonetheless be unavailing were the court to merits of that claim. As the court aptly explained in *Bielawski v. AMI, Inc. 870 F. Supp. 771, 776 (N.D. Ohio 1994)*, a female plaintiff cannot base an EPA claim on the comparison to a higher-paid male employee who was hired *subsequent* to commencement of her employment. It reasoned:

If a plaintiff could make out a prima facie case under the Act whenever her employer paid current employees more than prior employees of the opposite sex, the Act would effectively deter pay raises after the prior employee left the employer ... Given that it is to be expected that inflationary pressures will cause wages to rise over time, such a reading of the statute is untenable ... This position is bolstered by the fact that $ 206(d)(1)$ is written in the present tense. The plain meaning of the statute is that it applies to cases in which the employer "pays" employees of one gender less than contemporary employees of the opposite sex performing the same job.

*See id.* (emphasis added). The undersigned finds this approach to be well reasoned and thus adopts it. Accordingly, as Draper and Swanboro were hired in the year (1993) following the year the Plaintiff was hired (1992), the Plaintiff cannot establish a *prima facie* case based on this evidence alone.

[*50]

As a threshold matter, the undersigned recognizes that the standards in establishing a *prima facie* under the EPA and Title VII are generally read harmoniously. *See Ryan, 277 F. Supp.2d at 595 n.7.* Accordingly, the undersigned has serious doubts, for the reasons identified

in its Title VII analysis, *see* discussion, *supra,* at 20-22, as to whether a *prima facie* has been established under the EPA - namely, whether the Plaintiff has drawn an appropriate comparison to Draper and Swansboro in light of the fact that those employees have geologist's licenses. Nonetheless, as the undersigned concludes that the Defendants have established that the pay differential was based on a "factor other than sex," the court need not dwell on this issue and will assume that a *prima facie* case has been established.

The Defendants argue that the salaries of the Plaintiff and her co-workers were the result of collective bargaining between the Commonwealth of Pennsylvania and the Plaintiff's union. *See* Defs.' Br. at 5-8; *see also* Reclassification Letter. As such, disparity in wages between the Plaintiff and her co-workers can only be attributed to the collective [*51] bargaining process, which constitutes a "factor other than sex." The case law confirms this theory, and the Plaintiff has failed to identify a single case to the contrary. *See id. Lang v. Kohl's Food Stores, Inc., 217 F.3d 919, 925 (7th Cir. 2000)* (affirming district court's granting summary judgment on plaintiff's EPA claims where "classifications and wages are the result of collective bargaining ... labor agreements frequently apply to all of an employer's sites, and these agreements are 'factor[s] other than sex'"); *Lissak v. U.S., 49 Fed Cl 281, 286 (Fed. Cl. 2001)* (granting summary judgment in favor of defendant on EPA claims, stating "defendant's system of differing pay and classification rules, which resulted from a series of collective bargaining agreements, is a bona-fide, gender-neutral, acceptable personnel policy that constitutes a factor other than sex under the Act[,]" and that "the pay disparity between the plaintiffs and their male co-workers resulted from a personnel policy in which gender played no part"); *Cherrey v. Thompson Steel Co., 805 F. Supp. 1257, (D. Md. 1992)* (granting defendant's motion for judgment [*52] on partial findings in regard to plaintiff's EPA claims, stating "since the Equal Pay Act permits employers to defend against charges base on a *bona fide* use of factors other than sex, the collective bargaining agreement negotiated with the union defeats this claim ...") (citation omitted, emphasis in original). n20 The Defendants have met their burden of showing that the wage disparity was based on a factor other than sex; accordingly, the Defendants' Motion should be granted in the regard to the Plaintiff's EPA claims.

n20 The Third Circuit Court has yet to address this theory; nonetheless, the undersigned finds the reasoning of these decisions persuasive, and chooses to follow them.

**3. The Plaintiff Has Failed to State a Claim Under *Section 1983*.**

It is well established that the *Eleventh Amendment* prohibits a plaintiff from bringing a *Section 1983* action against a state or state agency. *See, e.g., Dennison v. Pa Dep't of Corr., 268 F. Supp. 2d 387, 396 (M.D. Pa. 2003)* [*53] (holding the Pennsylvania Department of Corrections was immune from *Section 1983* suit, stating "[the] *Eleventh Amendment* bars suit[s] in federal court against states and their subordinate agencies.") (citation omitted); *Zelinski v. Pa State Police, 282 F. Supp. 2d 251, 264 (M.D. Pa. 2003)* (granting summary judgment in favor of Commonwealth of Pennsylvania and state police on *Section 1983* claims, stating "*[Section] 1983* does not override State's *Eleventh Amendment* immunity") (citation omitted); *Taylor v. County of Berks, 2003 US Dist LEXIS 23699, 2003 WL 22078455, *1 (E.D. Pa Sept 2, 2003)* ("It is clear that suits brought under *[Section] 1983* against [state] agencies are barred by the *Eleventh Amendment*") (citations omitted). The DEP is a state agency, and therefore enjoys such immunity. *See Khodara Envtl., Inc., ex rel Eagle Envtl., L.P. v. Burch, 245 F. Supp. 2d 695, 710 (W.D. Pa 2002)* (concluding that plaintiff was barred under *Eleventh Amendment* from pursuing case against the DEP) (citation omitted). Thus, the Plaintiff's *Section 1983* claims, as they relates to the DEP, must be dismissed. n21

n21 The claim must also be dismissed on the basis that the DEP is not a "person" as defined by *Section 1983. See, e.g., Zelinski, 282 F. Supp 2d at 264 n 14* (holding that a state agency -- the Pennsylvania State Police -- did not constitute a person for the purposes of *Section 1983*).

[*54]

The *Eleventh Amendment* also protects state officials acting in their official capacities. *See, e.g., Dennison, 268 F. Supp 2d at 396* (granting summary judgment in favor of officials in *Section 1983* action, stating "official capacity suits are nothing more than suits against an official's employing agency") (citation omitted); *see also, e.g., Gerber v. Sweeney, 2003 US Dist LEXIS 3481, 2003 WL 1090187, * 3 (E.D. Pa March 7, 2003)* (holding individual official could not be sued for damages under *Section 1983*, stating "it is well established that state officials sued in their official capacities are not subject to damages liability under *Section 1983*") (citation omitted); n22 Accordingly, to the extent that the *Section 1983* are brought against the individual Defendants in their official capacity, they must also be dismissed.

n22 Nor are they "persons" under *Section 1983. See Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 697 (3d Cir. 1996)* ("The Supreme Court [has] held that state officials acting in their official capacities are not 'persons' under *[Section] 1983.*") (citation omitted)

[*55]

The Plaintiff contends, however, that the *Eleventh Amendment* does not preclude *Section 1983* claims against state officials if the suit is brought against them in their individual, as opposed to official, capacities. *See* Pl.'s Br. at 9. While counsel has correctly stated the law, *see Helfrich v. Pa. Dep't of Military Affairs, 660 F.2d 88, 90 (3d Cir. 1981)* and *Zelinski, 282 F. Supp.2d at 264 n.15,* the Plaintiff's Complaint is far from clear as to the capacity in which the individual Defendants are being sued. *See generally* Compl., Caption & Count II. Nonetheless, based on the facts that the Plaintiff has sought compensatory and punitive damages and that the Defendants have raised the issue of qualified immunity -- and resolving all doubts in favor of the Plaintiff -- the court concludes that the *Eleventh Amendment* does not foreclose the Plaintiff's individual-capacity claims against the individual Defendants. *See Gregory v. Chehi, 843 F.2d 111, 119-20 (3d Cir. 1988)* (assuming that individuals defendants were sued in their individual capacities where Plaintiff sought punitive as well as compensatory damages against [*56] them). *Floyd v. Dugal, 2003 U.S. Dist. LEXIS 24025, 2003 WL 23101802, *4 (E.D. Pa. Dec. 16, 2003)* (holding that *Eleventh Amendment* did not bar *Section 1983* action against individual defendants where, among other things, the complaint sought compensatory and punitive damages and defendants raised issue of qualified immunity).

*Section 1983* imposes civil liability "upon any person who, under the color of state law, deprives another person of any rights, priviliges, or immunities secured by the Constitution or law of the United States." *See S.G. ex rel A.G. v. Savreville Bd. of Educ., 333 F.3d 417, 420 (3d Cir. 2003)* (citing *42 U.S.C. Section 1983*). Thus, to bring a claim under *Section 1983*, a plaintiff must show: (1) "a violation of a right secured by the Constitution and law of the United States"; and (2) "that the defendant deprived him of these rights under the color of [state law]." *See Warner v. Montgomery Twp., 2002 U.S. Dist. LEXIS 13257, 2002 WL 162774, *17 (E.D. Pa. July 22, 2002)* (citations to district courts in Pennsylvania and United States Supreme Court omitted)

In order to impose personal liability upon a state official in his individual capacity, [*57] a plaintiff is further required to show each defendant's "personal involvement" in regard to the alleged deprivation. *See Douris v. County of Bucks, 2001 U.S. Dist. LEXIS 9282, 2001 WL 767579, *6 (E.D. Pa. July 3, 2001).* That is, a plaintiff must "allege, and be prepared to prove, that [a given] defendant has been personally and directly involved in the alleged wrongful conduct or alternatively that the alleged wrongful conduct occurred with the defendants' actual knowledge and acquiescence." *See id* (citing, *inter alia, Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)); see also Jones v. Gardels, 2003 U.S. Dist. LEXIS 23939, 2003 WL 22939477, *3 (D. Del. Mar. 27, 2003)* (a plaintiff must establish "evidence of personal involvement, knowing acquiescence or participation of each Defendant") (citing *Pennsylvania v. Porter, 659 F.2d 306, 336 (3d Cir. 1981))* Moreover, as the Third Circuit Court has stated, the "official's misconduct cannot be merely a failure to act... such officials must have played an affirmative role in the deprivation of the plaintiff's rights, *i.e.,* there must be a causal link between the action of the responsible officials [*58] named and the challenged misconduct." *See Porter, 659 F.2d 306 at 336.*

Here, the Plaintiff contends that "the Defendants [including Erb, Flaherty, and Janco]... acting under the color of state law, subjected Plaintiff to continuous and ongoing, unlawful disparate treatment, harassment, a hostile work environment, discrimination and retaliation based on gender in violation of her civil rights." *See* Pl.'s Br. at 9. "At very least, the individual defendants, all of them supervisors and managers of the Plaintiff, should not escape liability for their unlawful actions." *See id.* Plaintiff's counsel goes no further in articulating the specific "affirmative role" on the part of each of the individual Defendants that might establish the necessary "causal link" to the Plaintiff's alleged discriminatory treatment -- nor does the Complaint itself, *see* Count II. In this context, a plaintiff "cannot rely only on unsupported assertions, conclusory allegations, or mere suspicions in order to survive summary judgment". *See Warner, 2002 U.S. Dist. LEXIS 13257, 2002 WL 162774, *17* (citation omitted) n23 Accordingly, the undersigned finds that the Plaintiff has failed to meet its burden in [*59] establishing a claim against the individual Defendants under *Section 1983;* therefore, the claims should be dismissed. *Accord, e.g., Andrew P. v. Bucks County Intermediate Unit, 2001 U.S. Dist. LEXIS 24193, 2001 WL 1716993, *5* (dismissing claims against the individual defendants in their individual capacities where plaintiff failed to assert "how the individual defendants were directly involved in the alleged violations, or that the individual defendants had actual knowledge of the violations, yet acquiesced in them"); *Burke v. Dark, 2001 U.S. Dist. LEXIS 2463, 2001 WL 238518 (E.D. Pa. Mar. 8, 2001)* (holding same); *Cropps v. Chester County*

*Prison, 2001 U.S Dist LEXIS 357, 2001 WL 45762 (E D Pa Jan. 19, 2001)* (holding same).

> n23 Nor can the sole fact that the individual Defendants are "managers and supervisors" form the basis of liability. *See Rode, 845 F 2d at 1207* ("Liability [under *Section 1983*] cannot be predicated solely on the operation of *respondeat superior* ").

Nonetheless, the Plaintiff should not [*60] be punished for the deficiencies in her counsel's pleadings and briefing. Moreover, an independent review of the record does cast some doubts as to the complete lack of participation by certain individual Defendants - particularly with regard to Flaherty and Janco. n24 The undersigned will therefore engage in a brief independent analysis of those potential claims.

> n24 The Plaintiff has simply not identified any "affirmative role" played by Erb in the alleged violations, and the undersigned will not revisit those claims below. For the reasons already stated, the individual liability claims against Erb must be dismissed

Borrowing from the Plaintiff's allegations raised in the context of her Title VII and PHRA claims, as well as the Plaintiff's exhibits, the court can identify the following relevant, personal conduct on the parts of Flaherty and Janco.

As to Flaherty, it appears that: (1) he played some role in the 1999 Promotion Denial, as he was responsible for filing the management initiated-reclassification [*61] documents necessary to promote the Plaintiff to the next paygrade; and (2) he filed the necessary documents for Swansboro and Draper pursuant to the 2001 Reclassification. *See Pl 's Br. at 6-8; Flaherty Dep. at 41-43.*

In regard to Janco, deposition testimony indicates that he discussed matters relevant to the 1999 Promotion Denial with Flaherty. *See Flaherty Dep. at 41-42.* In addition, according to the Plaintiff's Declaration, Janco had made at least one inappropriate remark directed at the Plaintiff - that is, "telling [her] to 'lick my fingers' after he ate a cinnamon roll during a meeting." *See Visnikar Decl. P 8.*

Assuming these facts to be true, the court must determine whether they are sufficient to state a claim against either Defendant under *Section 1983.* For the

reasons that follow, the undersigned concludes they are not.

First, the Defendants have raised the defense of qualified immunity. Qualified immunity shields government officials performing discretionary functions from civil damages liability as long as "their conduct does not violate clearly established statutory or constitutional rights that a reasonable person would have know." *See Gruenke v. Seip, 225 F 3d 290, 299 (3d Cir 2000)* [*62] (citation omitted). To determine whether a plaintiff's claim will proceed, the court engages in a two-part inquiry: (1) whether "the plaintiff's allegations are sufficient to establish the violation of a constitutional or statutory right at all"; and (2) whether "the right that the defendant's conduct allegedly violates was a clearly established one, about which a reasonable person would have known." *See S G  ex rel A G., 333 F 3d at 420* (citation omitted). If the plaintiff's allegations fail to satisfy either inquiry, then the defendant is entitled to summary judgment.

To the extent that the individual liability claims are based on the 1999 Promotion Denial and the 2001 Failure to Promote, the undersigned concludes that Flaherty and Janco are protected by qualified immunity. While perhaps short-sighted, and possibly unfair, the conduct alleged simply does not amount to an actionable violation of a constitutional or statutory right. *See Douris, 2001 U S. Dist. LEXIS 9282, 2001 WL 767579 at *6* (noting "qualified immunity protects all but the plainly incompetent or those who knowingly violate the law") (quoting *Anderson v. Creighton, 483 U S  635, 638, 97 L. Ed 2d 523, 107 S  Ct 3034 (1987))* [*63] As the court has already addressed these claims in detail in the context of its Title VII and PHRA analysis, and concluded that the same conduct did not constitute gender discrimination and/or retaliation, the undersigned need not revisit them here. *See Stewart v Rutgers, The State University, 120 F 3d 426, 432 (3d Cir. 1997)* (acknowledging that same analytical framework for finding discrimination applies under *Section 1983* and Title VII claims); *see also McKay v. Delaware State Univ , 2000 U S  Dist. LEXIS 14653, 2000 WL 1481018, *11 (D  Del Sept 29, 2000)* (holding same in context of failure to promote, retaliation, and hostile work environment claims brought under Title VII and *Section 1983*) n25

> n25 The undersigned notes that the 1999 Promotion Denial was not addressed on the merits in the previous analysis due to the Plaintiff's failure to exhaust administrative remedies and, alternatively, that it was time-barred. While the undersigned recognizes that

these hindrances do not apply to claims under *Section 1983, see, e.g., Singletary v. District of Columbia, 359 U.S. App. D.C. 1, 351 F.3d 519, 529 (D.C. Cir. 2003)*, the 1999 Promotion Denial does not amount to the violation of federal right. Applying the McDonnell Douglas framework, there are doubts as to whether a prima facie case has been established. Even if the Plaintiff had done so, she failed to meet her burden of showing that Flaherty's explanation - that her promotion would be denied until the 2001 Reclassification was implemented - was pretext. *See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973)*.

[*64]

What remains, therefore, is the claim against Janco based on his inappropriate "cinnamon roll" remark. This statement, standing alone, fails to amount to a violation of a federal right, *see* discussion, *supra*, at 15 n.10. Even if the court were to conclude otherwise, this claim would fail on the merits. To be actionable under *Section 1983*, the conduct at issue must have occurred "under the color of state law." *See Nadig v. Nagel, 272 F. Supp. 2d 509, 511-12 (E.D. Pa. 2003)*. As the Third Circuit Court has stated, "purely private acts which are not furthered by any actual or purported state authority are not acts under the color of state law." *See Barna v. City of Perth Amboy, 42 F.3d 809, 816 (3d Cir. 1994)*. Further, "it is well settled that an otherwise private tort is not committed under color of state simply because the tortfeasor is an employee of the state." *See Mark v. Borough of Hatboro, 51 F.3d 1137, 1150 (3d Cir. 1995)*. The Plaintiff here has not alleged a nexus between the remark and the execution of Janco's official duties - suggesting an abuse of state power - that would render the comment actionable under [*65] *Section 1983. See Bonenberger v. Plymouth Township, 132 F.3d 20, 23 (3d Cir. 1997)*. Thus, the claim must be dismissed.

In sum, the undersigned concludes that the Plaintiff has failed to state a claims against the Defendants under *Section 1983*; thus the District Court should grant summary judgment in favor of the Defendants in this regard.

### III. CONCLUSION

For the reasons stated above, it is recommended that the District Court grant the Defendants' Motion in its entirety.

In accordance with the Magistrates Act, *28 U.S.C. § 636(b) (1) (B)* and *(C)*, and Rule 72.1.4 (B) of the Local Rules for Magistrates, objections to this Report and Recommendation are due by February 12, 2004. Response to objections are due by February 23, 2004.

January 27, 2004

FRANCIS X. CAIAZZA

U.S. Magistrate Judge