IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HOWARD L. MOON, JR., | : | |
| | : | |
| Plaintiff, | : | C.A. NO. 05-261 (JJF) |
| | : | |
| v. | : | |
| | : | JURY TRIAL DEMANDED |
| THE DELAWARE RIVER AND BAY AUTHORITY, | : | |
| | : | |
| Defendant. | : | |

**PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Jeffrey K. Martin, Esquire (#2407)
Keri L. Morris, Esquire (#4656)
MARGOLIS EDELSTEIN
1509 Gilpin Avenue
Wilmington, Delaware 19806
302-777-4680 – telephone
302-777-4682 – facsimile
jmartin@margolisedelstein.com
kmorris@margolisedestein.com
Attorneys for Plaintiffs

Dated: August 29, 2005

# TABLE OF CONTENTS

| Document | Page No. |
|---|---|
| TABLE OF CASES | iii |
| NATURE AND STAGE OF PROCEEDINGS | 1 |
| STATEMENT OF MATERIAL FACTS | 2 |
| SUMMARY OF ARGUMENT | 7 |
| ARGUMENT | 8 |
| I. STANDARD OF REVIEW | 8 |
| II. MOON'S TITLE VII CLAIMS NOT SPECIFICALLY RAISED IN HIS EEOC CHARGING DOCUMENT SHOULD NOT BE DISMISSED | 9 |
|     A. A Reasonable Investigation By the EEOC Would Have Revealed Moon's Additional Claims | 9 |
|     B. Moon's Reliance On The EEOC To Follow Its Regulations And Its Subsequent Failure Should Not Bar His Claim | 11 |
|         1. Moon Identified Specific Facts To The EEOC To Support His Hostile Work Environment Claim | 14 |
| III. MOON'S IMPLIED COVENANT CLAIM SHOULD NOT BE DISMISSED | 14 |
|     A. Moon Did Not Evade The Administrative Process, Therefore the Exclusivity Provision of the Delaware Discrimination In Employment Act Does Not Bar His Implied Covenant Claim | 14 |
| CONCLUSION | 16 |

## TABLE OF CASES

| Case Name | Page No. |
|---|---|
| *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 91 L.Ed. 202, 106 S. Ct. 2505 (1986) | 9 |
| *Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir. 1996) | 10 |
| *Burnett v. New York Central R. Co.*, 380 U.S. 424, 85 S. Ct. 1050, 13 L. Ed. 2d 941 (1965) | 13, 14 |
| *Cannon v. State of Delaware*, 523 F. Supp. 341, 345 (D. Del. 1981) | 12, 14 |
| *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986) | 8 |
| *Gooding v. Warner-Lambert Co.*, 744 F.2d 354, 358-59 (3d Cir. 1984) | 10 |
| *Hart v. J.T. Baker Chemical Co.*, 598 F.2d 829 (3d Cir. 1979) | 13 |
| *Hawkins v. Temple Univ.*, 829 F.2d 437, 440 (3d Cir. 1987.) | 9 |
| *Hicks v. ABT Assocs., Inc.*, 572 F.2d 960, 966 (3d Cir. 1978) | 10 |
| *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n.1 (3d Cir. 1995) | 8 |
| *Howze v. Jones & Laughlin Steel, Corp.*, 750 F.2d 1208, 1212 (3d Cir. 1984) | 10, 11 |
| *International Union of Electrical, Radio & Machine Workers v. Robbins & Myers*, 429 U.S. 229, 97 S. Ct. 441, 50 L. Ed. 2d 427 (1976) | 13 |
| *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986) | 8 |
| *McAdams v. Thermal Industries, Inc.*, 428 F. Supp. 156, 161 (W.D.Pa. 1977) | 12 |
| *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398-99 (3d Cir. 1976), cert. denied, *429 U.S. 1041*, 50 L. Ed. 2d 753, 97 S. Ct. 741 (1977) | 10, 11 |
| *Pennsylvania Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995) | 9 |
| *Revis v. Slocomb Industries, Inc.*, 814 F. Supp. 1209, 1215 (D. Del. 1993) | 9, 10 |
| *Schanzer v. Rutgers University*, 934 F. Supp. 669, 673 (D.N.J. 1996) | 10 |

*Schuster v. Rocilli*, 775 A.2d 1029 ..................................................................14, 15

*Turbe v. Gov't of the Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991) ..............  8

*Waiters v. Parsons*, 729 F.2d 233, 237(3d Cir. 1984) ..................................  10

**Statutes & Regulations**

29 C.F.R. §1601.15 ...................................................................................... 12

42 U.S.C. § § 2000e-5(e), 2000e-5(f) ........................................................... 9

Delaware Discrimination in Employment Act, 19 *Del C.* Chapter 7 .....................14

Delaware Discrimination in Employment Act S.B. 154, 142d Gen. Ass. (Del. 2004) ............................................................................................... 15

**Rules**

Fed. R. Civ. P. 12(b) ..................................................................................  8

Fed. R. Civ. P. 12(b)(6)..............................................................................  8

Fed. R. Civ. P. 12(c) ..................................................................................  8

Fed. R. Civ. P. 56(c) ..................................................................................  8

Fed. R. Civ. P. 56(e) .................................................................................. 8

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Howard L. Moon, Jr., (hereinafter "Moon") filed a lawsuit against his employer, the Delaware River and Bay Authority (hereinafter "DRBA") on May 2, 2005, claiming that the DRBA had unlawfully discriminated against him on the basis of race and that he was retaliated against after he filed his first Charge of Discrimination with the Equal Employment Opportunity Commission (hereinafter "EEOC.") Specifically, Moon asserts the following causes of action: 1) Title VII – Retaliation based on his denial of promotions and a hostile work environment; 2) Racial Discrimination – based on depriving Moon of equal employment opportunities in violation of Title VII; 3) Racial Discrimination – Failure to Promote – based on denying Moon opportunities to interview and the denial of positions; and 4) Breach of the Implied Covenant of Good Faith and Fair Dealing – based on failure to promote him and discriminating against him on the basis of race and retaliation.

On June 14, 2005, DRBA filed its Answer to Moon's Complaint. On August 3, 2005, DRBA filed a Motion for Judgment on the Pleadings. DRBA's motion seeks dismissal of Moon's hostile work environment claims and his claim regarding failure to promote to the Chief Operating Officer position because these claims were not filed administratively with the EEOC. In addition, DRBA seeks to dismiss Moon's implied covenant claim as this claim is barred by the exclusivity provision of the Delaware Discrimination in Employment Act.

This is Moon's Answering Brief in Opposition to DRBA's Motion for Judgment on the Pleadings.

## **STATEMENT OF MATERIAL FACTS**

*Moon Meets with an EEOC Representative*

On or around March 10, 2004, Moon, the Ferry Reservations Administrator for the DRBA, met with an EEOC representative at the Philadelphia District Office for approximately fifteen (15) minutes to discuss the filing of a charge of employment discrimination against his employer. Moon specifically raised the issues of race discrimination and a hostile work environment based on race. During this initial meeting, Moon discussed all of his allegations, including his hostile work environment claims and failure to promote claims with the EEOC representative and was advised that the investigator assigned to the case was the individual best suited to discuss the specifics raised by Moon. B1-2. Moon was provided paperwork to complete, which he completed, and attached additional documentation to support his charge. He was to return to the EEOC on April 6, 2004, to perfect his charge of discrimination.

*Moon Files First Charge of Discrimination*

On April 6, 2004, Moon filed a Charge of Discrimination (hereinafter "Charge 1") with the EEOC. D.I. 1 ¶ 33; B3-4. This charge was based on DRBA's failure to promote Moon to specific positions Moon applied for in 2003. Specifically, Moon alleged that he was unfairly denied the following positions in favor of less-qualified Caucasian candidates:

1. He was denied a promotion to the position of EZ-Pass Manager in June 2003.

2. He was denied a promotion to the position of Business Development Representative in November 2003.

3. He was denied the opportunity to compete for the position of Acting Director of Ferry Operations in September 2003.

2

    4.    He was denied a promotion to the position of Director of Ferry Operations in November 2003.

    5.    He was denied a promotion to the Director of Toll Operations/Toll Superintendent in December 2003.

B3-4.  Although, not specifically set forth in Charge I, Moon also alleged racial discrimination in the failure to promote him to the Chief Operating Officer position in November 2002.  This information was provided to the EEOC and Moon relied on the representation that the investigator would include all of his allegations.

In addition, Moon claimed that in or around April 1, 2004, he met with Trudy Spence-Parker (hereinafter "Spence-Parker"), James T. Johnson, Jr. (hereinafter "Johnson"), and Consuella Petty-Judkins (hereinafter "Petty-Judkins") and that during the meeting, in response to Moon's providing examples of racial discrimination in the workplace, Spence-Parker "put her finger in his face and shouted" which establishes an allegation of hostile work environment based on race.  B4.

Lastly, Moon alleged in Charge I that, "Black employees are discriminated against, as a class, by being subjected to differential terms and conditions of employment.  Additionally, Black employees are under-represented, as a class, in upper management positions in the organization, as a whole."  B4.

Moon checked the box "Race" to identify what the alleged discrimination was based on and stated that the earliest discrimination took place on June 1, 2003, and the latest discrimination took place on January 26, 2004.  He did not check the box indicating that the discrimination was a "Continuing Action."  B4.  Moon questioned the EEOC representative regarding her failure to include all of his allegations in the charging document.  The EEOC representative advised Moon that all of his claims

3

which he set forth in supplementary documentation submitted during his March 2004 and April 6, 2004 meeting would be "part of the investigative process and he would be given another opportunity to address his issues." Furthermore, the EEOC representative advised Moon that the EEOC was backlogged and he [Moon] could request his notice of right to sue shortly thereafter. B1-2. It was based on this representation that Moon signed Charge I. B3-4.

The only additional correspondence from the EEOC regarding Charge I was a letter dated May 12, 2004 from Mrs. D. Bush (hereinafter "Bush") which notified Moon that she was the investigator assigned to investigate Charge I. B5. The letter further advised Moon that if he had additional information, he should send it to Bush's attention. B5. Moon contacted Bush upon receipt of the letter and indicated that he had additional documentation and asked her how she wanted him to provide the additional information. Bush told Moon again, that she was backlogged and to wait until she contacted him once she began the investigation in order for him to provide the additional documentation. Moon did not receive any other correspondence from Bush or the EEOC regarding Charge I. B1-2.

*Moon Files a Retaliation Charge of Discrimination with EEOC*

On September 24, 2004, Moon filed a second Charge of Discrimination (hereinafter "Charge II"), alleging retaliation for the filing of his earlier Charge of Discrimination. Specifically, in Charge II, Moon alleges that the following acts were the result of unlawful retaliation:

1. Moon's exclusion from Strategic Planning Meetings in April, June, and August 2004.

4

    2.    Walls' denial of public information Moon requested to prepare for his interview for the Superintendent of Tolls position in June 2004.

    3.    Moon was not selected to fill the Superintendent of Tolls position in August 2004.

    4.    Moon was not selected to interview for the position of Assistant Director of Ferry Operations in July 2004.

    5.    Johnson telling other employees not to talk to Moon since the DRBA was served a letter by Moon's attorney.

B6-7.

In addition, Moon makes a similar allegation to that in Charge I, "African American employees continue to be denied equal opportunities for promotion and advancement and [are] subjected to a different standard than white employees." B7.

In Charge II, Moon identified that his discrimination was based on "Retaliation" and identified the dates of discrimination took place as (earliest) April 30, 2004, through (latest) September 24, 2004. B6. He did not check the box indicating that the discrimination was a "Continuing Action." B6. Moon once again questioned the failure to check "continuing action" on the face of Charge II, but was advised that this was the appropriate manner in which to file a retaliation charge. B1-2.

***EEOC Dismisses Moon's Retaliation Charge***

On January 31, 2005, the EEOC issued a determination on Moon's Charge II, stating that it was "unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes." The EEOC then issued a Right-to-Sue letter to Moon. B8. Pursuant to Moon's request, the EEOC closed its investigation of Charge I, and issued a Right-to-Sue letter on February 22, 2005 in order to file the instant action. B9.

5

***Moon Files Lawsuit***

On May 2, 2005, Moon filed the present lawsuit against the DRBA. D.I. 1. In his 66-paragraph Complaint, Moon makes allegations beginning in 1992, all of which he raised in his supplemental documentation provided to the EEOC in March 2004. D.I. 1 ¶ 5; B1-2. Moon reasonably believed that he would have the opportunity to have all of his claims addressed based on the representations of the EEOC. In the present action, Moon specifically asserts the following causes of action: 1) Title VII – Retaliation, based on his denial of promotions and a hostile work environment; 2) Racial Discrimination – based on depriving Moon of equal employment opportunities in violation of Title VII; 3) Racial Discrimination – Failure to Promote – based on denying Moon opportunities to interview and the denial of positions; and 4) Breach of Covenant of Good Faith and Fair Dealing – based on failure to promote him and discriminating against him on the basis of race. D.I. 1.

## **SUMMARY OF ARGUMENT**

I.   STANDARD OF REVIEW

II.  MOON'S TITLE VII CLAIMS NOT SPECIFICALLY RAISED IN HIS EEOC CHARGES SHOULD NOT BE DISMISSED

   A.   A Reasonable Investigation By the EEOC Would Have Revealed Moon's Additional Claims

   B.   Moon's Reliance On the EEOC To Follow Its Regulations and Its Subsequent Failure Should Not Bar His Claim

      1.   Moon Identified Specific Facts To the EEOC To Support His Hostile Work Environment Claim

III. MOON'S IMPLIED COVENANT CLAIM SHOULD NOT BE DISMISSED

   A.   Moon Did Not Evade the Administrative Process, Therefore the Exclusivity Provision of the Delaware Discrimination in Employment Act Does Not Bar His Implied Covenant Claim

## ARGUMENT

I. **STANDARD OF REVIEW**

The standard applied to a Fed. R. Civ. P. 12(c) motion for judgment on the pleadings is similar to that applied to a Fed. R. Civ. P. 12(b)(6) motion to dismiss. See *Turbe v. Gov't of the Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991). However, when the parties refer to matters outside the pleadings, the defendant's motion shall be treated as one for summary judgment. See *Fed. R. Civ. P.* 12(b). Summary judgment should be granted only if the court concludes that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed. R. Civ. P.* 56(c). The moving party bears the burden of proving that no genuine issue of material fact is in dispute. See *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). Once the moving party has carried its initial burden, the nonmoving party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587 (quoting *Fed. R. Civ. P.* 56(e)). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Federal Kemper Life Assurance Co.*, 57 F.3d 300, 302 n.1 (3d Cir. 1995) (citations omitted). If the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, the moving party is entitled to judgment as a matter of law. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). The mere existence of some evidence in support of the nonmoving party will not be sufficient for denial of a motion for summary judgement;

there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that factual issue. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 91 L. Ed. 202, 106 S. Ct. 2505 (1986). This Court, however, must "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pennsylvania Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995) (citations omitted). With respect to summary judgment in discrimination cases, the court's role is "to determine whether, upon reviewing all the facts and inferences to be drawn therefrom in the light most favorable to the plaintiff, there exists sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff." *Revis v. Slocomb Industries, Inc.*, 814 F. Supp. 1209, 1215 (D. Del. 1993) (quoting *Hawkins v. Temple Univ.*, 829 F.2d 437, 440 (3d Cir. 1987.))

## II. MOON'S TITLE VII CLAIMS NOT SPECIFICALLY RAISED IN HIS EEOC CHARGING DOCUMENT SHOULD NOT BE DISMISSED

### A. A Reasonable Investigation By the EEOC Would Have Revealed Moon's Additional Claims

In the instant motion, DRBA maintains that Moon's Title VII hostile work environment allegations are precluded because he failed to exhaust his administrative remedies because he did not include the allegations in either charge filed with the EEOC. The administrative exhaustion requirements to file suit under Title VII are the filing of a charge with the EEOC and the receipt of the EEOC's notice of the right to sue. See 42 U.S.C. §§ 2000e-5(e), 2000e-5(f). The statutory scheme of Title VII emphasizes informal means of achieving settlement over formal adjudication, a potential plaintiff normally is required to set forth in the charge to the EEOC those allegations subsequently

9

raised in the district court. See *Schanzer v. Rutgers University*, 934 F. Supp. 669, 673 (D.N.J. 1996).

In accordance with the exhaustion requirement, there are limitations on the presentation of new claims in the trial court. See *Howze v. Jones & Laughlin Steel, Corp.*, 750 F.2d 1208, 1212 (3d Cir. 1984). The parameters of the resulting civil complaint that may follow a notice of a right to sue from the EEOC are "defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination," regardless of the actual scope of the EEOC investigation. *Hicks v. ABT Assocs., Inc.*, 572 F.2d 960, 966 (3d Cir. 1978) (quoting *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398-99 (3d Cir. 1976), cert. denied, *429 U.S. 1041*, 50 L. Ed. 2d 753, 97 S. Ct. 741 (1977)). Therefore, a trial court may assume jurisdiction over additional charges only if "the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." *Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir. 1996) (quoting *Waiters v. Parsons*, 729 F.2d 233, 237(3d Cir. 1984)). However, this standard must be applied in accord with the "sound and established policy that the procedural technicalities should not be used to prevent Title VII claims from being decided on the merits." *Revis v. Slocomb Industries, Inc.*, 814 F. Supp. At 1216 (quoting *Gooding v. Warner-Lambert Co.*, 744 F.2d 354, 358-59 (3d Cir. 1984)).

Courts have heard claims not specifically mentioned in prior EEOC charges where there was a close nexus between the facts supporting the claims raised in the charge and those in the complaint. See e.g., *Howze, 750 F.2d at 1212* (finding the claim in the civil suit that plaintiff was discriminated against because of her involvement with a

"Black Caucus" explained the original charge, which alleged racial discrimination in job promotion); *Ostapowitz*, 541 F.2d at 398-99 (finding that additional charges of gender discrimination filed during the pendency of the administrative proceedings may be considered "explanations of the original charge and growing out of it.")

Here, Moon notified the EEOC of his allegations of a hostile work environment based on race by providing supplemental documentation and included a specific incident in Charge I. This specific incident demonstrates the existence of a hostile working environment based on race for Moon. It is logical to infer that a reasonable investigation of Moon's allegations would have revealed his additional claims.

**B.    Moon's Reliance On the EEOC To Follow Its Regulations and Its Subsequent Failure Should Not Bar His Claim**

EEOC is given investigative authority pursuant to section 1601.15 of the regulations. The regulations regarding investigative authority state in part:

>  (a)    The investigation of a charge shall be made by the Commission, its investigators, or any other representative designated by the Commission. As part of each investigation, the Commission will accept any statement of position or evidence with respect to the allegations of the charge which the person claiming to be aggrieved, the person making the charge on behalf of such person, if any, or the respondent wishes to submit.
>
>  (b)    As part of the Commission's investigation, the Commission may require the person claiming to be aggrieved to provide a statement which includes:
>
>  >  (1)    A statement of each specific harm that the person has suffered and the date on which each harm occurred;
>
>  >  (2)    For each harm, a statement specifying the act, policy or practice which is alleged to be unlawful;

11

        (3)    For each act, policy, or practice alleged to have harmed the person claiming to be aggrieved, a statement of the facts which lead the person claiming to be aggrieved to believe that the act, policy or practice is discriminatory.

    (c)    The Commission may require a fact-finding conference with the parties prior to a determination on a charge of discrimination. The conference is primarily an investigative forum intended to define the issues, to determine which elements are undisputed, to resolve those issues that can be resolved and to ascertain whether there is a basis for negotiated settlement of the charge.

    (d)    The Commission's authority to investigate a charge is not limited to the procedures outlined in paragraphs (a), (b), and (c) of this section.

29 C.F.R. §1601.15.

When an individual makes a good faith effort to comply with the administrative process by filing charges with the EEOC and relies on the special expertise of the EEOC to implement proper procedures ... he should not be barred from suit. *McAdams v. Thermal Industries, Inc.*, 428 F. Supp. 156, 161 (W.D.Pa. 1977). It would work an injustice inconsistent with the objectives of Title VII if the negligent omission of the EEOC were permitted to bar an employee's right to sue under Title VII. *Cannon v. State of Delaware*, 523 F. Supp. 341, 345 (D. Del. 1981).

In *Cannon*, this Court discussed whether a plaintiff had exhausted her administrative remedies when she only presented her claim to the EEOC rather than the Delaware Department of Labor (hereinafter "DOL.") *Id.* at 342. In *Cannon*, there was no dispute that plaintiff filed a timely complaint with the EEOC. However, Title VII and the EEOC regulations required the EEOC to defer to the primary jurisdiction of the DOL before processing the complaint. EEOC failed to follow its own regulations when it

neglected to notify the DOL of Ms. Cannon's pending charge. As a result, the statutory limitation period had expired. This Court was faced with the decision of whether plaintiff was permitted to rely on the EEOC's deferral procedure and assume EEOC would follow the appropriate course of action or whether the matter was to be dismissed for failing to exhaust the required administrative remedy. In its decision to stay the proceedings in order for Ms. Cannon to file a charge of employment discrimination with the DOL, this Court relied on several cases. Specifically, the Court cites *Hart v. J.T. Baker Chemical Co.*, 598 F.2d 829 (3d Cir. 1979), in which the Third Circuit held that the 180-day filing requirement is not jurisdictional, and is "therefore subject to equitable modifications such as tolling." *Id.* at 831. However, the Court noted that courts should be sparing in their application of equitable principles to Title VII time limits. *International Union of Electrical, Radio & Machine Workers v. Robbins & Myers*, 429 U.S. 229, 97 S. Ct. 441, 50 L. Ed. 2d 427 (1976). In *IUERMW*, although the Court did not construe the time limit as jurisdictional, it rejected a claim that resorting to arbitration procedures, should toll the then 90-day time limit for filing an EEOC complaint. *Id.* Justice Rehnquist distinguished *IUERMW* from *Burnett v. New York Central R. Co.*, 380 U.S. 424, 85 S. Ct. 1050, 13 L. Ed. 2d 941 (1965), in which the Court allowed the tolling of the limitations period for a federal FELA claim after the plaintiff has "the misfortune of filing his complaint in an Ohio State court where venue did not lie under Ohio law." *Id.* at 238. In *Burnett,* the Court noted that the petitioner … did not sleep on his rights but brought an action within the statutory period in a state court of competent jurisdiction. Service of process was made upon the respondent notifying him that petitioner was asserting his cause of action. *Id.*, quoting *Burnett v. New York Central R. Co.*, 380 U.S.

at 429, 85 S. Ct. at 1055. In *IUERMW*, by contrast, the plaintiff did not file a charge with the EEOC until sixty-six days after the arbitration proceedings concluded. *Id.* 429 U.S. note 13 at 240, 97 S. Ct. note 13 at 449. As was the case in *Cannon*, the present action more closely resembles *Burnett* rather than *IUERMW*, and, as in that case, the "policy of repose, designed to protect defendants is outweighed [by] the interests of justice. *Burnett v. New York Central R. Co., supra*, 380 U.S. at 428, 85 S. Ct. at 1055.

As in *Cannon*, there is no dispute that Moon filed a charge of discrimination with the appropriate agency within the applicable time period. Moon made a good faith effort to comply with the EEOC procedures, and if he failed, did so only as a result of the omission of the EEOC. This reliance on the EEOC should not bar the present action.

    **1. Moon Identified Specific Facts To the EEOC To Support His Hostile Work Environment Claim**

In reliance on the EEOC representative, Moon set forth his allegations of a hostile work environment based on race in a supplemental document which he reasonably believed would be reviewed and considered during the course of the EEOC investigation. Furthermore, on the face of Charge I, Moon alleged a specific incident which demonstrates that he was alleging a hostile work environment based on race.

**III. MOON'S IMPLIED COVENANT CLAIM SHOULD NOT BE DISMISSED**

    **A. Moon Did Not Evade the Administrative Process, Therefore the Exclusivity Provision of the Delaware Discrimination in Employment Act Does Not Bar His Implied Covenant Claim**

In 2001, the Delaware Supreme Court, in deciding *Schuster v. Rocilli*, 775 A.2d 1029, held that a discrimination claim arising under Title VII or the Delaware Discrimination in Employment Act, 19 *Del C.* Chapter 7, violated the public policy of

Delaware and therefore could be raised under a breach of the implied covenant of good faith and fair dealing claim. The *Schuster* decision essentially allowed plaintiffs alleging discrimination to evade the administrative processing requirement and the damage caps under Title VII.

Moon does not dispute that, in 2004, the Delaware General Assembly amended the Delaware Discrimination in Employment Act. However, the synopsis of the amendments to the Delaware Discrimination in Employment Act states that:

> [t]his bill confirms that Chapter 7 is the exclusive and sole remedy for employment discrimination claims, requiring <u>initial</u> processing of all such claims with the Department of Labor for review and action. This bill effectively re-establishes the exclusive remedy put in question by the decision in *Schuster v. Derocili*, 774 A.2d 1029 (2001). *Emphasis added.*

S.B. 154, 142d Gen. Ass. (Del. 2004). It is clear that the Delaware General Assembly intended to preclude claims of employment discrimination without first allowing the Department of Labor to initially process the claims. It is not clear that the Delaware General Assembly intended to preclude implied covenant suits after the administrative process has been completed. Therefore, the amendment to the Delaware Discrimination in Employment Act does not preclude Moon's breach of the implied covenant of good faith and fair dealing claim that sets for the allegation he was subject to racial discrimination and retaliation for exercising his civil rights.

## CONCLUSION

For the foregoing reasons, Moon respectfully requests that DRBA's Motion for Judgment on the Pleadings be denied in whole.

MARGOLIS EDELSTEIN

*Keri L. Morris*
Jeffrey K. Martin, Esquire (#2407)
Keri L. Morris, Esquire (#4656)
1509 Gilpin Avenue
Wilmington, Delaware 19806
Telephone: (302) 777-4680
Facsimile: (302) 777-4682
jmartin@margolisedelstein.com
kmorris@margolisedelstein.com
Attorneys for Plaintiff

DATED: August 29, 2005

16